UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------
SHELDON G. ADELSON,

                              Plaintiff,                    Case No. 12-Civ-6052-JPO

                                                           ECF Case

     v.

DAVID A. HARRIS, MARC R. STANLEY, and
NATIONAL JEWISH DEMOCRATIC COUNCIL,

                              Defendants.
-----------------------------------------------------------------------

## SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO DISMISS PURSUANT TO THE NEVADA ANTI-SLAPP STATUTE AND MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

L. Lin Wood (*pro hac vice*)
lwood@whetriallaw.com
Georgia Bar No. 774588
Amy M. Stewart (*pro hac vice*)
astewart@whetriallaw.com
Georgia Bar No. 141481
Jonathan D. Grunberg (*pro hac vice*)
Georgia Bar No. 869318
jgrunberg@whetriallaw.com
**Wood, Hernacki & Evans, LLC**
1180 West Peachtree Street N.W.
Suite 2400
Atlanta, Georgia 30309

David M. Olasov
dolasov@olasov.com
**Olasov + Hollander LLP**
27th Floor
1325 Avenue of the Americas
New York, NY 10019

*Attorneys for Plaintiff Sheldon G. Adelson*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ....................................................................................................... 2

I.   The Nevada Act's Special Motion to Dismiss Procedure Is Inapplicable in Federal Court  2

II.  Defendants' Motion Under the Nevada Act Is Untimely and Must Be Denied................. 3

III. The Nevada Anti-SLAPP Does Not Apply to Plaintiff's Complaint ............................... 5

   A.   Defendants' Libelous Statements Were Not Made to a Government Agency ............... 6

   B.   Defendants' Libelous Statements Were Not Communications Aimed at Procuring Any Governmental or Electoral Action, Result or Outcome ........................................... 9

   C.   Defendants' Libelous Statements Were Not Made in Direct Connection With an Issue Under Consideration by a Legislative, Executive, or Judicial Body .................................... 11

   D.   Defendants Fail to Adduce Sufficient Evidence to Show That the Petition Was Published Without Knowledge of Falsity ........................................................................ 13

   E.   The Statement Was Neither Truthful Nor Published Without Knowledge of Falsity... 15

   F.   Plaintiff Is Entitled to Limited Discovery Concerning Truth or Lack of Knowledge of Falsity............................................................................................................. 17

   G.   The Actions of Corporate Entities in Another Court Cannot Preclude Plaintiff Form Contesting Truth Under the Anti-SLAPP .......................................................... 19

IV.  Nevada Law Supports the Denial of Defendants' 12(b)(6) Motion ............................... 20

   A.   The Libelous Statements Are Not Privileged Reports of a Judicial Proceeding ......... 20

   B.   The Libelous Statements Are Not Protected Opinion Under Federal or Nevada Law . 23

   C.   The Issue of Truth or Falsity Is Not Properly Before the Court on Defendants' 12(b)(6) Motion............................................................................................................ 25

      1.   The Issue of Truth or Falsity Is Inappropriate on a Motion to Dismiss.................... 25

      2.   Plaintiffs Have Averred Sufficient Facts To Create A Genuine Issue of Material Fact Concerning Truth or Falsity and Actual Malice .......................................... 28

CONCLUSION.................................................................................................. 30

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012) ........................................................ 20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................. 26

*Archey v. Nelson*, No. 35671, 2010 WL 3711513 (Nev. Dist. Ct. August 10, 2010) .............. 7, 13

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009) ................................ 20

*Balestra-Leigh v. Balestra*, No. 3:09-cv-551-ECR-RAM, 2010 WL 4280424 (D. Nev. Oct. 19, 2010) ............................................................................................................ 4

*Beers v. General Motors Corp.*, No. 97-CV-482-NPM-DNH, 1997 WL 325378 (N.D.N.Y. 1999) .............................................................................................. 19

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523 (2d Cir. 1985) ............................ 13, 18

*Biro v. Conde Nast*, No. 11-Civ.-4442-JPO, 2012 WL 3234106 (S.D.N.Y. August 9, 2012) ..... 20

*Branaccio v. Mitsubishi Motors Co., Inc.*, No. 90-CV-7852-RWS, 1992 WL 189937 (S.D.N.Y. Aug. 31, 1992) ............................................................................................. 19

*Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262 (7th Cir. 1983) ....................... 21

*Buckwalter v. Wey*, No. 2:10-cv-108-JCM-LRL, 2010 WL 2609100 (D. Nev. June 24, 2010) ... 7, 13

*Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163 (2d Cir. 2000) ................................ 14, 27, 29

*Chowdhry v. NLVH, Inc.*, 109 Nev. 478 (1993) ............................................................ 16

*Citizen United v. Fed. Election Comm'n*, 558 U.S. 310 (2010) ....................................... 12

*Clarke v. JPMorgan Chase Bank, N.A.*, 08-CIV-2400, 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ............................................................................................................. 13

*Clarke v. JPMorgan Chase Bank, N.A.*, No. 08-CV-2400-CM-DCF, 2010 WL 1379788 (S.D.N.Y. Mar. 26, 2010) ..................................................................................... 18

*D.R. Horton, Inc. v. Safe Homes Nevada, Inc.*, No. A466035, 2003 WL 25717726 (Nev. Dist. Ct. May 28, 2003) ........................................................................................................ 7

*Dodds v. Am. Broad. Co.,* 145 F.3d 1053 (9th Cir. 1998) ........................................... 16

*Egiazaryan v. Zalmayev*, No. 11-CV-2670-PKC, 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) . 28

*Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375 (2004) ................................................ 23

*Global Telemedia International, Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001) ............. 23

*Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,* No. 06-Civ.-1260, 2009 WL 4547792 (E.D.N.Y. Dec. 1, 2009) ................................................................. 20

*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657 (1989) .................................... 27, 29

*Herbert v. Lando*, 441 U.S. 153, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979) ................................ 27

*Hunt v. Liberty Lobby*, 720 F. 2d 631 (11th Cir. 1983) ................................................................ 27

*John v. Douglas Cty. Sch. Dis*t., 219 P.3d 1276 (Nev. 2009) ........................................................ 1, 6

*KJR Mgmt. Co. v. First Web Search, LLC*, No. A549570, 2008 WL 7907954 (Nev. Dist. Ct. Nov. 19. 2008) ............................................................................................................ 4, 5

*Kopec v. Coughlin*, 922 F.2d 152 (2d Cir. 1991) .......................................................................... 26

*Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-CV-2700-PKC, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ................................................................................................................ 26

*Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C. Cir. 1988) ................................. 27

*Lubin v. Kunin*, 117 Nev. 107 (Nev. 2001) .................................................................................. 21, 24

*Lueck v. Vogel*, No. 54691, 20111 WL 535914 (Nev. Feb. 14, 2011) ........................................ 21

*Makaeff v. Trump University, LLC*, --- F.3d ---, 2013 WL 1633097 (9th Cir. Apr. 17, 2013).. 2, 3, 17

*Mayfield v. NASCAR, Inc*., 674 F.3d 369 (4th Cir. 2012) ........................................................... 27

*Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) .............................................. 3, 17

*Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S. Ct. 2695, 2706, 111 L. Ed. 2d 1 (1990) .... 17

*Miller v. Jone*s, 114 Nev. 1291 (1998) ..................................................................................... 24, 25

*Moonin v. State of Nevada*, __ F.Supp.2d __, 2013 WL 1628389 (D. Nev. April 15, 2013) ......... 6

*Murguia v. Palmer*, No. 3:12-cv-00347-MMD-WGC, 2013 WL 1250449 (D. Nev. March 27, 2013) ............................................................................................................... 7

*N.Y. Times Co. v. Sullivan,* 376 U.S. 254 (1964) ....................................................................... 26

*Nevada Indep. Broad. Corp. v. Allen*, 664 P.2d 337 (Nev. 1983) ............................................. 21, 24

*Official Comm. v. Coopers & Lybrand, LLP*, 322 F.3d 147 (2d Cir. 2013) ........................... 13, 18

*Pacquiao v. Mayweather*, No. 2:09-CV-2448-LRH-RJJ, 2010 WL 1439100 (D. Nev. April 9, 2010) ........................................................................................................................ 18

*Parisi v. Sinclair*, 845 F. Supp. 2d 215 (D.D.C. 2012) ................................................................ 28

*Pike v. Hester*, No. 3:12-cv-00283-RCJ-VPC, 2013 WL 839784 (D. Nev. March 5, 2013) ....... 18

*Piscatelli v. Van Smith*, 35 A.3d 1140 (Md. 2012) ..................................................................... 21

*Rebel Communications, LLC v. Virgin Valley Water District*, No. 2:10-cv-0513-LRH-PAL, 2012 WL 934301 (D. Nev. March 20, 2012) ............................................................................... 8, 13

*Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973 (C.D. Cal. 1999) .......................... 18

*Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859 (5th Cir. 1978) ............................................... 27

*Rosenfeld v. City of N.Y.*, 06-CV-1979 ERK VVP, 2012 WL 976044 (E.D.N.Y. Mar. 22, 2012) ................................................................................................................................. 13

*Rosenfeld v. City of N.Y.*, No. 06-CV-1979-ERK-VVP, 2012 WL 9766044 (E.D.N.Y. Mar. 22, 2012) ............................................................................................................................... 18

*Ryan v. Brooks*, 634 F.2d 726 (4th Cir. 1980) ........................................................................... 27

*Sahara Gaming Corp. v. Culinary Works Union Local 226*, 984 P.2d 164 (Nev. 1999) ....... 21, 23

*Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069 (3d Cir. 1988) ....................................... 27, 29

*Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189 (1985) ............................................................ 5

*Sharon v. Time, Inc.*, 599 F. Supp. 538 (S.D.N.Y. 1984) ...................................................... 27, 29

*Shatz v. Republican State Leadership Committee*, 669 F.3d 50 (1st Cir. 2012) .......................... 27

*Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 97 Civ. 5499, 2000 WL 264295 (S.D.N.Y. Mar. 9, 2000) .......................................................................................... 26

*St. Amant v. Thompson*, 390 U.S. 727 (1968) ...................................................................... 15, 27

*Street v. National Broadcasting Co.*, 645 F.2d 1227 (6th Cir. 1981) .......................................... 21

*Thai v. Cayre Group, Ltd.,* 726 F. Supp. 2d 323 (S.D.N.Y. 2010) ............................................... 20

*United States v. All Right, Title & Interest in Five Parcels of Real Prop. & Appurtances Thereto Known as 64 Lovers Lane,* 830 F.Supp. 750 (S.D.N.Y.1993) ................................................ 26

*Vassilatos v. Ceram Tech Int'l, Ltd.,* No. 92-CV-4574, 1993 WL 177780 (S.D.N.Y. May 19, 1993) ............................................................................................................... 26

*West v. Goodyear Tire & Rubber Co*., 167 F.3d 776 (2d Cir. 1999)............................................ 19

*World Boxing Council v. Cosell*, 715 F. Supp. 1259 (S.D.N.Y. 1989)........................................ 27

**Statutes**

Nev. Rev. Stat. § 41.637 ............................................................................................... 6, 10, 11

Nev. Rev. Stat. § 41.660 .......................................................................................................... 3

Nev. Rev. Stat. § 41.660(3)..................................................................................................... 17

**Rules**

Federal Rule of  Civil Procedure 8 ......................................................................................... 20

Federal Rule of Civil Procedure 12(b)(6) ........................................................................... 1, 25

Federal Rule Civil Procedure 54(d) ....................................................................................... 18

Nev. R. Civ. Pro. 12(b)(5) ....................................................................................................... 7

## PRELIMINARY STATEMENT

Plaintiff Sheldon Adelson respectfully submits this Supplemental Memorandum of Law in opposition to Defendants' special motion to dismiss pursuant to the Nevada anti-SLAPP statute and Defendants' renewed motion to dismiss under Federal Rule 12(b)(6).  Rather than provide the Court with a supplemental brief focusing on the relevant and applicable Nevada law at issue in this action, as the Court requested in its March 6, 2013 conference with the parties, Defendants National Jewish Democratic Council ("NJDC"), Marc R. Stanley ("Stanley"), and David Harris ("Harris") (collectively, "Defendants"), filed a pleading styled "Renewed Notice/Notice of Anti-SLAPP Motion," in which they, for the first time, ask this Court to apply Nevada's anti-SLAPP statute (the "Nevada Act") to the present action.  Defendants' special motion to dismiss under the Nevada Act is untimely, the deadline having expired on October 8, 2012.  Defendants chose to forego moving under the Nevada Act, focusing instead on the inapplicable and irrelevant anti-SLAPP of the District of Columbia (the "D.C. Act"). They should not be allowed to rewrite the Nevada Act's deadline to compensate for their poor decision-making.

Even if the Court entertained Defendants' special motion to dismiss, Defendants' conduct finds no protection under the Nevada Act.  The Nevada Supreme Court recently and succinctly affirmed that the Nevada Act "only protects citizens who petition the government from civil liability arising from *good-faith communications to a government agency*." *John v. Douglas Cty. Sch. Dist*., 125 Nev. 746, 753 (2009) (emphasis in original).  Defendants do not and cannot claim that either of their libelous publications were "good-faith communication[s] to a government agency," and thus the Nevada Act does not apply.  Nor do the exotic procedures of the Nevada Act apply in the federal courts.  The Ninth Circuit recently lamented its decision to let anti-SLAPP statutes run roughshod over the Federal Rules, and as with any state law that rewrites

1

federal procedures for dispositive motions, this Court should at a minimum refuse to apply Nevada's special motion to dismiss procedure.

Defendants' arguments under Rule 12(b)(6) are equally unavailing. Defendants failed to raise the Nevada Act's protections as part of their 12(b)(6) motion. And they attempt to gloss over the fact that Nevada's privilege for fair and accurate reports of judicial proceedings is less robust than in other jurisdictions, hoping to mislead the Court into applying the principles of a fair comment privilege that has been abolished in Nevada. Finally, Defendants continue to ignore that the ostensible opinions in the Petition were based on false and incomplete facts, resulting in a defamatory and actionable Petition and Statement.

## ARGUMENT

### I.     The Nevada Act's Special Motion to Dismiss Procedure Is Inapplicable in Federal Court

The Court should deny Defendants' special motion to dismiss because this exotic state-law procedure, including its discovery bar, has no place in federal court. The Chief Judge of the Ninth Circuit has had enough, and in a concurring opinion in *Makaeff v. Trump University, LLC*, --- F.3d ---, 2013 WL 1633097 (9th Cir. Apr. 17, 2013), the Chief Judge strongly advocated against applying anti-SLAPPs in federal court:

> Federal courts have no business applying exotic state procedural rules which, of necessity, disrupt the comprehensive scheme embodied in the Federal Rules, our jurisdictional statutes and Supreme Court interpretations thereof. As a three judge panel, *Metabolife* could only do so much, and we are generally bound to follow *Newsham*. But if this or another case were taken en banc, we could take a fresh look at the question. I believe we should.

*Makaeff*, 2013 WL 1633097, at *17 (Kozinski, J., concurring).

In blasting the applicability of anti-SLAPPs, Judge Kozinski reaffirmed the Ninth Circuit's refusal to enforce the discovery bars endemic to anti-SLAPP statutes. After all, the Federal Rules "reflect a policy of forcing a defendant to disclose adverse facts before he may

2

challenge plaintiff's case for factual sufficiency." *Id.* Which is why the "discovery-limiting aspects" of the anti-SLAPP statute do not apply in federal court. *Id.* at *17 (Kozinski, J., concurring) (quoting *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 845 (9th Cir. 2001)).

Though *Makaeff* and *Metabolife* focused on California's anti-SLAPP, they apply with equal force to the Nevada Act. While less exotic than some, the Nevada Act nevertheless "disrupt[s] the comprehensive scheme embodied in the Federal Rules." *See Makaeff*, 2013 WL 1633097, at *17 (Kozinski, J., concurring). The procedural aspects of the Nevada Act grant attorneys' fees to a prevailing defendant, require dismissal with prejudice, and permit a defendant to get "a case dismissed for factual insufficiency while concealing evidence that supports plaintiff's case." *See id.* at *16. Plaintiff will not rehash its exhaustive responses to Defendants and amicus, but whether the anti-SLAPP at issue is that of D.C., California, or Nevada, such statutes have no room to operate in the Federal Rules' self-contained realm of dispositive motions practice. (*See* Dkt. No. 29 at 22-28; No. 51 at 3-8, 10-16.)

## II. Defendants' Motion Under the Nevada Act Is Untimely and Must Be Denied

Nevada's anti-SLAPP statute provides:

1. If an action is brought against a person based upon a good faith communication in furtherance of the right to petition:

(a) The person against whom the action is brought may file a special motion to dismiss….

2. A special motion to dismiss must be filed within 60 days after service of the complaint, which period may be extended by the court for good cause shown.

Nev. Rev. Stat. § 41.660. Defendants were served with the Complaint on August 8th and 9th of 2012. (Dkt. Nos. 9-11.) Per the Nevada Act, Defendants' deadline for filing a special motion to dismiss was October 8, 2012. Well before this 60-day deadline, on September 21, 2012, Defendants filed a special motion to dismiss under the D.C. Act. (Dkt. No. 16.) Defendants could

have easily filed under the Nevada Act as well.  Defendants' choice to place all their defensive eggs in the D.C. basket is not "good cause" to allow them to file their Nevada motion seven-months late.

Defendants found no authority that willful failure to file an anti-SLAPP motion is "good cause" to toll the 60-day filing period.  Instead, Defendants cite two irrelevant cases in an attempt to recast their strategic failure. (Dkt. No. 57 at 5, n.7.) The first case, *Balestra-Leigh v. Balestra*, No. 3:09-cv-551-ECR-RAM, 2010 WL 4280424 (D. Nev. Oct. 19, 2010), stands for the unremarkable proposition that an anti-SLAPP motion is timely if filed within 60-days of an amended complaint. *Id.* at *3. *Balestra* is irrelevant at best, as Plaintiffs have not filed an amended complaint, and 60-days have long passed since the Complaint was served.

Defendants rely on the second case, *KJR Management Co. v. First Web Search, LLC*, No. A549570, 2008 WL 7907954 (Nev. Dist. Ct. Nov. 19. 2008), for the proposition that "good cause to extend [the] 60-day period [existed] where party 'acted with the appropriate diligence and haste' once basis for invoking statute became clear." (Dkt. No. 57 at 5, n.7.) However, in *KJR Management*, the Court actually ruled that good cause appeared to extend the deadline to file a special motion to dismiss because the applicability of the anti-SLAPP only became apparent during the movant's diligent and speedy pursuit of discovery.  2008 WL 7907954.

Here, there is no such belated disclosure of information concerning the applicability of the Nevada Act.  From the time Defendants received the Complaint, they have known that Plaintiff resides in Nevada and that their conduct harmed Plaintiff in Nevada and other jurisdictions, including New York; and unless Defendants operated under serious illusions, they knew their defamatory publications were read in Nevada.  Defendants had all the evidence necessary to know that Nevada law applied.  And Defendants have not pointed to any discovery

revelations since the 60-day deadline passed. Plainly, Defendants are not similarly situated to the movants in *KJR Management*, who only discovered the applicability of the anti-SLAPP statute through diligent discovery.

Operating under the baseless assumption that they could rewrite Nevada's 60-day deadline, Defendants reserved their right to invoke the Nevada Act. (Dkt. No. 18 at 2 n.2; No. 37 at 1 n.1.) Yet Defendants cannot point to any authority holding that a party can reserve the right to ignore the terms of Nevada Act. The consequence of Defendants' unreasonable assumption is that this lawsuit has been held in abeyance for nine months, without a day of discovery. Defendants' special motion to dismiss pursuant to Nevada's anti-SLAPP statute is untimely filed and should be denied as a matter of law.

## III.    The Nevada Anti-SLAPP Does Not Apply to Plaintiff's Complaint

Defendants initially opted against moving under Nevada law for the simple reason that the Nevada Act does not apply to Plaintiffs' claims.  The Nevada Act provides that a "person who engages in a good faith communication in furtherance of the right to petition is immune from civil liability for claims based upon the communication."[1]  Nev. Rev. Stat. § 41.650.  Per the statute, a "good faith communication in furtherance of the right to petition" means any:

    1.   Communication that is aimed at procuring any governmental or electoral action, result or outcome;

    2.   Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or

---

[1] In footnote five of their Supplemental Brief, Defendants again argue that an anti-SLAPP statute confers an immunity and therefore the law of Defendants' domicile should control.  Plaintiff briefed this issue, (Dkt. No 29 at 11-20), and the Court has aired its belief that the law of Plaintiff's domicile likely applies. Moreover, Defendants' argument regarding the issue is based on an aberrant thread of law that conflicts with the New York Court of Appeals' holding that the state where the tort occurred has the stronger interest in applying its immunities.  *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (1985).

> 3.   Written or oral statement made in direct connection with an issue under
> consideration by a legislative, executive or judicial body, or any other official
> proceeding authorized by law,

> which is truthful or is made without knowledge of its falsehood.

Nev. Rev. Stat. § 41.637.  The Supreme Court of Nevada has interpreted the Nevada Act as applying only to communications made directly to a governmental agency, *John*, 125 Nev. at 753; thus, the Nevada Act cannot apply in this matter. Even if such a limitation did not exist, Defendants' libelous publications do not fit under any of the three prongs of the Nevada Act; accordingly, Defendants cannot avail themselves of the special protections.

### A.   Defendants' Libelous Statements Were Not Made to a Government Agency

Throughout their argument, Defendants focus on the purpose and history of the Nevada Act, painting the Act as an expansive enforcer of First Amendment rights.  The main source of Defendants' sweeping argument is the Nevada Supreme Court case of *John v. Douglas County School District*.   Defendants repeatedly rely on and quote from *John* for most of their proclamations regarding the intent and meaning of the statute.  (*See* Dkt. No. 57 at 3-6, 8.) However, in *John*, the Supreme Court of Nevada clearly explained:

> Nevada's anti-SLAPP statute is predicated on protecting well-meaning citizens
> who petition the government and then find themselves hit with retaliatory suits . .
> . . More importantly, the anti-SLAPP statute only protects citizens who petition
> the government from civil liability arising from *good-faith communications to a
> government agency*. Thus, [the Nevada Act] is not an absolute bar against federal
> substantive claims; rather, it bars claims from persons who seek to abuse other
> citizens' rights to petition their government, and it allows meritorious claims
> against citizens who do not petition the government in good faith.

125 Nev. at 753 (emphasis in original). Unlike the broad D.C. Act, the anti-SLAPP statute of Nevada *only* applies to suits brought against defendants who have communicated *with a government agency* in good faith. *Moonin v. Nev. ex rel. Dep't of Pub. Safety Highway Patrol*, --- F. Supp. 2d ---, 2013 WL 1628389, at *13 (D. Nev. April 15, 2013) (holding that

"communications in furtherance of the right to petition include communications to an officer of a governmental entity that reasonably concern the governmental entity").[2]

Defendants not only ignored *John's* holding, their partial review of the Legislature's intentions elided the 1997 bill's first recital, (Dkt. No. 57 at 3), in which the Legislature only voiced concerns over communications to the government: "WHEREAS, The communications, information, opinions, reports, testimony, claims and argument provided by citizens to their government are essential . . . ." 1997 Nev. Stat. 1364. The bill's remaining recitals say nothing of communications to non-governmental entities. *See id.* Indeed, in amending their anti-SLAPP, the Legislature chose a new phrase to serve as the lynchpin—"the right to petition." *Id.* at 1364-65. Black's Law Dictionary provides a single definition for the right to petition: "The constitutional right—guaranteed by the First Amendment—of the people *to make formal requests to the government*, as by lobbying or writing letters to public officials." Black's Law Dictionary (9th ed. 2009) (emphasis added).   It is clear that the Nevada anti-SLAPP, as amended, only applies to communications to a government agency. *See John*, 125 Nev. at 753.[3]

---

[2] *Accord Murguia v. Palmer*, No. 3:12-cv-00347-MMD-WGC, 2013 WL 1250449, at *3 (D. Nev. March 27, 2013) (holding that the movant under the anti-SLAPP statute must show that the "lawsuit is based on good faith communications made in furtherance of the right to petition the government" and noting that protected petitioning activity has been found to include lobbying an elected official, communications with police, writing a letter to a zoning commissioner, or encouraging the electorate to vote in a particular way); *Buckwalter v. Wey*, No. 2:10-cv-108-JCM-LRL, 2010 WL 2609100, at *3 (D. Nev. June 24, 2010) (holding "the statute only protects citizens who petition a government agency," and explaining the statute did not apply to defendant since "the statements were alleged to have been made to a newspaper and thus not directly in furtherance of any judicial proceedings" and "a government agency was not being petitioned").

[3] Although Defendants cite several lower court cases containing loose recitations of facts and weak analysis under the Nevada Act, none of the cases cited by Defendants change the clear enunciation of the law by the Supreme Court of Nevada, which has been followed by almost all courts to address the issue; *i.e.*, that a petition must be made directly to a governmental agency for Nevada's anti-SLAPP protection to apply. *See Archey v. Nelson*, No. 35671, 2010 WL 3711513 (Nev. Dist. Ct. August 10, 2010) (holding that publication of articles in student newspaper served to communicate the information directly to the public school officials, qualifying as petitioning activity under prong 2 of the statute); *D.R. Horton, Inc. v. Safe Homes Nev., Inc.*, No. A466035, 2003 WL 25717726 (Nev. Dist. Ct. May 28, 2003) (holding that statements published on defendant's website along with a chart of construction defect cases originally submitted by the Nevada Trial Lawyers Association to the Nevada Construction Liability Insurance Task Force were privileged reports of a judicial proceeding and properly dismissed under NRCP 12(b)(5) and also protected petitioning activity under Nevada's anti-SLAPP since the statements were made in direct connection with the Task Force and its investigation); *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, No. 2:10-cv-0513-LRH-

As discussed in the prior briefing currently before the Court, the text of the first allegedly libelous publication, the "Petition," reads as follows:

**Tell Romney to Reject Adelson's Dirty Money**



As you saw during the Republican primaries, GOP mega-donor Sheldon Adelson dumped millions of dollars into supporting Newt Gingrich's feckless campaign. **Now he's doing the same for Mitt Romney – with no plans to stop**. But perhaps the most alarming aspect of Adelson's potentially unlimited contributions is where the money comes from.

It's well known that Adelson makes tremendous sums of money through his casinos in China which – according to 2008 Republican presidential candidate <u>Senator John McCain (AZ)</u> -- means that Chinese **"foreign money" (to quote McCain) is flooding our political system**. But this week, reports surfaced that in addition to his anti-union and allegedly <u>corrupt business practices</u>, **Adelson "<u>personally approved</u>" of prostitution in his Macau casinos**.

---

PAL, 2012 WL 934301, at *2 (D. Nev. March 20, 2012) (conducting extensive discovery on applicability of anti-SLAPP, and defendants were protected by the anti-SLAPP when they made statements in connection with their positions on a city council and a municipal board).

Given these reports, **Romney and the rest of the Republican Party must cease accepting Adelson's tainted money immediately**. Sign NJDC's petition below, and click here to share the image above on Facebook to help spread the word.

Already signed? Click here to enlist your family and friends in the effort to stop the influence of Adelson's tainted money and protect our democracy.

(Dkt. No. 1 at ¶¶ 34-36, Ex. A; No. 58 at ¶ 5.)

The text of the second allegedly libelous publication, the "Statement," or "Republication," reads as follows:

> **Statement  Regarding  NJDC's Sheldon  Adelson Petition**
> . . .
> Regarding our recent campaign surrounding Sheldon Adelson, we don't believe we engaged in character assassination; *we stand by everything we said*, which was sourced from current, credible news accounts. Accusations against Mr. Adelson were made not by us, but by others, including Senator John McCain (R- AZ). Nonetheless, we regret the concern that this campaign has caused. And in the interest of shalom bayit (peace in our home/community), we are going to take down our petition today.  Moving forward, we'll continue to work hard to fight against the unique threat posed by the outsized influence of certain individual megadonors, which rightly concerns most Americans and most American Jews.

(Dkt. No. 1 at ¶¶ 34-36, Ex. C (italics added); No. 58 at ¶ 9.)

Neither the Petition nor the Statement can be categorized as a "good-faith communication to a government agency."  Defendants posted the Petition and Statement on their website and asked their readers, individual citizens of any number of states and countries worldwide, to repost the Petition on their Facebook pages to "help spread the word."  This is not the type of communication the Nevada Act was designed to protect.  Defendants were not communicating with a government agency when they made the allegedly libelous statements and as a result, they cannot avail themselves of Nevada's anti-SLAPP statute.

## B.    Defendants' Libelous Statements Were Not Communications Aimed at Procuring Any Governmental or Electoral Action, Result or Outcome

Even if this Court finds Defendants made a communication to a governmental agency, neither the Petition nor the Statement qualify under prong one of the Nevada Act.  As stated

9

above, prong one covers communications "aimed at procuring any governmental or electoral action, result or outcome." Nev. Rev. Stat. § 41.637. Defendants' entire argument in support of their contention that the Petition and Statement fall within prong one of the Nevada Act consists of a single sentence: "It cannot be seriously disputed that the Petition and Statement were self-evidently communications 'aimed at procuring' an 'electoral action, result or outcome.'" (Dkt. No. 57 at 8.) Apparently, Defendants would like the Court to guess at exactly what "electoral action, result or outcome" the Petition and Statement are designed to procure, since Defendants are silent in this regard.

"Electoral," as defined by the Merriam-Webster Dictionary, means "of or relating to an elector" or "of or relating to election." *Merriam-Webster*, http://www.merriam-webster.com/dictionary/electoral (last visited May 12, 2013). An elector is defined as "one qualified to vote in an election." *Merriam-Webster*, http://www.merriam-webster.com/dictionary/elector (last visited May 12, 2013). Accordingly, to qualify under prong one of the Nevada Act, the communication must be made to a governmental agency and aimed at procuring an action, result or outcome in regards to an election or vote.

Here, the actual text of the Petition and Statement is not aimed at procuring anything related to a vote in an election. Instead, the Petition asks random and anonymous readers, who could be anyone (not just electors) located anywhere, to tell a candidate hoping to have the chance to run for public office, to stop taking money from one of his donors. The requested action of signing a petition regarding campaign contributions during a presidential primary campaign is not aimed at procuring a specific electoral action, result, or outcome. It is aimed at the funds that a candidate, who is not a current government official, accepts in support of his campaign. The matter at issue in the Petition and Statement was neither a vote nor an electoral

action, result, or outcome; thus, Defendants cannot rely on prong one to avail themselves of the Nevada Act.

    **C.**    **Defendants' Libelous Statements Were Not Made in Direct Connection With an Issue Under Consideration by a Legislative, Executive, or Judicial Body**

Even more incredibly, Defendants rely on the *Jacobs* Proceeding and the 2010 decision in *Citizens United* to claim that the Petition and Statement are covered by prong three of the Nevada Act, (Dkt. No. 57 at 9), which requires the "written or oral statement [to be] made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law."  Nev. Rev. Stat. § 41.637.  Failing to cite a single case in support of their tortured reading of the phrase "made in direct connection with an issue under consideration," Defendants grasp at distant and unrelated proceedings in a weak attempt to satisfy the third prong. (*See* Dkt. No. 57 at 8-9.)

Once again, as defined in the Merriam-Webster Dictionary, "direct" means, among other things, "proceeding from one point to another in time or space without deviation or interruption," "proceeding by the shortest way," and "characterized by close logical, casual, or consequential relationship." *Merriam-Webster*, http://www.merriam-webster.com/dictionary/direct (last visited May 12, 2013). And the same dictionary defines "connection" as a "causal or logical relation or sequence," a "relationship in fact," or "a relation of personal intimacy." *Merriam-Webster*, http://www.merriam-webster.com/dictionary/connection (last visited May 12, 2013). It strains credulity to argue that Defendants' libelous proclamation that Sheldon Adelson "personally approved of prostitution" was made "in direct connection with" an issue in the *Jacobs* Proceeding: Defendants' Petition neither explicitly mentions Jacobs nor his lawsuit.

Defendants also falter in their attempt to directly connect their libelous publications to *Citizens United* and other lower court actions regarding first amendment limitations on campaign

11

contributions. (*See* Dkt. No. 57 at 8-9.) Temporally speaking, it is ridiculous to assert that the libelous publications were made in direct connection with the Court's adjudication of *Citizens United*—a case decided in 2010, almost two-years before Defendants' published their libelous statements. *See Citizen United v. Fed. Election Comm'n*, 558 U.S. 310 (2010). Equally baffling is Defendants' assertion that their libelous publications were made in direct connection with lower court proceedings such as *McCutcheon v. Federal Elections Communication*, 893 F. Supp. 2d 133 (D.D.C. 2012), in which the court addressed aggregate limits on campaign contributions by individual donors. *Id.* at 135. There is nary a mention of aggregate limits in Defendants' libelous publications. Simply put, neither the Petition nor Statement was "made in direct connection with an issue under consideration by" any court currently deciding any matter related to restricting campaign contributions.

Finally, Defendants try to shoehorn their publications into the ambit of the Nevada Act by claiming that the Petition was directly connected—via hyperlinks no less—to ongoing investigations by the U.S. Department of Justice ("DOJ") and the Securities Exchange Commission ("SEC"), and that the Petition "generally" related to the legitimacy of campaign contributions regulated by the Federal Election Commission." (Dkt. No. 57 at 9.) The Petition's oblique reference to "allegedly corrupt business practices" cannot be considered a statement "made in direct connection with" pending investigations by the DOJ and SEC. And the Petition's statement regarding allegedly corrupt business practices is ancillary to the primary statements at issue—those concerning prostitution. Furthermore, Defendants' reliance on hyperlinks as means of direct connection has no legal basis. (*See* Dkt. No. 29 at 34-36, 39-40.)

Prong three of the Nevada Act has been applied in a few extremely limited situations in which an issue was pending before a governmental body (such as a school district or a city

council), and the statements at issue were made to a governmental body or its members, in direct connection with that the pending issue.  *See, e.g., Archey*, 2010 WL 3711513 at *4 (applying prong three to statements in school newspaper communicated to school district officials and published at a time when parent complaints regarding a choir selection process were being actively investigated by the school district officials).[4]  The allegedly libelous statements at issue here were posted on a website for anyone with internet access to view and were not made in direct connection to any issue under consideration by a legislative, executive, or judicial body. (Pl.'s Statement of Additional Material Fact ("PSAMF") at ¶ 2.) Defendants cannot gain protection under Nevada's anti-SLAPP statute by rewriting the Petition and Statement in an attempt to directly connect them to any cited issues. Prong three of Nevada's anti-SLAPP statute does not apply to the communications at issue here.

### D.    Defendants Fail to Adduce Sufficient Evidence to Show That the Petition Was Published Without Knowledge of Falsity

Defendants attempt to foreclose Plaintiff's right to discovery by largely relying on Plaintiff's Complaint to supply the facts for their argument on knowledge of falsity.  Defendants contend that because the Complaint only alleges "reckless disregard for truth and falsity," Plaintiff has judicially admitted that Defendants did not publish the Petition with knowledge of falsity.[5] (Dkt. No. 57 at 10-14.)  But the issue of reckless disregard for truth or falsity is a question of law that calls for a legal conclusion. *Compuware Corp. v. Moody's Investors Servs.,*

---

[4] *See also Rebel Commn'cs*, 2012 WL 934301 at *2 (holding, after significant discovery regarding the applicability of the Nevada Act, that statements made by members of the local water district board of directors and city council were made in direct connection with an issue currently pending before the city council and fell within the protection of prong three); *cf. Buckwalter*, 2010 WL 2609100 at * 3 (holding that statements made to newspaper regarding malpractice lawsuits filed against plaintiff were not protected by prong three of the Nevada Act because they were not made to a governmental agency or directly in furtherance of any judicial proceeding).

[5] Although Defendants did not explicitly cast their argument in terms of "judicial admission," they only cite cases relying on that doctrine.  (Dkt. No. 57 at 10-11 n.12 (citing *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (relying on judicial admission); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (same); *Rosenfeld v. City of N.Y.*, 06-CV-1979 ERK VVP, 2012 WL 976044, at *5 (E.D.N.Y. Mar. 22, 2012) (same); *Clarke v. JPMorgan Chase Bank, N.A.*, 08-CIV-2400, 2010 WL 1379778, at *14 (S.D.N.Y. Mar. 26, 2010) (same)).)

*Inc.*, 371 F. Supp. 2d 898, 902 (E.D. Mich. 2005) (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 685 (1989)), *aff'd* 499 F.3d 520 (6th Cir. 2007).  The doctrine of judicial admission is inapplicable to legal conclusions. *N.Y. State Nat. Org. for Women v. Terry*, 159 F.3d 86, 97 n.7 (2d Cir. 1998); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 394 (6th Cir. 2007) ("[T]he statements dealt with legal conclusions, and not matters of fact, and therefore the district court erred in concluding that the statements were judicial admissions.").  Accordingly, Plaintiff did not judicially admit that Defendants acted only with reckless disregard and hence without knowledge of falsity.

By taking Defendants' judicial notice argument to its logical conclusion, Defendants concede to the truth of the facts alleged in paragraphs 73 through 80 of the Complaint.  (Dkt. No. 57 at 10; PSAMF at ¶ 15.) Such conduct includes the following: refusing to provide Mr. Adelson an opportunity to respond to the Petition or Statement; knowingly and purposefully avoiding and ignoring evidence prior to publication; publishing statements so inherently improbable and outrageous as to raise serious doubts about their truth; publishing statements that clearly contradicted known facts; publishing statements based solely on an unreliable, biased source, lacking in credibility, but falsely representing such accusations were based on "credible news accounts"; publishing accusations based on a source known for his vicious personal attacks against Mr. Adelson; and failing to conduct even a cursory investigation prior to publication. (Dkt. No. 1 at ¶¶ 73-80; PSAMF at ¶ 15.)

The above provides enough circumstantial evidence to create an issue of material fact regarding knowledge of falsity.  *Cf. Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (noting that bias of a source, unreliability of a source, and unbelievable nature of a story are all evidence of actual malice, and that reckless conduct may be evidenced in part by

failure to investigate thoroughly and verify the facts—particularly where the material is harmful or damaging to the plaintiff's reputation or good name or where the information is from a source known to be hostile to the plaintiff); *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

Even if the above facts are not subject to judicial admission, Defendants failed to adduce sufficient facts to make a threshold showing on the issue of knowledge of falsity.   Regarding the issue of knowledge of falsity, there is a glaring absence in Defendants' Supplemental Memorandum (Dkt. No. 57) and their Statement of Undisputed Material Facts ( Dkt. No. 58) ("DSUMF").). Defendants' SUMF does not aver that the statements in the Petition were true or published without knowledge of falsity.  And neither Defendants' SUMF nor the Supplemental Brief reference Harris' denial of knowledge of the falsity in his declaration.[6]  Defendants instead largely rest upon snippets of the Complaint, the *Jacobs'* Declaration, and the AP Article.  (*See* Dkt. No. 57 at 9-14; No. 58 at ¶¶ 1-8, 11.)  Which, taken together, do not show that Harris and the NJDC lacked knowledge of falsity when they published the Petition.

### E.    The Statement Was Neither Truthful Nor Published Without Knowledge of Falsity

Prior to their supplemental briefing, Defendants failed to challenge whether the Statement qualifies as a "republication." (*See* Dkt. No. 18 at 14.) Defendants now argue that because the Statement did not actually restate the words of the Petition, the Statement is truthful and non-actionable under the Nevada Act. The Statement, however, is at least defamatory by implication.

Under the theory of defamation by implication, direct statements that do not appear on their face to be defamatory can still be capable of a defamatory meaning if they imply a false and

---

[6] Although Defendants argue that Jacobs' scurrilous remarks are sworn statements and thus credible, Harris admits Jacobs' remarks were mere allegations.  (Dkt. No. 59 at ¶ 7.)

defamatory statement of fact.[7]   The Ninth Circuit Court of Appeals has held that in order to prevail on a defamation by implication claim, a plaintiff must show that the words the defendant published were reasonably susceptible to an implied defamatory meaning and that a jury could find by clear and convincing evidence that the defendant intended to convey the defamatory impression.  *Dodds v. Am. Broad. Co.,* 145 F.3d 1053, 1063-64 (9th Cir. 1998).  Plaintiff will be able to establish both these requirements here.

As this Court mentioned in the December 17, 2012 hearing, by the time the Statement was published, the Petition "was so much in the public eye and was being talked about by so many people" that "their republishing language to the effect of 'We stand by everything we said,' at that point in the context of this article, because it got so much notoriety that the analysis is different, in other words, they didn't have to republish the first thing because it was so ubiquitous at that point." (Hr'g Tr. at 15:11-19.) Defendants cannot seriously argue that a majority of the readers of the Statement were unaware of what Defendants were referencing when they stated, "we stand by everything we said."  By making the affirmative statement that "we stand by everything we said," Defendants implied that the libelous remarks in the Petition, including that Mr. Adelson personally approved of prostitution, were true and accurate. Moreover, by stating that "we stand behind everything we said," Defendants also affirmatively suggested that they endorsed the Petition and the defamatory implication contained in the Statement.  Defendants cannot show at this early stage of the proceedings that the Statement is truthful or not capable of a defamatory meaning.

---

[7] The Supreme Court of Nevada has not affirmatively ruled that defamation by implication is a viable claim.  But the Court recognizes that when statements are not by themselves defamatory, the "words must be reviewed in their entirety and in context to determine whether they are [nevertheless] susceptible of defamatory meaning." *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 484 (1993).

Moreover, Defendants made the Statement with knowledge of falsity. Prompted by his concern over the false and defamatory Petition, Professor Alan Dershowitz wrote an op-ed article in which he expressed indignation over the NJDC's baseless attack against Plaintiff. (PSAMF at ¶¶ 7-8.)  Shortly thereafter, but before publication of the Statement, Professor Dershowitz called Harris. (*Id.* at ¶ 9.) Professor Dershowitz made that call in his capacity as a concerned Democrat, member of the Jewish community, and friend of Plaintiff.[8] (*Id.* at ¶ 10.) Professor Dershowitz apprised Harris of the falsity of the Petition's remarks regarding prostitution, disclosing evidence to that effect, including the contents of an email in which Jacobs stated that he himself did not believe Plaintiff had approved of prostitution. (*Id.* at ¶¶ 11-14.) Professor Dershowitz could hardly be dismissed as a Republican shill. He is a Democrat, esteemed member of the bar, renowned academic, and prominent Jewish American, who reasonably put Defendants on notice that the Petition was false. (*Id.* at ¶¶ 5-14.)

## F.    Plaintiff Is Entitled to Limited Discovery Concerning Truth or Lack of Knowledge of Falsity

If the Court finds that Defendants made a good-faith communication to a governmental entity covered by either prong one or three of the Nevada Act, Defendants should nevertheless be forced to "disclose adverse facts before [they] may challenge plaintiff's case for factual sufficiency."  *See Makaeff*, 2013 WL 1633097, at *17 (Kozinski, J., concurring).  As addressed more fully in Plaintiffs' 56(d) motion filed contemporaneously, Plaintiff is entitled to, at a minimum, limited discovery regarding the facts relevant to the applicability of the Nevada Act.[9]

---

[8] Defendants' sole basis for arguing that Professor Dershowitz did not put them on notice of falsity is that he was acting as Plaintiff's legal representative, (*see* Dkt. No. 59 at ¶ 10); that is simply untrue, (PSAMF at ¶ 10.)

[9] Defendants argue that because Plaintiff has "conceded that portions of . . . the Petition he challenges are expressions of opinion" and therefore not "capable of being proven true or false," Defendants "could not have published these statements with knowledge of falsity" and as a result all allegations concerning opinion must be dismissed under the Nevada Act. (Dkt. No. 57 at 14.) The Nevada Act cannot eliminate an entire body of Federal Constitutional law concerning the actionable nature of opinions that rely on undisclosed statements of fact. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990) ("Even if the speaker states the facts upon which he

Per the Nevada Act, the special motion to dismiss is treated as a motion for summary judgment, and the court must stay discovery pending a ruling on the motion.  Nev. Rev. Stat. § 41.660(3).  "However, in federal court, a plaintiff is entitled to seek limited discovery to oppose an anti-SLAPP motion."  *Rebel Commc'ns,* 2010 WL 2773530 at *2; *accord Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir.2001) (holding that anti-SLAPP discovery bars are unenforceable in federal court); *Pike v. Hester*, No. 3:12-cv-00283-RCJ-VPC, 2013 WL 839784, at *7 (D. Nev. March 5, 2013) ("If Defendants [seek] a fact-based determination under the anti-SLAPP statutes, [they] may do so under a motion for summary judgment later, but [they] may not stay discovery under the state statute at this early stage and ask the Court to make what amounts to a Rule 56(a) determination without the benefit of any discovery.").[10]

Here, because Defendants' evidence of truth or lack of knowledge of falsity is proffered in the form of affidavits or declarations (Dkt. No. 59 at ¶ 7; No. 60 at ¶ 6), limited discovery is entirely appropriate.  "[D]efendants' statements about their knowledge and reasoning is solely within their control.  Without contradictory evidence of defendants' mental state or knowledge, [Plaintiff] is unable to oppose defendants' special anti-SLAPP motion."  *Pacquiao v. Mayweather*, No. 2:09-CV-2448-LRH-RJJ, 2010 WL 1439100, at *2 (D. Nev. April 9, 2010).[11]

---

bases his opinion, if those facts are either incorrect or incomplete, . . . the statement may still imply a false assertion of fact" and be actionable defamation); and *Metabolic Research*, 693 F.3d at 802 (finding that the Nevada Act is "not an immunity to suit or right not to be tried").  Because Defendants' purported opinions imply false and defamatory assertions of fact, they can be proven false, and remain actionable under the Nevada Act.

[10] *See also Rogers v. Home Shopping Network, Inc.,* 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999) (explaining that if a movant under an anti-SLAPP statute seeks dismissal with prejudice, as with a Rule 56 motion for summary judgment, discovery is required; it is only when seeking 12(b)(6) relief, i.e. dismissal without prejudice, where a court can adjudicate the motion without discovery).  Here, Defendants' anti-SLAPP motion uses the summary judgment standard, and they seek dismissal with prejudice; thus, if the Nevada Act applies, discovery is required.

[11] Contrary to Defendants' argument, Plaintiff need not face the crucible of summary judgment regarding *scienter*, and is not "bound" by his Complaint without the benefit of discovery.  None of the cases cited by Defendants stand for this proposition.  (Dkt. No. 57 at 10-11, & n.12 (citing *Official Comm. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2013) (affirming district court's denial of Rule 54(d) motion to reconsider since under Second Circuit precedent, rulings may only be challenged under Rule 54(d) where there has been an intervening change of controlling law, new evidence is available, or there was a need to correct a clear error or prevent a manifest injustice); *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (affirming dismissal of

**G.     The Actions of Corporate Entities in Another Court Cannot Preclude Plaintiff Form Contesting Truth Under the Anti-SLAPP**

Contrary to Defendants' arguments, activity in the *Jacobs* Proceeding cannot "preclude" Plaintiff from contesting the issue of truth or knowledge of falsity in this Court.  (Dkt. No. 57 at 17-19.)   Plaintiff's initial brief already addressed Defendants' previous attempt to stay this proceeding and to shackle Plaintiff with the alleged misdeeds of others. (Dkt. No. 29 at 42-44.) Plaintiff remains opposed to any form of estoppel or a stay.  But it bears repeating that Jacobs' information regarding Mr. Adelson's prostitution policy was based on hearsay statements by individuals whose testimony could still be gathered. (*See* Strom Decl. Ex. 29 (Jacobs' Decl. at ¶ 5), Ex. 111 at Exs. A-C.) Defendants prefer to turn a blind eye to available evidence, choosing instead to cry foul, and dodge their liability.

Furthermore, Defendants again rely on a string of inapposite cases in which the sanctioned party was himself the spoliator.  (Dkt. 57 at 18 (citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (imposing sanctions when plaintiff's counsel spoliated evidence); *Beers v. Gen Motors Corp.*, No. 97-CV-482-NPM-DNH, 1999 WL 325378, at *5 (N.D.N.Y. 1999) (granting motion to dismiss where plaintiff's expert lost key evidence); *Branaccio v. Mitsubishi Motors Co., Inc.*, No. 90-CV-7852-RWS, 1992 WL 189937 (S.D.N.Y. Aug. 31, 1992) (dismissing complaint where plaintiff allowed evidence to be repossessed before defense expert had opportunity to examine it). It is undisputed that Mr. Adelson is not a party to the *Jacobs* Proceeding. (*See, e.g.,* Dkt. No. 61-1 at 38.) While Defendants pronounce by *ipsi dixit*

---

complaint where valid and enforceable settlement agreements entered into by the same parties contained "clear and unambiguous language of remarkable breadth" barring all claims, despite allegations of complaint); *Rosenfeld v. City of N.Y.*, No. 06-CV-1979-ERK-VVP, 2012 WL 9766044, at *5 (E.D.N.Y. Mar. 22, 2012) (granting summary judgment as to First Amendment retaliation claim when complaint, memorandum in opposition, and all evidence in the record demonstrated that the only individual with retaliatory motive against plaintiff had been dismissed in a settlement agreement); *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08-CV-2400-CM-DCF, 2010 WL 1379788, at *14 (S.D.N.Y. Mar. 26, 2010) (finding a judicial admission when putative class representative waited until after summary judgment to allege he was a member of the New York class, rather than the New Jersey class to which he claimed membership during the first two years of litigation)).)

that Plaintiff's "*agents*" spoliated evidence, (Dkt. No. 57 at 17), Defendants ignore that the alleged spoliators are publicly traded corporations with boards of directors, (*see, e.g.*, Strom Decl., Ex. 3 at 3, 122). These corporations are not Plaintiff's mere instrumentalities. And their conduct in the *Jacobs* Proceeding cannot be the basis for estopping Plaintiff from contesting a major issue in this litigation.

## IV.   Nevada Law Supports the Denial of Defendants' 12(b)(6) Motion

As explained in Plaintiffs' prior briefing, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). Rule 8 of the Federal Rules of Civil Procedure "requires that each pleading be specific enough to afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Biro v. Conde Nast*, No. 11-Civ.-4442-JPO, 2012 WL 3234106, at *9 (S.D.N.Y. Aug. 9, 2012) (quoting *Gristede's Foods, Inc. v. Poospatuck (Unkechauge) Nation,* No. 06-Civ.-1260, 2009 WL 4547792, at *8–9 (E.D.N.Y. Dec. 1, 2009) (citations omitted)); *see also Thai v. Cayre Group, Ltd.,* 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010). Mr. Adelson's Complaint adequately pleads a claim for defamation against Defendants under Nevada law; thus, Defendants' motion to dismiss pursuant to 12(b)(6) should be denied.

### A.   The Libelous Statements Are Not Privileged Reports of a Judicial Proceeding

Nevada's law on privileged reports of a judicial proceeding does not protect Defendants' publications. Nevada's "fair reporting privilege" only protects "fair, accurate, and impartial report of events occurring in judicial proceedings." *Lueck v. Vogel*, No. 54691, 20111 WL 535914, at *1 (Nev. Feb. 14, 2011). The purpose behind this rule is to allow the "news media

and the general public to report newsworthy events in judicial proceedings." *Sahara Gaming Corp. v. Culinary Works Union Local 226*, 115 Nev. 212, 215 (Nev. 1999).[12] While the law of Nevada allows a party to report on judicial proceedings "from a fair and neutral stance, a party may not don itself with the judge's mantle, crack the gavel, and publish a verdict through its fair report." *Lubin v. Kunin*, 117 Nev. 107, 115 (Nev. 2001) (citing *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 271-72 (7th Cir. 1983) (holding that the fair report privilege does not apply to a reporter's summary of a government report where the summary unfairly portrayed the gist of the report in a way that a jury could "conclude that the summary carried a greater sting and was therefore unfair"); *accord Street v. Nat'l Broad. Co.*, 645 F.2d 1227, 1233 (6th Cir. 1981) (concluding that a movie purporting to quote and paraphrase a trial is not fair and accurate where '[t]he element of balance and neutrality is missing")).[13]  Thus, a publisher compromises his fair and neutral stance "by presenting a one-sided view of the action," and effectively endorsing a particular viewpoint.  *Id.* at 114-15.

As explained at length in Plaintiff's initial brief in opposition, Defendants failed to fairly, accurately, or impartially report on a judicial proceeding when they published that Mr. Adelson "REPORTEDLY APPROVED OF **PROSTITUTION**" and "reports surfaced that . . . **Adelson 'personally approved' of prostitution**." (Dkt. No. 29 at 31-37.) First, the Petition did not report on the *Jacobs* Proceeding, of which there is no mention.  Rather, the Petition reported on the AP

---

[12] Defendants spend over a page of their brief summarizing *Sahara Gaming*, relegating to a small footnote the key distinguishing feature between the publication at issue in *Sahara Gaming* and the publications at issue here, explaining: "In *Sahara Gaming*, there was no dispute that the letter fairly and accurately quoted the allegations of the complaint, or that it attributed those allegations to the complaint . . . ." (Dkt. No. 57 at 22 n.17.) Defendants can claim none of the same here.

[13] Defendants attempt to minimize the strict requirements of Nevada law on invoking the fair report privilege by citing cases from other jurisdictions applying the law of "fair comment."  (Dkt. No. 57 at 24 (discussing *Piscatelli v. Van Smith*, 35 A.3d 1140 (Md. 2012)).)  However, Nevada law does not have a "fair comment" privilege, and derogatory opinions based on privileged statements can only be protected opinion under *Gertz*, not a separate state law privilege.  *See Nev. Indep. Broad. Corp. v. Allen*, 664 P.2d 337, 343 n.6 (Nev. 1983).  Defendants cannot extend the fair reporting privilege over the entire Petition or Statement through a backdoor application of the fair comment privilege, which does not exist under Nevada law.

Article, to which it hyperlinked. Second, by omitting the details about the questionable provenance of the accusation regarding prostitution, the portrayal of the AP Article was unfair: there is no mention that the accusation was lobbed by a disgruntled former employee who was several years deep into a lawsuit, no mention of the *Jacobs* Proceeding, and no mention of Plaintiff's vehement denials. Third, the Petition credits the accusations to reports, unfairly imparting an air of legitimacy where none was deserved. *See Miller v. Jones*, 114 Nev. 1291, 1297 (1998) (holding that a campaign flier's reference to "news reports" imparted an "air of accuracy"). Fourth, Defendants stance was hardly neutral. The Petition endorsed the harshest aspects of the AP Article through its bold pronouncement that Plaintiff's money was "dirty" and "tainted." Defendants simply presented a "one-sided view" of the AP Article; thus, the fair reporting privilege is inapplicable.

Defendants continue to seek absolution through hyperlinking, albeit in a watered down form. Whereas Defendants initially argued that the contents of the hyperlinked AP Article must be considered part of the Petition when analyzing the first prong of the privilege—fairness and accuracy, (Dkt. No. 18 at 31-35)—Defendants have abandoned their indefensible position, and now argue that the hyperlink only satisfies the second prong, attribution.[14] (Dkt. No. 57 at 25-28.). As Defendants acknowledge, "[t]here is no case law in Nevada addressing the scope of the privilege's attribution requirement, either generally or in the specific context of hyperlinks." (Dkt. No. 57 at 33.) But it is hard to conceive how the privilege's purpose of ensuring that the public learns about "newsworthy events in judicial proceedings" is fulfilled by a publication that fails to mention a judicial proceeding. *Sahara Gaming Corp.*, 984 P.2d 164, 166 (Nev. 1999).

---

[14] If Defendants still argue that the AP Article is part and parcel of the Petition, Plaintiff's position against this unprecedented argument is unchanged. (*See* Dkt. No. 29 at 32-36, 39-40.)

A few of Defendants' new points regarding attribution bear discussion.  First, a hyperlink to an outside article is not an electronic footnote, (*see* Dkt. No. 57 at 26): the former requires the reader to actively navigate away from the libelous publication, and could be mistaken for textual emphasis, whereas a footnote is actually part of the four corners of a publication, and does not require external navigation.  Moreover, a footnote, properly executed, summarily describes the referenced material, *inter alia*, naming the publication, author, and date.  Defendants' hyperlink does not provide any of that information.  But this discussion is academic: Defendants did not hyperlink to a document from a judicial proceeding; they linked to a news report.

Second, the California cases Defendants cite regarding hyperlinks are inapposite.  In *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375 (2004), the publication in question was an email setting forth an opinion that relied upon hyperlinked material.  *Id.* at 380-81, 288-89. The email's author explicitly (1) directed the recipient to follow the hyperlink and to review a specific item on the linked webpage, (2) described the linked item, and (3) explained why the linked item was problematic.  *Id.*  Given the explicit directions, and the court's finding that the single recipient of the email "understood Internet matters," the court held that the factual basis of the opinion had been disclosed.  *Id.*  As for *Global Telemedia International, Inc. v. Doe 1*, 132 F. Supp. 2d 1261 (C.D. Cal. 2001), the publication also explicitly directed its readers to a website containing the basis for the defendant's opinion, and the URL appeared on the face of the publication.  *Id.* at 1268. Virtually every data point relied upon by the courts in *Franklin* and *Global Telemedia* is absent here.

### B.     The Libelous Statements Are Not Protected Opinion Under Federal or Nevada Law

As the Supreme Court of Nevada has explained, "[s]tatements of opinion are protected speech under the First Amendment of the United States Constitution and are not actionable at

law." *Lubin*, 117 Nev. at 112. "In certain contexts, however, a statement may be ambiguous or a 'mixed type,' which is 'an opinion on underlying, undisclosed defamatory facts'"; and such opinions are actionable. *Id.* at 113 (quoting *Nev. Ind. Broad. v. Allen*, 99 Nev. 404, 413 (Nev. 1983). "In such situations, where a statement is ambiguous, the question of whether it is a fact or evaluative opinion is left to the jury." *Id.*

For example, in *Miller v. Jone*s, 114 Nev. 1291 (1998), the Supreme Court of Nevada held that a campaign flier that included excerpts of a newspaper article, along with the statement that a "police detective accuses Miller of giving false information in a report concerning cocaine found in a car Miller was driving" was susceptible of a defamatory construction, and thus the action could not be dismissed. *Miller*, 114 Nev. at 1296-98. Specifically, the court stated that

> [t]he effect of the reproductions of newspaper reports in the flier is to lend the contents of the flier an air of accuracy; the reports seem designed to indicate to the reader that points made by the flier are not merely [the publisher's] opinion, they are independently reported and verified facts.

*Id.* at 1297. Similarly, in *Lubin v. Kunin*, 117 Nev. 107 (Nev. 2001), the Supreme Court of Nevada reversed a dismissal where it held that a flier including "a reference to a court pleading indicating that [the plaintiff] was being sued for child abuse lent an 'air of accuracy' to the Parents' later statement that this child abuse 'DID!' happen." *Lubin*, 177 Nev. at 113.

As argued extensively in Plaintiff's initial memorandum in opposition, Defendants repeatedly relied on their defamatory allegations that Mr. Adelson personally approved of prostitution to support the Petition's conclusion that his money is "dirty" and "tainted." (*See* Dkt. No. 29 at 37-42.) Rather than disclosing the true source of Defendants' allegations, Defendants presented their factual basis as having been garnered from "reports." As the Supreme Court of Nevada has concluded, by cloaking a statement with the word "reports," the alleged defamatory statement receives an "air of accuracy" and "seem[s] designed to indicate to the reader that

points made by the [Petition] are not merely [the publisher's] opinion, they are independently reported and verified facts." *Miller*, 114 Nev. at 1297.  Defendants' opinion that Mr. Adelson's money is dirty and tainted cannot be protected by the First Amendment because the disclosed factual basis is incorrect, incomplete, and part and parcel of the defamation alleged in Mr. Adelson's Complaint.

### C.   The Issue of Truth or Falsity Is Not Properly Before the Court on Defendants' 12(b)(6) Motion

Defendants spend ten pages of their Supplemental Briefing addressing the issue of truth or falsity of the allegedly libelous publications at issue.  If the Court rightly refuses to apply Nevada's anti-SLAPP statute, the Court should not use the issue of truth or falsity as a basis for dismissal under Rule 12(b)(6). As an initial matter, Defendants argued in their first combined memorandum of law that Mr. Adelson's Complaint should be dismissed on three legal grounds: (1) the Petition and Republication are privileged reports of a judicial proceeding; (2) the Petition and Republication are protected expressions of opinion; and (3) the Petition and Republication are privileged "fair comment." (Dkt. No. 18 at 30-42.) In their initial 12(b)(6) challenge, Defendants did not argue that the complained of statements were true or incapable of a defamatory meaning, nor did they dispute actual malice.  (Dkt. No. 29 at 30-41, & n.22.)[15] Defendants' should not be allowed a second bite at the apple, and should thus be constrained to the 12(b)(6) issues they initially raised.

#### 1.   The Issue of Truth or Falsity Is Inappropriate on a Motion to Dismiss

A Rule 12(b)(6) motion to dismiss challenges only the face of the pleading. Thus, in deciding such a motion to dismiss, "the Court must limit its analysis to the four corners of the complaint." *Vassilatos v. Ceram Tech Int'l, Ltd.,* No. 92-CV-4574, 1993 WL 177780 at *5

---

[15] Although the Court ordered bifurcated briefing on the D.C. anti-SLAPP, Defendants' 12(b)(6) was considered in-full on the initial round of briefing in 2012.  (Dkt. No. 25.)

(S.D.N.Y. May 19, 1993) (citing *Kopec v. Coughlin,* 922 F.2d 152, 154–55 (2d Cir. 1991)); *see also Six W. Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.,* 97 Civ. 5499, 2000 WL 264295, at *12 (S.D.N.Y. Mar. 9, 2000) ("When reviewing the pleadings on a motion to dismiss pursuant to Rule 12(b)(6), a court looks only to the four corners of the complaint and evaluates the legal viability of the allegations contained therein.").  "A motion to dismiss is not the proper vehicle to test the credibility of witnesses or the manner in which the plaintiffs will attempt to prove their allegations." *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11-CV-2700-PKC, 2012 WL 3957916, at *13 (S.D.N.Y. Sept. 10, 2012) (citing *United States v. All Right, Title & Interest in Five Parcels of Real Prop. & Appurtances Thereto Known as 64 Lovers Lane,* 830 F.Supp. 750, 756 (S.D.N.Y.1993) ("We do not test the sufficiency of evidence on motions to dismiss. Likewise, we do not assess the admissibility or weight that should be afforded to evidence.")).

Despite this well-established law on the scope of a motion to dismiss, Defendants have extensively argued truth or falsity, an issue of fact that must be determined at a later stage of this litigation.  Evincing the inappropriateness of the consideration of truth or falsity at the motion to dismiss stage, a majority of the cases cited by Defendants go to the issue of "actual malice," and not truth or falsity.[16]  And, of those cases discussing actual malice, most do not involve a motion

---

[16] Again, Defendants are raising the issue of actual malice for the first time in their supplemental briefing, and did not raise the issue of failure to plead actual malice in their motion to dismiss under 12(b)(6). In order to establish actual malice by clear and convincing evidence, a plaintiff must demonstrate that the evidence of record would permit a reasonable juror to conclude that the defendant published a defamatory statement with actual malice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-56 (1986). The actual malice test is a subjective one and requires proof that a defendant published a defamatory statement with "knowledge that it was false or with reckless disregard of whether it was false or not." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964).  While this test is subjective, a court will infer actual malice from objective facts since a "plaintiff may 'rarely be successful in proving awareness of falsehood from the mouth of the defendant himself.'"  *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1089 (3d Cir. 1988) (quoting *Herbert v. Lando*, 441 U.S. 153, 170 (1979)).  Circumstantial evidence of actual malice can take many forms, including evidence of negligence, motive, and intent, such that an accumulation of the evidence and appropriate inferences supports the existence of actual malice. *Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 183 (2d Cir. 2000) (noting that bias of a source, unreliability of a source, and unbelievable nature of a story are all evidence of actual malice, and that reckless conduct may be evidenced in part by failure to investigate thoroughly and verify the facts—particularly where the material is harmful or damaging to the plaintiff's reputation or good name or where the information is from a source known to be hostile to the plaintiff); *St. Amant v.*

to dismiss at all.  *See Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1289 (D.C. Cir. 1988) (granting motion for summary judgment and judgment on the pleadings after more than a year of discovery); *Ryan v. Brooks*, 634 F.2d 726, 727 (4th Cir. 1980) (reversing jury verdict on appeal); *Rosanova v. Playboy Enters., Inc*., 580 F.2d 859, 861 (5th Cir. 1978) (appeal of grant of summary judgment after extensive discovery); *World Boxing Council v. Cosell*, 715 F. Supp. 1259, 1260 (S.D.N.Y. 1989) (granting motion for summary judgment).

The handful of cases relied upon by Defendants that do concern motions to dismiss involve situations where a plaintiff had pled, on the face of the complaint, facts that preclude a finding of actual malice as a matter of law. *See Shatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012) (finding that plaintiff failed to plead actual malice where plaintiff alleged that defamatory statements were sourced from true newspaper articles that defendant had no reason to doubt); *Mayfield v. NASCAR, Inc*., 674 F.3d 369, 378 (4th Cir. 2012) (dismissing on the pleadings where plaintiff failed to plead any facts regarding actual malice, and instead relied on "conclusory allegations[s] – a mere recitation of the legal standard – [that] is precisely the sort of allegations that *Twombly* and *Iqbal* rejected"); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012) (dismissing complaint where it "contains no factual allegations to support actual malice, other than the plaintiffs' own assertions that the statements were false," and instead cites to passages in the alleged defamatory publication showing the opposite); *Egiazaryan v. Zalmayev*, No. 11-CV-2670-PKC, 2011 WL 6097136, *8 (S.D.N.Y. Dec. 7, 2011) (granting

---

*Thompson*, 390 U.S. 727, 732 (1968) (obvious reasons to doubt the veracity of the informant or the accuracy of his reports can show actual malice); *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 668 (1989) (bias or ill will of the author himself, while alone not sufficient, can be evidence of actual malice, as can failure to investigate where it appears inaction is a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity of the charges); *Sharon v. Time, Inc.*, 599 F. Supp. 538, 584 (S.D.N.Y. 1984) (stating that evidence of an author's bias "may provide a motive for defaming someone or explain apparently illogical leaps to unsupported conclusions"); *Hunt v. Liberty Lobby*, 720 F. 2d 631, 645 (11th Cir. 1983) (noting that an inference of actual malice can be drawn where the article is not "hot" news and the defendant's investigation was grossly inadequate in the circumstances).

motion to dismiss in part where plaintiff merely alleged defendant "acted with malice," not actual malice as required in defamation, and without a single factual statement in support).

> 2. Plaintiff Has Averred Sufficient Facts To Create A Genuine Issue of Material Fact Concerning Truth or Falsity and Actual Malice

Here, the material before the Court does not, as a matter of law, demonstrate truth or the absence of actual malice. On the contrary, Plaintiff has affirmatively pled that the statements are false, and Defendants themselves admit that the "complaint further alleges that, in preparing and publishing the Petition, defendants engaged in various conduct evidencing a reckless disregard for truth or falsity."  (Dkt. No. 57 at 10 (citing Dkt. No. 1 at ¶¶ 73-80.).)  This is not a situation where a plaintiff has failed to plead falsity or actual malice, or where the allegations show absence of actual malice.  The cases cited by Defendants in support of their argument regarding truth or falsity and "knowledge of falsehood" are inapposite at best.

Prior to publishing the Petition, Harris and the NJDC knew the only source for the allegations that Mr. Adelson "personally approved of prostitution" was a biased and disgruntled former employee of SCL, who had been fired for cause. (Dkt. No. 1 at ¶¶ 52, 78; No. 19-5.) Defendants also knew that Mr. Adelson vehemently denied the allegations, and that representatives of SCL labeled the false allegations as "scurrilous" and "baseless." (Dkt. No. 19-5.)  Defendants knew Jacobs admitted to committing alleged "illegal activity in Macau," and that SCL alleged Jacobs "stole confidential documents [from SCL] that might contain trade secrets." (*Id.*)  Defendants' complete failure to investigate the truth of the prostitution accusations, the improbability of the accusations, and Jacobs' questionable motive, *inter alia*, show that Defendants' published the Petition with, at the very least, a reckless disregard for the truth.  *See, e.g., Celle*, 209 F.3d at 183; *Schiavone*, 847 F.2d at 1090; (Dkt. No. 1 at ¶¶ 52, 73-81.)

In addition to the renown of Jacobs' mendacity and unreliability, prior to the publication of the Petition, it was widely known in the Jewish community that Mr. Adelson worked extensively with charities he founded to help women escape the endless cycle of prostitution and drug abuse. (Dkt. No. 1 at ¶¶ 17-21, 78.) That a man who expended millions of dollars to fight the effects of drug abuse and prostitution would simultaneously support and personally approve of prostitution in his casinos is so inherently improbable and unbelievable that Defendants should have known the allegations were false. *See, e.g., Schiavone*, 847 F.2d at 1090; (Dkt. No. 1 at ¶¶ 17-21, 75-76).

Defendants' steadfast refusal to retract the Petition, even when confronted with the blatant falsity of the allegations, demonstrates Defendants' bias and ill will toward Mr. Adelson. (Dkt. No. 1 at ¶¶ 67, 81-82.) Professor Dershowitz, acting not as Mr. Adelson's lawyer, but as a concerned Democrat and prominent member of the Jewish community, explained to Harris the falsity of the Petition. (*Id.* at 64-66.) Defendants nevertheless published the Statement in which they affirmatively stated that they "stand by everything [they] said," claiming the Petition was sourced from "credible … news accounts." (*Id.* at ¶ 67.) In making such a statement, Defendants deliberately rejected all information in the AP Article that was favorable to Mr. Adelson and knowingly suppressed information favorable to Mr. Adelson. *See Harte-Hanks*, 491 U.S. at 668; *Celle*, 209 F.3d at 183; *Sharon*, 599 F. Supp. at 584; (Dkt. No. 1 at ¶¶ 73-81). Even after the DCCC—a political bed fellow of the NJDC—realized the error of its defamatory statements, fully retracted the same baseless allegations, and sincerely apologized to Mr. Adelson, Defendants refused to retract the Statement and apologize. (*Id.* at ¶¶ 70-72.)

Defendants' Statement, combined with their knowledge of the falsity of the Petition and the facts showing the inherent improbability of the allegations, demonstrates Defendants' bias, ill

will, and reckless disregard for the truth; thus, at trial, Mr. Adelson will be able to show both falsity and actual malice.

<b><u>CONCLUSION</u></b>

Eight months ago, Defendants filed a motion to dismiss under the District of Columbia's anti-SLAPP statute and Federal Rule of Civil Procedure 12(b)(6), alleging Mr. Adelson's complaint should be dismissed based on the three legal theories of: (1) privileged report of a juridical proceeding; (2) protected opinion; and (3) fair comment. In their supplemental briefing, Defendants belatedly and untimely seek to now raise the issue of the Nevada anti-SLAPP and the issues of truth or falsity, actual malice, and republication, among others. None of these last-minute arguments have merit.  Defendants cannot avail themselves of the protection of any anti-SLAPP, and cannot satisfy the requirements of Rule 12(b)(6).  Defendants' multiple motions to dismiss should be denied and Mr. Adelson should now be allowed to proceed with discovery in this matter.

Dated: New York, New York　　　　　　　　Respectfully submitted,
　　　　May 21, 2013


　　　　　　　　　　　　　　　　　　　　　/s/ L. Lin Wood_____

　　　　　　　　　　　　　　　　　　　　　L. Lin Wood (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　lwood@whetriallaw.com
　　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 774588
　　　　　　　　　　　　　　　　　　　　　Amy M. Stewart (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　astewart@whetriallaw.com
　　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 141481
　　　　　　　　　　　　　　　　　　　　　Jonathan D. Grunberg (*pro hac vice*)
　　　　　　　　　　　　　　　　　　　　　Georgia Bar No. 869318
　　　　　　　　　　　　　　　　　　　　　jgrunberg@whetriallaw.com
　　　　　　　　　　　　　　　　　　　　　**Wood, Hernacki & Evans, LLC**
　　　　　　　　　　　　　　　　　　　　　1180 West Peachtree Street N.W.
　　　　　　　　　　　　　　　　　　　　　Suite 2400
　　　　　　　　　　　　　　　　　　　　　Atlanta, Georgia 30309

　　　　　　　　　　　　　　　　　　　　　- and -

David M. Olasov
dolasov@olasov.com
**Olasov + Hollander LLP**
27th Floor
1325 Avenue of the Americas
New York, NY 10019

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of May, 2013, a true and correct copy of the foregoing **Supplemental Memorandum Of Law In Opposition To Defendants' Special Motion To Dismiss Pursuant To The Nevada Anti-SLAPP Statute And Motion To Dismiss Pursuant To Rule 12(B)(6)** was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the following counsel of record:

>Lee Levine
Gayle Sproul
Chad R. Bowman
Seth D. Berlin
Rachel F. Strom
**LEVINE SULLIVAN KOCH & SCHULZ, LLP**
321 West 44th Street, Suite 510
New York, New York 10036
Telephone: 212-850-6100
llevine@lskslaw.com
gsproul@lskslaw.com
cbowman@lskslaw.com
sberlin@lskslaw.com
rstrom@lskslaw.com

>/s/ L. Lin Wood