IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

SHELDON G. ADELSON,

                                    Plaintiff,

             v.

DAVID A. HARRIS, MARC R. STANLEY, and
NATIONAL JEWISH DEMOCRATIC COUNCIL,

                                    Defendants.

Case No. 12-Civ-6052-JPO

ECF Case

## MEMORANDUM OF LAW IN RESPONSE TO DEFENDANTS' STATEMENT OF FEES AND COSTS

L. Lin Wood
lwood@whetriallaw.com
Georgia Bar No. 774588
(admitted *pro hac vice*)
Jonathan D. Grunberg
Georgia Bar No. 869318
(admitted *pro hac vice*)
Amy M. Stewart
astewart@whetriallaw.com
Georgia Bar No. 141481
(admitted *pro hac vice*)
**Wood, Hernacki & Evans, LLC**
1180 West Peachtree Street N.W.
Suite 2400
Atlanta, Georgia 30309

David M. Olasov
dolasov@olasov.com
**Olasov + Hollander LLP**
27th Floor
1325 Avenue of the Americas
New York, NY 10019

*Attorneys for Plaintiff Sheldon G. Adelson*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... i

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 3

**I.**   LEGAL STANDARDS ................................................................................................ 3

**II.**   DEFENDANTS' SKELETAL SUMMARY OF FEES PRECLUDES RECOVERY ....... 6

**III.**   DEFENDANTS' REQUESTED "LODESTAR" IS UNREASONABLE ........................ 9

   **A.**   The Total Time Claimed by Defendants Is Unreasonable on Its Face ............................. 9

   **B.**   LSKS Billed for Excessive, Redundant, and Unnecessary Work.................................... 14

   **C.**   Defendants' Supporting Affidavits Fail to Demonstrate that the Requested Fee Is
Reasonable ............................................................................................................................. 16

**IV.**   DEFENDANTS HAVE NOT POINTED TO ANALOGOUS AWARDS IN SIMILAR
CASES ................................................................................................................................... 19

**V.**   DEFENDANTS CAN ONLY RECOVER FEES, IF AT ALL, FOR WORK DONE ON
THEIR NEVADA ANTI-SLAPP MOTION ............................................................................. 20

**VI.**   ANY AWARD SHOULD BE REDUCED IN LIGHT OF THE *BRUNZELL* FACTORS
................................................................................................................................................ 22

   **A.**   First *Brunzell* Factor: The Excellence of LSKS's Attorneys Cuts Against Defendants'
Requested Attorneys' Fees ................................................................................................... 23

   **B.**   Second *Brunzell* Factor: The Work Was Limited........................................................... 23

   **C.**   Third *Brunzell* Factor: Despite the Overlapping Issues, Brief After Brief, LSKS Billed
and Billed .............................................................................................................................. 24

   **D.**   Fourth *Brunzell* Factor: Defendants Eventually Prevailed ............................................. 24

**VII.**   IN THIS FEDERAL DIVERSITY ACTION, DEFENDANTS ARE NOT ENTITLED
TO COSTS UNDER THE NEVADA ANTI-SLAPP STATUTE............................................... 24

CONCLUSION........................................................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................. 26

## **TABLE OF AUTHORITIES**

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Assoc*iation *v. County of Albany*, 522 F.3d 182 (2d Cir. 2007) ................................................................................................................... 17

*Brunzell v. Golden Gate National Bank*, 455 P.2d 31 (Nev. 1969) ...................................... passim

*Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016 (9th Cir.2003) ................. 25

*Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315 (2008) .................................. 6, 10, 20

*Containment Tech., Inc. v. Am. Society of Health Sys. Pharmacists*, No. 1:07-CV-0997-DFH-TAB, 2009 WL 2750093 (S.D. Ind. Aug. 26, 2009) ................................................... 10, 19, 23

*Gardner v. Martin*, No. 05-CV-769-HU, 2006 WL 2711777 (D. Or. Jan. 23, 2008) ................. 13

*Haley v. Dist. Ct.*, 273 P.3d 855 (Nev. 2012) ............................................................... 22

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) .................................................... 4, 5, 8, 19

*John v. Douglas Cnty. Sch. Dist.*, 125 Nev. 746 (2009) ..................................................... 6

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir 1974)................................... 5

*Luessenhop v. Clinton Cnty.*, 558 F. Supp. 2d 247 (N.D.N.Y. 2008).......................................... 10

*Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242 (2007) ......................................... passim

*Moreau v. The Daily Indep.*, No. 1:12-CV-01862-LJO-JLT, 2013 WL 796621 (E.D. Cal. Mar. 4, 2013) ...................................................................................................................... 10

*Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978) ...................................................... 8

*Plevin v. City and Cnty. of San Francisco*, No. 11-cv-2359-MEJ, 2013 WL 2153660 (N.D. Cal. May 16, 2013)........................................................................................................ 5

*Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, 2:10-CV-0513-LRH-GWF, 2012 WL 5839048 (D. Nev. Nov. 16, 2012) ................................................................... passim

*S.B. Beach Properties v. Berti*, 39 Cal. 4th 374 (2006) ............................................... 6, 20

*Shuette v. Beazer Homes Holdings Corp.*, 124 P.2d 530  (Nev. 2005) ......................................... 3

*Smith v. Payne*, No. C-12-01732-DVR, 2013 WL 1615850 (N.D. Cal. April 15, 2013)............. 21

*Snyder v. Creative Loafing, Inc.*, No. 2011-CA-003168B (Sup. Ct. D.C. July 29, 2011)............ 11

*Stubbs v. Strickland*, 297 P.3d 326 (Nev. 2013) .............................................................. 6

*The Crescent Publ'g Group, Inc* v. *Playboy Enters., Inc.*, 245 F.3d 142 (2d Cir. 2001) .............. 4

*Vestin Realty Mortgage II, Inc. v. Klaas*, 08-CV-2011-AJB-MDD, 2013 WL 1411852 (S.D. Cal. Apr. 8, 2013) .......................................................................................... 25

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 98 CIV.7128 BSJ, 2004 WL 213032 (S.D.N.Y. Feb. 3, 2004) ............................................................................ 10

**Statutes**

Cal. Civ. Proc. Code § 425.16 .................................................................................. 6

Nevada Revised Statutes § 41.660............................................................................ 22

Nevada Revised Statute § 41.670(1)...................................................................... 1, 3, 6

**Treatises**

*Glossary of Ins. Mgmt. Terms,* Int'l Risk Mgmt. Inst. (9th ed. 2004) ........................................ 16

## INTRODUCTION

In a case that was decided by a motion addressed to the pleadings, with all discovery stayed and not a single document request, interrogatory or deposition, Defendants seek fees and expenses of over $1,000,000, representing 2,200 hours of lawyer and paralegal time.  On its face, that is not a "reasonable" award.  Indeed, the hours claimed are especially hard to accept given the extensive experience of Defendants' counsel in this type of litigation, as illustrated by the fact that most of their argument on the applicability of the District of Columbia anti-SLAPP statute was cribbed *verbatim* from a brief filed in a prior, unrelated case, changing only the names of the parties.

What is worse, Defendants seek this astronomical award based only on vague summaries of total hours worked in sweeping categories such as "communications with clients, carrier," and "monitoring of related litigation," without disclosing what tasks were actually performed, or by whom.  No client would pay its attorney $1,000,000 for such a case without some detail explaining how that fee is justified, and this Court should demand no less.  Rather, the Court should apply the Nevada anti-SLAPP statute as written and award only Defendants' "reasonable" attorneys' fees.  Nev. Rev. Stat. § 41.670(1).  Applying that standard, Defendants' fee request should be rejected or substantially reduced for several reasons:

*First*, Defendants' skeletal summary of their counsel's work in this case frustrates a principled inquiry into the reasonableness of the requested fee.  Defendants provide no precise identification of tasks performed, such as research, drafting or editing, or of who performed such tasks.  Thus, Defendants' submission forecloses any determination by the Court as to which tasks, if any, were excessive, redundant, or otherwise unnecessary, or as to the abilities of the

lawyers who performed specific tasks, both of which are essential in determining the reasonableness of a fee application.  (*See infra* pp. 6-8.)

*Second*, even without any detailed information about what Defendants' counsel actually *did* for 2,200 hours, that amount is excessive on its face.  (*See infra* pp. 9-15.)  We are not aware of any case in which in which a party obtained a fee award even approaching that requested here for two rounds of overlapping dispositive motions, without any discovery and only one in-person hearing.  (*See* Dkt. No. 81, *passim*.)  Moreover, several categories of work for which Defendants seek to recover were plainly unnecessary to the defense of this case, such as 55.6 hours for "factual investigation and collection of *potentially* relevant documents" (Dkt. No. 82 at ¶ 18(b) (emphasis added)), which presumably include the three volumes of exhibits to the Declaration of Ms. Strom that the Court rightly ignored, 90.3 hours spent speaking with clients and their insurance carrier, (*id.* at ¶ 18(c)), and 91.3 attorney hours spent "monitoring related litigation in Nevada and Florida," (*id.* at ¶ 18(e)).  (*See infra* pp. 14-15.)  None of the declarations submitted in support of Defendants' application diminish its patent unreasonableness.  (*See infra* pp. 15-18.)

*Third*, Defendants have not identified a single analogous case awarding fees for 2,200 hours of work for an anti-SLAPP motion. This factor alone weighs against whatever lodestar amount the Court deems appropriate. (*See infra* pp. 18-19.)

*Fourth*, even if the Court were to accept Defendants' "lodestar" in general, Nevada law precludes recovery of attorneys' fees for work that is unrelated to Defendants' successful Nevada anti-SLAPP motion—such as their unsuccessful D.C.-based anti-SLAPP and 12(b)(6) motions, their opposition to Plaintiffs' motion to strike, and their Nevada-based 12(b)(6) motion. (*See infra* pp. 19-21.)

*Fifth*, any award should be reduced in the light of four factors that must be considered under Nevada law: the qualities of the advocate, the character of the work to be done, the work actually performed, and the result.  Here, although the result was undoubtedly favorable for Defendants, the widely recognized experience and ability of Defendants' counsel should have produced that result *more efficiently*, in *fewer hours* than another lawyer would take, but that plainly did not happen.  Moreover, the work to be done was limited, consisting of two rounds of briefing and a single hearing, and the issues were not especially novel or complex (with the exception of the choice-of-law issue, which Defendants lost).  And the work actually done was excessive at best. (*See infra* pp. 21-24.)

*Sixth*, whatever the disposition of Defendants' request for attorneys' fees, their request for $25,153.43 in expenses should be denied.  Federal law, not the Nevada anti-SLAPP statute, governs the award of costs, and Defendants have not properly moved for such an award under Federal Rule of Civil Procedure 54(d). (*See infra* pp. 24.)

## ARGUMENT

## I.   LEGAL STANDARDS

It is common ground that Nevada law governs the award of attorneys' fees pursuant to the Nevada anti-SLAPP statute, which provides for an award of "reasonable costs and attorneys' fees to the person against who the action was brought."  Nev. Rev. Stat. § 41.670(1);  (*see* Dkt. No. 81 at 1.)  As the parties also agree, "'[t]he method upon which a reasonable fee is determined is subject to the discretion of the court,'" which "'is tempered only by reason and fairness'"; the Court "'is not limited to one specific approach'" in determining a reasonable fee, but "'the analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a lodestar.'"  (Dkt. No. 81 at 1 (internal quotation marks omitted) (quoting *Shuette v. Beazer Homes Holdings Corp.*, 124 P.2d 530, 548-49 (Nev. 2005)).)

Whichever method is chosen as a starting point, however, "the court must continue its analysis

by considering the requested amount in light of the four factors enumerated" by the Nevada

Supreme Court in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31 (Nev. 1969).  (Dkt. No.

81 at 1 (quoting *Shuette*, 124 P.3d at 548-49).)  These factors are:

> (1) the qualities of the advocate: his ability, his training, education, experience,
> professional standing and skill; (2) the character of the work to be done: its
> difficulty, its intricacy, its importance, time and skill required, the responsibility
> imposed and the prominence and character of the parties where they affect the
> importance of the litigation; (3) the work actually performed by the lawyer: the
> skill, time and attention given to the work; (4) the result: whether the attorney was
> successful and what benefits were derived.

*Brunzell*, 455 P.2d at 33.  The court has discretion when weighing these *Brunzell* factors,

"though no one element should predominate or be given undue weight."  *Id.*

    As the United States Supreme Court has held, a party claiming attorneys' fees under the

"lodestar" method, such as Defendants in this case, "should submit evidence supporting the

hours worked and rates claimed.  Where the documentation of hours is inadequate, the district

court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).[1]  A

"skeletal" itemization of fees, absent any specificity in itemizing the time spent, is insufficient to

support a fee award.  *See The Crescent Publ'g Group, Inc v. Playboy Enters., Inc.*, 245 F.3d 142,

148 (2d Cir. 2001) (reversing fee award, in part because prevailing defendant "did not submit

copies of its billing records until after [plaintiff's] opposition papers had been filed" and district

court "accepted the number of hours represented therein at face value," although they "were

vague and often illegible"); *Rebel Commc'ns, LLC v. Virgin Valley Water Dist.*, 2:10-CV-0513-

LRH-GWF, 2012 WL 5839048, at *2 (D. Nev. Nov. 16, 2012) (finding insufficient an

---

[1]   Although *Hensley* did not explicitly refer to the "lodestar" method, the Court grounded its
analysis in it: "The most useful starting point for determining the amount of a reasonable fee
is the number of hours reasonably expended on the litigation multiplied by a reasonable
hourly rate." *Hensley*, 461 U.S. at 433.

application for a fee award where attorney's affidavit listed "four approximate blocks of time ('approximately' 22 hours, 25 hours, 12 hours, and 61 hours) associated with four tasks (responding to the amended complaint, reviewing the other defendants' motion to dismiss, responding to requests for production, and preparing for and attending depositions)"); *Plevin v. City and Cnty. of San Francisco*, No. 11-cv-2359-MEJ, 2013 WL 2153660, at *7 (N.D. Cal. May 16, 2013) (holding that in calculating a reasonable number of hours for an award of attorneys' fees under California's anti-SLAPP statute, "the applicant must justify the claim by submitting detailed time records").

Moreover, the Court "should exclude from this initial fee calculation hours that were not 'reasonably expended,'" *Hensley*, 461 U.S. at 434 (quoting S. Rep. No. 94-1011, p. 6 (1976)), and "[c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.*

*Hensley* also recognized that "the product of reasonable hours times a reasonable rate [i.e., lodestar] does not end the inquiry." *Id.* at 434. Among the factors a court should consider is the "awards in similar cases." *Id.* at 430 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir 1974)).

Finally, because the predicate for a fee award is that the defendants are the prevailing parties, Nevada law only permits recovery of fees billed for a successful anti-SLAPP motion, rather than fees for motions filed on alternate legal bases or for unsuccessful anti-SLAPP motions, such as Defendants' initial motion to dismiss under the District of Columbia anti-SLAPP statute. *Rebel Commc'ns*, 2012 WL 5839048, at *1-2 ("Since it is the Anti-SLAPP statute that authorizes attorneys' fees, and since the court did not grant a motion based on the Anti–SLAPP statute until it considered the renewed special motion to dismiss, defendants Smith

5

and Gustaveson may not recover attorneys' fees for work prior to work conducted on the

renewed special motion to dismiss."); *see also Christian Research Inst. v. Alnor*, 165 Cal. App.

4th 1315, 1320 (2008) (holding a "defendant may recover fees and costs only for the [anti-

SLAPP] motion . . . , not the entire litigation").[2]

## II.   DEFENDANTS' SKELETAL SUMMARY OF FEES PRECLUDES RECOVERY

Defendants' skeletal summary of their work in this case frustrates a principled inquiry

into the reasonableness of the requested fees, precluding recovery.  Rather than identify the

actual tasks performed by individual lawyers and paralegals, Defendants have identified only

broad categories of work, such as 101 hours for "monitoring of related litigation in Nevada and

Florida" and 504.7 hours for "preparation of the opening brief and accompanying declarations"

for the initial Motion to Dismiss/SLAPP motion, (Dkt. No. 82 at ¶ 18), providing the total hours

claimed for each individual within the broad category, (*id.*at Ex. A.)  In several instances the

times listed for individuals within a category exceed 50 hours[3]— and in some cases exceed 100

---

[2]   The Nevada Supreme Court looks to California caselaw when construing the Nevada anti-
SLAPP statutes "because California's anti-SLAPP statute is similar in purpose and language
to Nevada's anti-SLAPP statute." *John v. Douglas Cnty. Sch. Dist.*, 125 Nev. 746, 756
(2009); *see, e.g.*, *Stubbs v. Strickland*, 297 P.3d 326, 329 (Nev. 2013) (citing *S.B. Beach
Properties v. Berti*, 39 Cal. 4th 374 (2006)) (relying on a California Supreme Court holding
that attorneys' fees cannot be awarded when a defendant failed to file an anti-SLAPP
motion prior to dismissal of the plaintiff's action). California's statute provides that "a
prevailing defendant on a special motion to strike shall be entitled to recover his or her
attorney's fees and costs," Cal. Civ. Proc. Code § 425.16. Similarly, the Nevada statue
provides that "[i]f the court grants a special motion to dismiss filed pursuant to NRS
41.660[, . . .] the court shall award reasonable costs and attorney's fees to the person against
whom the action was brought." Nev. Rev. Stat. § 41.670.

[3]   (*See* Dkt. No. 82, Ex. A at 2-3 (Preparation of opening brief and declarations, 8/8/12–
9/21/12—C. Bowman (53.8); Preparation of reply brief, 9/27/12-3/5/13—G. Sproul (82.1),
R. Strom (83.8). P. Kabat (55.0); Preparation of opening brief and declarations, 2/6/13-
5/13/13— G. Sproul (83.5), S. Berlin (95.8), C. Bowman (85.0); Preparation of reply brief,
5/3/13-9/23/13—S. Berlin (93.0), C. Bowman (73)).)

hours[4]—yet there is no breakdown of what tasks any individual actually performed within each of these categories.

The Court thus has no basis upon which to assess, for example, what tasks were performed by Mr. Berlin—the senior partner "primarily responsible for all anti-SLAPP-related briefing and substantive briefing in support of defendants' D.C. law-based motion to dismiss"— in the 101.1 hours he spent on the opening papers in the second round of briefing, or what tasks Ms. Sproul performed in the 130.7 hours she spent on the same papers.  Without the benefit of billing records or more detailed declarations, the Court can only guess at the amount of time each of these lawyers and others spent on discrete tasks, such as researching, writing, or editing the motions and briefs, or the hours spent assembling the mostly irrelevant volumes of exhibits to the Strom Declaration, which the Court never considered.

Indeed, Defendants' evidence in support of their application raises far more questions than it answers.  For example, it is reasonable to question why Defendants required nearly 400 attorney hours to prepare their opening Nevada-based brief and declarations, as compared with the roughly 450 attorney hours for the D.C.-based opening brief and declarations, given that the Nevada opening brief was significantly shorter, almost half the cases were recycled from previous briefs, and the volume of declarations and new exhibits was minuscule when compared with the materials adduced in support of the D.C. opening brief.  (*See* Wood Decl., Exs. A and B; Morril Decl. at ¶¶ 10-13, 20; Moneer Decl. at ¶ 33.)  Similarly, the reply briefs in support of the D.C. and Nevada combined motions also involved overlapping cases and issues, (Wood Decl., Ex. B), but nearly 300 attorney hours were spent on each, (Dkt. No. 82, Ex. A at 2-3; *see* Morril

---

[4]   (*See id.* (Preparation of opening brief and declarations, 8/8/12-9/21/12—G. Sproul (130.7); S. Berlin (101.1), R. Strom (113.0); Preparation of reply brief, 9/27/12-3/5/13—S. Berlin (123.8)).)

Decl. at ¶ 20 ("I would question why . . . nearly the same number of hours (93%) were required for the [D.C.] reply brief as the main [D.C.] brief."); Moneer Decl. at ¶ 42 (noting that as a long-anti-SLAPP practitioner, he has never billed 300 hours for a reply brief, as such briefs often take half the time as the opening briefs).)  And one can also justifiably question why five lawyers and at least one paralegal consumed more than 100 hours "monitoring related litigation in Nevada and Florida," (Dkt. No. 82 at 11), or why those unknown tasks were reasonable ones for the defense of this case. (*See* Morril Decl. at ¶¶ 21-22; Moneer Decl. at ¶ 40.)

Defendants' failure to detail the time spent on discrete legal issues likewise prevents a fair and reasonable inquiry into the requested fees. (*See* Dkt. No. 82, Ex. A; Morril Decl. at ¶¶ 10-13; Moneer Decl. at ¶¶ 36-37.) The Nevada anti-SLAPP statute only allows recovery of fees reasonably expended on a successful anti-SLAPP motion, as opposed to ancillary motions or unsuccessful anti-SLAPP motions. (*See infra* § V.) As there is no principled way to discern the fees for Defendants' Nevada-based anti-SLAPP motion, the Court should deny the fees altogether. *Cf. Hensley*, 461 U.S. at 437 n.12 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir. 1978) ("'As for the future, we would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.'")).

In short, by failing to provide any break-down by tasks, Defendants have foreclosed the Court from determining whether specific tasks were "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Moreover, by failing to indicate the hours spent on discrete legal issues, Defendants have prevented the Court from assessing the only fees that could be recoverable, those for the Nevada anti-SLAPP sections of the Nevada-based briefs. *See*

*Rebel Commcn's*, 2012 WL 5839048, at *2. Likewise, the skeletal nature of Defendants' submission also hampers the Court in applying certain of the *Brunzell* factors, such as (1) "the qualities of the advocate: his ability, his training, education, experience, professional standing and skill" and (3) "the work actually performed by the lawyer: the skill, time and attention given to the work." *Brunzell*, 455 P.2d at 33. Defendants could easily have provided sufficient detail to allow an appropriate inquiry into their fee application, as evidenced by their exacting measure of time, down to tenths of an hour. (*See* Dkt. No. 82 at ¶ 18.) But they chose not to do so, and their application should therefore be denied. *See Rebel Commcn's*, 2012 WL 5839048, at *2 (denying requested fee and noting that "counsel affirms that he spent '109.8 hours' on various tasks while his associate spent '10.0 hours.' Such exacting measurements—down to tenths of hours— suggest that counsel can provide an equally exacting itemization of time spent"; instead he lists four approximate blocks of time … associated with four tasks).

## III.   DEFENDANTS' REQUESTED "LODESTAR" IS UNREASONABLE

### A.  The Total Time Claimed by Defendants Is Unreasonable on Its Face

Plaintiff is not aware of any case in which a party obtained a fee award even approaching $1,000,000 for two-rounds of overlapping dispositive motions, without any discovery and only one in-person hearing, nor have Defendants even attempted to point to an analogous case.[5] (*See* Dkt. No. 81, *passim*; Morril Decl. at ¶ 13; Moneer Decl. at ¶¶ 6, 26.)  There are, however, many cases reducing outsized fees that pale as compared with those claimed by Defendants' counsel.

---

[5]   Declarant Moneer, a recognized expert and long-time practitioner in the realm of anti-SLAPP, provided a list of his significant prior SLAPP fee awards, none of which approach $1,000,000, or allowed for recovery for 2,200 hours of work. (Moneer Decl. at ¶¶ 12, 17-18, 20-25.)  Among Mr. Moneer's SLAPP cases were the *Hafif* matters—a 7 year odyssey through the trial courts, California Court of Appeals, and the California Supreme Court, for which he generated a fee of roughly $400,000, working 1,000 hours, and his co-counsel likely generated another $200,000. (Moneer Decl. at ¶¶ 17, 26.) This litigation pales in comparison, yet Defendants seek $1,000,000, for working 2,200 hours.

*See, e.g.*, *Christian Research Institute*, 165 Cal. App. 4th at 1319, 1329-30 (affirming reduction of $250,000 fee request to $21,300 in anti-SLAPP case where billing records were vague and padded, and therefore noncredible).

Defendants have proffered no justification for such an unprecedented award.  Their claimed hours—equivalent to approximately thirty-eight 50-hour work weeks, seventeen of which were for preparing Defendants' D.C. and Nevada combined anti-SLAPP and 12(b)(6) motions—are, on their face, "greater than the number of hours reasonably competent counsel would have needed to evaluate, research, and file the appropriate documents toward dismissal." *Moreau v. The Daily Indep.*, No. 1:12-CV-01862-LJO-JLT, 2013 WL 796621, at *2 (E.D. Cal. Mar. 4, 2013) (finding that 164.6 hours of work in furtherance of an anti-SLAPP motion to strike and motion for fees was excessive, and awarding only 40 hours); *see also Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242, 1251 (2007) (expressing disbelief that experienced counsel "spent approximately *four* 50-hour work weeks preparing the anti-SLAPP motion"); *Luessenhop v. Clinton Cnty.*, 558 F. Supp. 2d 247 (N.D.N.Y. 2008) (finding over 90 hours to prepare a 40 page memorandum of law excessive where counsel was expert on the topics discussed therein); *cf. Containment Tech., Inc. v. Am. Society of Health Sys. Pharmacists*, No. 1:07-CV-0997-DFH-TAB, 2009 WL 2750093, at*1-2 (S.D. Ind. Aug. 26, 2009) (approving $510,000 in fees when anti-SLAPP case proceeded through extensive discovery (with numerous depositions), and summary judgment motions filed by several defendants, and involved complex areas of law including choice of law, the *Erie* doctrine, and substantive scientific debate requiring "all defense counsel to dig into the science and engineering involving in compounding aseptic isolators"); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, 98 CIV.7128 BSJ, 2004 WL 213032, at *3 (S.D.N.Y. Feb. 3, 2004) (finding reasonable "1,057 hours of work for all of

[defense counsel's] employees involved in this litigation," which "spanned three years and included motions, depositions and discovery requests and disputes").

Defendants' counsel are undoubtedly among the most experienced in the nation in cases of this type and, as Defendants note, "were responsible for development of much of the law in this area [of defamation], and were true defamation and First Amendment experts." (Dkt. No. 84 at ¶ 5.)  Indeed, "[p]artner Seth Berlin (also recognized as a leading lawyer in this area by Chambers and Best Lawyers) had substantial experience successfully invoking a number of different jurisdictions' anti-SLAPP statutes, including having used D.C.'s then brand new statute to defend a libel lawsuit [brought by] another angry billionaire." (*Id.* at ¶ 6.)  Levine Sullivan Koch & Schulz, LLP ("LSKS") has been named the "Law Firm of the Year" for First Amendment litigation in 2013 and has defended anti-SLAPP actions in at least seven states. (Dkt. No. 82 at ¶¶ 10-11.)

As compared with a less specialized and less experienced firm, LSKS's wealth of experience should reasonably be expected to reduce the number of hours required to research and brief anti-SLAPP motions and litigate a case that turned almost exclusively on legal issues regarding defamation and anti-SLAPP statutes. (*See* Morril Decl. at ¶¶ 18-19; Moneer Decl. at ¶¶ 32-33, 42)  This is well illustrated by the fact that LSKS cribbed its argument on the applicability of the D.C. anti-SLAPP statute in this case from a brief it filed in a prior, unrelated case, *Snyder v. Creative Loafing, Inc.*, No. 2011-CA-003168B (Sup. Ct. D.C. July 29, 2011), copying nearly half of that section of their brief *verbatim*. (*Compare* Dkt. No. 18 at 26-29 *with* Wood Decl., Ex. D at 19-23; *see* Wood Decl., Ex. C.)

This was not a particularly complex case, and there is well-developed law regarding most of the major issues in the case.  Motions to dismiss based on the fair reporting privilege and the

opinion defense are commonplace in this area of the law.  (Morril Decl. at ¶ 18.)  While there was perhaps less precedent with regard to the relevance of hyperlinks as disclosing the source of an opinion, there was recent D.C. Circuit authority and, as noted in the Court's opinion, significant material from which to reason by analogy.  (*Id.* at ¶ 19.)  Moreover, there was extensive overlap between the cases and issues covered in the D.C. and Nevada combined anti-SLAPP and 12(b)(6) briefs, as shown in Exhibits A and B to the Wood Declaration.  It is thus difficult to imagine how one of the nation's most experienced First Amendment law firms would need to spend 1,556 hours researching and briefing their anti-SLAPP and 12(b)(6) motions,[6] as Defendants claim, and 2,200 hours litigating a case that turned almost exclusively on legal issues regarding defamation and anti-SLAPP statutes.  Other courts, when faced with similarly excessive fee requests from counsel of similar caliber, have reduced awards substantially.

For example, in *Maughan* v. *Google Technology, Inc.*, the court affirmed an award to Google's attorneys (Quinn Emanuel) of $23,000 in fees and costs when their initial request totaled over $112,000. 143 Cal. App. 4th 1242, at 1252 (2007).  The trial court in *Maughan* noted that "counsel for [Defendants] spends a large portion of its brief convincing the court that they are experts in this type of case," yet they claimed "to spend 200 hours researching the relevant law and drafting the anti-SLAPP motion."  *Id.*  As the trial court observed, that "seem[ed] excessive especially since Google's counsel acknowledge that they are old hats at anti-SLAPP motions and experts in defamation and the CDA."  *Id.* at 1251.  Indeed, Google's counsel was on the "cutting edge" of litigating the issues presented and had handled some of the

---

[6]     This number only includes the time Defendants claim they spent preparing their opening briefs, supporting declarations, and replies for their D.C. and Nevada anti-SLAPP motions. (Dkt. No. 82 at ¶ 18.)  It does not include the time they spent strategizing about the case, communicating with people, monitoring ancillary litigation, and investigating the facts and collecting "potentially" relevant documents. (*Id.*)

only litigation interpreting the statute at issue.  *Id.* at 1251-52.  Thus, Google's "motion should not have been such a monumental undertaking," requiring $98,000 in fees and more than 200 hours.  *Id.* at 1251.

Similarly, in *Gardner v. Martin*, the district court drastically cut the fees for the defense attorneys who prevailed under Oregon's anti-SLAPP statute.  No. 05-CV-769-HU, 2006 WL 2711777, at *11-12 (D. Or. Jan. 23, 2008).  Defense counsel in *Gardner* were also "highly seasoned specialist[s]," who had recently litigated under California's related anti-SLAPP statute. *Id.* at *8.  The court opined that experienced counsel should handle a "case more efficiently and with fewer hours needed for research and preparation of the motion than a less experienced, but competent junior lawyer."  *Id.* at 11.  And if senior lawyers do "work up the case themselves," then there should be "fewer hours billed than would be reasonably expended by a more junior attorney at a lower hourly rate."  *Id.*  Notably, the court was troubled by the "approximately 85 hours on legal research and over 130 hours on the briefing" of the anti-SLAPP motion, even when a second round of briefing was required and the parties contested the applicability of the anti-SLAPP statute in federal court.  *Id.*

Here, the hours claimed *just* by the three individuals acknowledged to be partners (Messrs. Levine and Berlin, and Ms. Sproul (Dkt. No. 84 at ¶ 6)), and *just* for preparation of the anti-SLAPP and 12(b)(6) motion papers, total 906.9. (Dkt. No. 82, Ex. at pp. 2-3.) This amount alone dwarfs the billing by the experienced counsel in both *Maughan* and *Gardner*.  And, as in those cases, the exorbitant number of hours cannot be explained away by inefficient junior associates.  If the attorneys' fees requested in *Maughan* and *Gardner* were unreasonable, surely

those requested by defendants here are unreasonable as well.[7]  (*See* Moneer Decl. at ¶ 42 ("[I]t is my firm opinion that LSKS's bill is unconscionable on its face").)

Significantly, Plaintiff's counsel billed roughly 500 hours responding to Defendants' motions,[8] about 1/3 the time claimed by Defendants for briefing the same motions. (Wood Decl. at ¶ 4.) In cases where counsel for the parties have been equally matched, courts have looked to the hours billed by opposing counsel as a factor in reducing a requested fee award.  *See, e.g., Maughan*, 143 Cal. App. 4th 1242, 1251 (affirming reduction of requested hours from over 200 to 50 based, in part, on opposing counsel's billing of 50 hours in the same matter).

### B.  LSKS Billed for Excessive, Redundant, and Unnecessary Work

Given the sheer number of hours billed, it would be surprising if all the work performed were truly necessary. Unfortunately, the precise extent of the unnecessary work for which fees are claimed has been masked by Defendants' failure to come forward with evidence of the time billed for discrete tasks.  Even so, several excesses shine through.

*First*, LSKS billed for 55.6 hours and $25,854 "[f]or factual investigation and collection of *potentially* relevant documents."  (Dkt. No. 82 at ¶ 18(b) (emphasis added).)  Assuming this charge includes the investigation and collection of documents that eventually became the three volumes of exhibits to the Declaration of Ms. Strom, there is no basis for Defendants to recoup

---

[7]   Declarant Moneer reasons that he, as an experienced anti-SLAPP practitioner, would have spent no more than 100 hours on the anti-SLAPP portion of the Nevada opening brief, no more than 50 hours on the Nevada anti-SLAPP reply, and no more than 350 hours for the entire combined Nevada anti-SLAPP and 12(b)(6) motion, resulting in a fee of no more than $162,750. (Moneer Decl. at ¶ 42.) And for the D.C. combined motions, he would have billed no more than 450 hours, totaling $209,250.  (*Id.*) Conversely, the Court could apply a negative multiplier of 5.0 to 10.0 to the lodestar product that results when LSKS's requested hours are multiplied by their $465.00 rate. (*See* Moneer Decl. at ¶¶ 34, 46.)

[8]   This figure does not include time spent on Plaintiff's Motion to Strike or Motion for Discovery Pursuant to Rule 56(d).

this fee, as the Court specifically stated that they "were not relied on by the Court in its adjudication of this matter," (Dkt. No. 80 at 56), and the majority of the documents were not even cited in the argument sections of Defendants' briefs, (*see* Dkt. No. 28 at 12 (detailing the irrelevant exhibits); *see also* Morril Decl. at ¶ 22); *see Maughan*, 143 Cal App. 4th at 1252 (quoting trial Court's finding that despite the helpfulness of the factual record developed by the anti-SLAPP movant, "it simply did not merit the time expended"). These excessive hours were likely exacerbated through overstaffing, as LSKS assigned six lawyers to this task. (*See* Dkt. 82, Ex. A at 1; Morril Decl. at ¶ 21; Moneer Decl. at ¶ 31.)

*Second*, LSKS billed 90.3 hours, for a total of $41,989.50, for time spent speaking with clients and their insurance carriers. (Dkt. No. 82 at ¶ 18(c).)  Given that no discovery occurred in this case, it is difficult to conceive that LSKS spent the equivalent of two weeks of billable hours speaking to their clients and its insurer. These are excessive on their face. (*See* Moneer Decl. at ¶ 39.)

*Third*, LSKS billed 72.6 hours, for a total of $33,759, for time speaking with Plaintiff's counsel and the Court.  (Dkt. No. 82 at ¶ 18(d).)  That is remarkable, because Plaintiff's counsel billed no more than 35 hours for communications with the Court and Defendants' counsel, including drafting of letters to the Court—about the same as Mr. Berlin alone.  (*Compare* Dkt. 82, Ex. A at 1 *with* Wood Decl. at ¶ 6.)  Defendants' assertion that their counsel spent more than double the time of Plaintiff's counsel on mutual communications and communications with the Court is impossible to explain, unless Defendants' counsel needlessly included multiple participants in every call, had multiple lawyers revise the pedestrian letters to the Court, or spent 37 hours on *ex parte* communications with the Court.

*Fourth*, LSKS billed 91.3 attorney hours, for a total of $44,394.50, for time spent "monitoring related litigation in Nevada and Florida." (Dkt. No. 82 at ¶ 18(e).) A simple Westlaw or Lexis alert would have "monitored" currently pending litigation with a mere click of a mouse, all without the need for almost $45,000 of attorney billable time. Declarant Morril, an experienced consumer of legal services in this arena, opined that he would not have fully paid for such hours, spent on a task that appeared to be unnecessary, irrelevant, and immaterial. (Morril Decl. at ¶¶ 21-22.) LSKS, in fact, spent more time monitoring purportedly related litigation than Declarant Moneer has spent on many of the anti-SLAPP motions he filed. (Moneer Decl. at ¶ 39.) LSKS's expenditure is all the more unreasonable as they staffed five lawyers for this task, likely resulting in inefficiency and excess. (*See* Dkt. 82, Ex. A at 1; Morril Decl. at ¶ 21.)

### C. Defendants' Supporting Affidavits Fail to Demonstrate that the Requested Fee Is Reasonable

In support of their fee request, Defendants submit the affidavits of Amy M. Baker, a Major Case Specialist at Travelers Insurance Company, Slade R. Metcalf, a retired Hogan Lovells US LLP attorney with experience in litigating defamation actions in New York, and Defendant Marc R. Stanley. None of these affidavits, either alone or in combination, are in the slightest degree probative of the reasonableness of LSKS's fee in this matter.

*First*, Ms. Baker's statements about her approval of the fees in question are of no consequence. Travelers is hardly an unbiased witness in this matter, as every dollar recovered from Plaintiff in the present application will apparently go to Travelers. More fundamentally, Ms. Baker does not indicate that she or Travelers has any experience whatsoever with anti-SLAPP matters that it could bring to bear in assessing the reasonableness of LSKS's fees; in fact, Travelers appears to have little if any experience with such cases. (*See* Dkt. No. 85 at ¶¶ 3-4; Morril Decl. at ¶ 17.) Moreover, Travelers was surely aware of the fee-shifting provisions of the

anti-SLAPP statutes at issue in this case, and depending on what she was told by LSKS, Ms.

Baker could well have expected that some or all of the fees paid by Travelers would be

recovered from Plaintiff.  Such an expectation can lead to less aggressive negotiations on rates

and less aggressive challenges to the bills in question.  (Morril Decl. at ¶ 17.)  As the Second

Circuit aptly observed in *Arbor Hill Concerned Citizens Neighborhood Assoc*iation *v. County of*

*Albany*, 522 F.3d 182 (2d Cir. 2007), a case cited by Defendants:

> A plaintiff bringing suit under the Voting Rights Act, pursuant to which fees can
> be recovered from the other side, has little incentive to negotiate a rate structure
> with his attorney prior to the litigation; the district court must act later to ensure
> that the attorney does not recoup fees that the market would not otherwise bear.
> Indeed, the district court (unfortunately) bears the burden of disciplining the
> market, stepping into the shoes of the reasonable, paying client, who wishes to
> pay the least amount necessary to litigate the case effectively.

*Id.* at 184.

Further, Travelers undertook defense of this matter with a reservation of rights (Dkt. No.

85 at ¶ 2), which is "[a]n insurer's notification to an insured that coverage for a claim may not

apply.  Such notification allows an insurer to investigate (or even defend) a claim to determine if

coverage applies (in whole or in part) without waiving its rights to later deny coverage based on

information revealed by the investigation."  *Glossary of Ins. Mgmt. Terms,* Int'l Risk Mgmt.

Inst., p. 192 (9th ed. 2004).  Depending on the scope of Travelers' reservation of rights, any

"approval" of LSKS's charges by Travelers is subject to a potential later denial of coverage—

which, again, makes it possible that Travelers accepted the outsized fees, knowing it would not

be left holding the bag.

*Second*, although Mr. Metcalf avers that "the expenditure of time reflected in Exhibit A

[to the Levine Declaration] was both reasonable and necessary," he admits he only reviewed

Exhibit A and never even glimpsed a single time sheet.  (Dkt. No. 83 at ¶ 26.)  Mr. Metcalf thus

has no idea how much time LSKS spent on research, drafting and revisions, or to what extent

that work was duplicative of work already performed in this matter or in prior matters litigated

by the same defense team.  Yet despite this complete lack of actual knowledge, Mr. Metcalf

repeatedly testifies to the "necessary" and "entirely reasonable" nature of LSKS's fees based on

the arguments proffered in LSKS's briefs to the Court.  *Id.*  Whether or not each argument

proffered by Defendants in their briefing was necessary, that has no bearing on the total fees

claimed, which include tens of thousands of dollars in charges for items ranging from

"communications with client, carrier" to "monitoring related litigation," and could include

countless hours of duplicative billing for the briefs themselves.  Without reviewing the actual

bills and time sheets, all Mr. Metcalf offers the Court is, essentially, an "I take their word for it"

argument that advances nothing.

   *Third*, Defendants submit the affidavit of Defendant Stanley, who tries to justify LSKS's

excessive fees by relying on hearsay about Plaintiff's supposed "reputation of pursuing scorched-

earth litigation against his perceived adversaries" and a claimed resultant need to "mount a

determined defense against a no-holds-barred litigant."  (Dkt. No. 84 at ¶¶ 4-5.)  Yet neither

Defendant Stanley nor any of Defendants' other declarants identifies a single action by Plaintiff

or his counsel that required anything more of LSKS than routine research and briefing of

motions that the Court decided.  Contrary to Mr. Stanley's hearsay assertions about "scorched

earth" and "no-holds-barred" litigation, Plaintiff spent only *1/3* of what LSKS claims in fees for

briefing the two anti-SLAPP and 12(b)(6) motions in this case.  (*Compare* Dkt. No. 82 at ¶¶

18(f) & (1) *with* Wood Decl. at ¶ 4.) Further, Defendant Stanley's "thirty plus years" of

experience with complex commercial litigation provides little basis for his belief that LSKS's

fees were "extremely reasonable," (Dkt. No. 84 at ¶¶ 3, 8), as defamation and anti-SLAPP

litigation "is a specialized practice area with a correspondingly specialized market for legal

fees," (Morril Decl. at ¶¶ 16-17).

## IV.   DEFENDANTS HAVE NOT POINTED TO ANALOGOUS AWARDS IN SIMILAR CASES

Among the factors outlined in *Hensley* for calculating lodestar is the fee award in similar

cases. *Hensley*, 461 U.S. at 430 n.3. Defendants brief and supporting declarations do not cite a

single case in which an anti-SLAPP movant was awarded his fees for 2,200 hours of work,

totaling $1,000,000. (*See* Dkt. Nos. 81-85.) Defendants' request appears to be unprecedented.

(*See* Moneer Decl. at ¶¶ 6, 26; *cf.* Morril Decl. at ¶ 13); *cf. Maughan*, 143 Cal. App. 4th at 1251-

53 (awarding $23,000 in fees and costs to Defendant, whose counsel were "old hats at anti-

SLAPP motions, and experts in defamation and the CDA," and thus should have expended far

less than 200 hours briefing an anti-SLAPP motion); *Containment Tech.*, 2009 WL 2750093, at

*1-2 (approving $510,000 in fees in anti-SLAPP case involving extensive discovery, multiple

summary judgment motions, and complex areas of law, including *Erie*).

This case may have involved several legal issues, but they were by no means

extraordinary. As noted in the Declarations of Morril and Moneer, Defendants' counsel are

perhaps the top law firm in the nation for anti-SLAPP and defamation litigation, and this

litigation largely turned on well-trodden areas of the law. (Morril Decl. at ¶¶ 8, 18-19; Moneer

Decl. at ¶¶ 32-33.) Even the ostensibly novel hyperlink issue was decided by reference to

"significant material from which to reason by analogy." (Morril Decl. at ¶ 19.) Because "the $1

Million fee award sought by Defendants is unprecedented for comparable work," (Moneer Decl.

at ¶ 24), the Court should decline to award the full amount sought by Defendants.

## V.   DEFENDANTS CAN ONLY RECOVER FEES, IF AT ALL, FOR WORK DONE ON THEIR NEVADA ANTI-SLAPP MOTION

Even if Defendants' "lodestar" was otherwise defensible—and it is not—Defendants cannot recover attorneys' fees in connection with work done prior to their successful Nevada-based motion to dismiss, or for the time spent on their Nevada-based 12(b)(6) motion.  At the very least, Nevada law forecloses a fee award with respect to specific motions on which Defendants did not prevail: their unsuccessful D.C.-based anti-SLAPP motion to dismiss and Plaintiffs' motion to strike.

In *Rebel Communications*, the United States District Court for the District of Nevada refused to award attorneys' fees for work done prior to the defendants' second, and ultimately successful, Nevada anti-SLAPP special motion to dismiss.  2012 WL 5839048, at *1-2.  Before the defendants in *Rebel Communications* prevailed on their second anti-SLAPP motion, they filed several unsuccessful motions, including an initial Nevada anti-SLAPP motion to dismiss. *Id.* at 1.  The court reasoned that "[s]ince it is the Anti–SLAPP statute that authorizes attorneys' fees, and since the court did not grant a motion based on the Anti–SLAPP statute until it considered the renewed special motion to dismiss, defendants . . . may not recover attorneys' fees for work prior to work conducted on the renewed special motion to dismiss."  *Id.*

Courts interpreting California's analogous anti-SLAPP statute have likewise determined that attorneys' fees may only be awarded for work done on a successful anti-SLAPP motion. *See, e.g., Christian Research Institute*, 165 Cal. App. at 1320 (holding a "defendant may recover fees and costs only for the [anti-SLAPP] motion . . . , not the entire litigation"); *S.B. Beach Props. v. Berti*, 39 Cal. 4th 374, 381 (2006) (holding that the anti-SLAPP "fee provision applies only to [the anti-SLAPP motion], and not to the entire action") (internal quotation marks omitted); *Smith*

*v. Payne*, No. C-12-01732-DVR, 2013 WL 1615850, at *1 (N.D. Cal. April 15, 2013) ("Fees should only be awarded for work reasonably related to the special motion to strike . . . .").

Here, as in *Rebel Communications*, the Court did not grant Defendants' initial anti-SLAPP motion to dismiss, and Defendants therefore cannot recover for their work prior to preparing their successful Nevada anti-SLAPP motion—i.e., pre-March 6, 2013. These unrecoverable fees, amounting to $658,899, include the items listed in subparagraphs 18(a) – 18(h) of Mr. Levine's affidavit: (a) $7,347 for initial review of the Complaint and strategizing; (b) $25,854 for factual investigation and collection of potentially relevant documents; (c) $41,989.50 for communications with clients and their insurance carrier; (d) $33,759 for communications with Plaintiff's counsel and the Court; (e) $44,394.50 for monitoring of related litigation in Nevada and Florida; (f) $219,315.50 for preparation of the initial D.C. motion to dismiss/anti-SLAPP motion and $200,723.50 for preparation of the reply brief to the initial D.C. motion to dismiss/anti-SLAPP motion; (g) $40,225 for preparation of the opposition to Plaintiff's motion to strike; and (h) $45,291 for the preparation and attendance at the in-person hearing in this matter.[9] (*See* Dkt. No. 82 at ¶ 18.)

Nor can Defendants recover for the 12(b)(6) portion of their combined Nevada-based brief, as the issues discussed therein are wholly irrelevant to their Nevada anti-SLAPP motion. Unlike the D.C. anti-SLAPP law, the Nevada statute does not turn on the merits of a plaintiff's claims, but instead on the independent question of whether the defendant made "a good faith

---

[9]   As discussed above in Section II, Defendants' skeletal itemization of attorneys' fees has frustrated the necessary inquiry into the reasonableness of their fees.  The categories listed in subparagraphs 18(b) through 18(e) span periods that pre- and post-date the preparation of Defendants' Nevada anti-SLAPP motion.  Because the unrecoverable fees cannot be separated from the whole, Defendants have forfeited all fees in categories 18(b) through 18(e).  *See Rebel Commcn's*, 2012 WL 5839048, at *2 (refusing to grant undifferentiated fees).

communication in furtherance of the right to petition." Nev. Rev. Stat. § 41.660. Indeed, the

Court's order carefully separated the 12(b)(6) and anti-SLAPP issues, deciding the latter without

regard to the privilege for fair report of a judicial proceeding, the protections for opinion, or the

nature of hyperlinked material.  (Dkt. No. 80 at 18-55.)  While the combined briefing may have

advanced the aims of efficiency and convenience, it does not provide a basis for lumping

Defendants' fees and affording them a windfall.  On the record before the Court, however, there

is no precise way to discern which of Defendants' $145,885 in fees for the Nevada-based

motions were for the anti-SLAPP portion. (Dkt. No. 82 at ¶ 18(i)). The Court should thus award

none.

At very least, even under a narrow reading of *Rebel Communications*, there is no

plausible basis on which Defendants may recover for work specifically tied to motions on which

they did not prevail: their unsuccessful D.C.-based motion (954.6 hours, $420,039), and

Plaintiffs' motion to strike (88.5 hour, $40,225).  But given the true import of *Rebel

Communications* and related case law, if the Court awards any fees at all, they should only

include those related the anti-SLAPP portions of Defendants' Nevada-based briefs.

## VI.    ANY AWARD SHOULD BE REDUCED IN LIGHT OF THE *BRUNZELL* FACTORS

If the Court determines that Defendants have established their right to a fee under the

lodestar method, it is still necessary to consider the reasonableness of the fee at issue in light of

the *Brunzell* factors.  Three of those factors establish the unreasonable nature of LSKS's

requested fees.  Accordingly, whatever award the Court deems reasonable (if any) under the

lodestar method should be further reduced.  *See Haley v. Dist. Ct.*, 273 P.3d 855, 860 (Nev.

2012) (reducing attorney's fee based on *Brunzell* factors).

### A.  First *Brunzell* Factor: The Excellence of LSKS's Attorneys Cuts Against Defendants' Requested Attorneys' Fees

As discussed above in Section III.A, the knowledge, training, education, experience, and skill of the LSKS lawyers staffed on this matter render the fees especially unreasonable.  For a firm that was "designed" with efficiency in mind (Dkt. No. 83 at ¶ 21), and given the quality of counsel, LSKS's inefficiency here is manifest and unreasonable.

### B.  Second *Brunzell* Factor: The Work Was Limited

Within the realm of defamation law, in which LSKS is highly experienced and able, this was not an especially complex or novel case.  While Defendants assert that their work was "challenging, 'difficult[] . . . intricate [and] important" (Dkt. 81 at 6), they do not identify any issues in this case that fit that description.  Indeed, with the exception of the choice-of-law issue—which Defendants lost—the issues presented here were little different from those present in numerous other defamation and anti-SLAPP cases in which LSKS has appeared, including one from which they copied several pages of their brief for use in this case.  (*See supra* § III.A.)  And while Mr. Adelson is, indeed, a wealthy man, who has exercised his right to make political donations, Defendants do not identify *anything* he or his lawyers did in this case that required LSKS to do more than they would in defending any other defamation case.  Although the National Jewish Democratic Council may want to do more than simply defeat a defamation claim by Mr. Adelson, any actions undertaken in pursuit of such a broader objective do not affect the relatively routine requirements of defending this case.

In any event, whatever the level of complexity, this case ultimately boiled down to motion practice without any discovery whatsoever.  Had the parties gone through extended document production, numerous depositions, and contested discovery, all concerning intricate areas of the law, a $1,000,000 fee just might be reasonable. *See, e.g.*, *Containment Tech.*, 2009

WL 2750093, at *1-2 (approving $510,000 in fees when anti-SLAPP case proceeded through

extensive discovery, with numerous depositions, and summary judgment motions filed by

several defendants, and involved complex areas of law including choice of law, the *Erie*

doctrine, and substantive scientific debate requiring "all defense counsel to dig into the science

and engineering involving in compounding aseptic isolators").  But, as outlined above, such was

not the case here.

### C.  Third *Brunzell* Factor: Despite the Overlapping Issues, Brief After Brief, LSKS Billed and Billed

Of all the *Brunzell* factors, the third is the hardest to analyze, given Defendants' failure to

detail LSKS's work.  But this much is clear: despite the overlap between Defendants' briefs on

motion to dismiss, LSKS always managed to bill at least 300 hundred hours for each one. (Dkt.

No. 82, Ex. A at pp. 2-3); *Cf. Maughan*, 143 Cal. App. 4th at 1260 (quoting trial court's finding

that 200 hours spent on an anti-SLAPP motion "seemed excessive" for experienced counsel).

Thus, the Court should train a skeptical eye on the 1,556 of attorney hours LSKS billed for the

D.C. and Nevada anti-SLAPP and 12(b)(6) motions. (*See* Moneer Decl. at ¶¶ 32-33.)

### D.  Fourth *Brunzell* Factor: Defendants Eventually Prevailed

Plaintiff does not dispute that after Defendants' fruitless attempt under the D.C. law,

Defendants eventually prevailed under the Nevada statute.

### VII.  IN THIS FEDERAL DIVERSITY ACTION, DEFENDANTS ARE NOT ENTITLED TO COSTS UNDER THE NEVADA ANTI-SLAPP STATUTE

Although Defendants cite *Vestin* for the proposition that state substantive law governs a

parties' "right to fees in a diversity case," they neglect to mention *Vestin's* discussion of costs:

"[T]he award of costs is typically a matter of federal procedural law.  Thus, an 'award of

standard costs in federal district court is normally governed by Federal Rule of Civil Procedure

54(d), even in diversity cases.'" *Vestin Realty Mortgage II, Inc. v. Klaas*, 08-CV-2011-AJB-

MDD, 2013 WL 1411852, at *11 (S.D. Cal. Apr. 8, 2013) (quoting *Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir.2003)).  The *Vestin* court, accordingly, refused to grant costs under the Nevada anti-SLAPP statute.  *Id.*

Here, Defendants seek $25,153.53 in costs pursuant to the Nevada anti-SLAPP statute, rather than Rule 54(d).  The Court should deny their inappropriate request.

## CONCLUSION

For the foregoing reasons, the Court should deny or significantly reduce Defendants' requested fee.


Dated: Atlanta, Georgia
       November 12, 2013

/s/ L. Lin Wood

L. Lin Wood
lwood@whetriallaw.com
Georgia Bar No. 774588
(admitted *pro hac vice*)
Amy M. Stewart
astewart@whetriallaw.com
Georgia Bar No. 141481
(admitted *pro hac vice*)
**Wood, Hernacki & Evans, LLC**
1180 West Peachtree Street N.W.
Suite 2400
Atlanta, Georgia 30309

- and -

David M. Olasov
dolasov@olasov.com
**Olasov + Hollander LLP**
27th Floor
1325 Avenue of the Americas
New York, NY 10019

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of November, 2013, a true and correct copy of the foregoing was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the following counsel of record:

Lee Levine
Gayle Sproul
Seth D. Berlin
Rachel F. Strom
Chad R. Bowman
**LEVINE SULLIVAN KOCH & SCHULZ, LLP**
321 West 44th Street, Suite 510
New York, New York 10036
Telephone: 212-850-6100
llevine@lskslaw.com
gsproul@lskslaw.com
sberlin@lskslaw.com
rstrom@lskslaw.com


/s/ L. Lin Wood