IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------
SHELDON G. ADELSON,

                      Plaintiff,

     v.

DAVID A. HARRIS, MARC R. STANLEY, and
NATIONAL JEWISH DEMOCRATIC COUNCIL,

                   Defendants.
--------------------------------------------------------------------

Case No. 12-Civ-6052-JPO
ECF Case

**DECLARATION OF**
**JAMES J. MONEER**

I, **James J. Moneer**, declare as follows:

    1. I am an attorney duly licensed to practice before all California state and federal courts. As shown in detail below, I have been recognized as an expert and authority on California anti-SLAPP law, much of which consists of defamation law and its related fee jurisprudence. I have personal knowledge of all matters set forth herein unless otherwise indicated.  If called to testify to those matters, I could and would competently testify thereto.

    2. I have been retained by counsel for Plaintiff to render an expert opinion as to the reasonableness of the more than $1,000,000.00 in fees and expenses (consisting of 2,200 hours) sought by Defendants for work performed by Levine Sullivan Koch and Schulz ("LSKS") after prevailing on a dispositive anti-SLAPP motion under Nevada law, which was resolved as a matter of law on the face of the pleadings, where no discovery was conducted, no trial or appeal time was spent, and where no contingent risk was assumed.  It is my opinion that the sheer magnitude of the fee request for services rendered herein is unreasonable on its face and wholly unprecedented.

    3. I have reviewed all of the moving papers submitted by the parties in connection with Defendants' fee application.  I have also reviewed all moving papers, pleadings, declarations,

exhibits, orders, and opinions in connection with Defendants' combined anti-SLAPP motions and motions to dismiss, as well as Plaintiff's discovery motions and motions to strike briefs in connection with both the D.C. and Nevada anti-SLAPP motions.  Accordingly, I am thoroughly familiar with the nature, extent, and complexity of the work involved in preparing Defendants' anti-SLAPP motions in the instant case.  While LSKS attempts to bill nearly 900 hours of time solely for "preparation" of the opening and reply papers in connection with the initial combined anti-SLAPP motion/12(b)(6) motion to dismiss under the D.C. statute, this motion was denied and thus the time spent thereon is not compensable under Nevada law. (Dkt. No. at 82 ¶ 18(f)). It is, thus, my opinion that any time spent on the initial combined anti-SLAPP/12(b)(6) motion is not properly compensable.  In addition, LSKS attempts to bill roughly 700 hours of attorney time for "preparation" of the opening and reply papers in connection with the second combined anti-SLAPP motion and motion to dismiss under Nevada law. (*Id.* at ¶ 18(i)).  I am also aware of California authority, which has been adopted by Nevada courts, holding that only time spent in connection with the anti-SLAPP motion is compensable - demurrer, answer, motion to dismiss time is not compensable. As this court was careful to separate the anti-SLAPP issues under Nevada's immunity statute from the independent 12(b)(6) issues, it is my opinion that only the time spent on the anti-SLAPP portion of the combined motion to dismiss under Nevada law may be credited. (*See* Dkt. No. 80 at 38-55).  This Court resolved the fair and true report privilege, fact/opinion issue, and the nature of the hyperlinked material only in the context of the 12(b)(6) motion  - not in connection with the anti-SLAPP motion. (*Id.* at 17-38).

4. Given that approximately 55% of my practice consists of representing prevailing SLAPP defendants, I understand Defendants' claim that they are entitled to an award of "reasonable" attorney's fees.  While the hourly rates charged by the LSKS firm as nationally

renowned experts in defamation law are reasonable, the hours requested and the number of attorneys billing on this case are excessive for an anti-SLAPP motion of this nature, which was resolved on the face of the complaint under Nevada's immunity statute for good faith communications in furtherance of the right to petition. Given that my expert opinion must be based on and consistent with applicable authority, I have relied on relevant authorities from Nevada, California, and federal courts, consistent with Nevada law in order to provide a proper framework for my opinion.  California authorities are emphasized because Nevada's anti-SLAPP statute has origins, language, and policies in common with California's anti-SLAPP statute as defendants and this court have acknowledged. (Dkt. No. 80 at 39).  Moreover, Nevada courts have looked to California anti-SLAPP fee cases for guidance and followed them in a number of instances, as Nevada anti-SLAPP cases are sparse relative to California cases.[1]  California's anti-SLAPP statute was the first anti-SLAPP enacted in the nation in 1992.  The Nevada Anti-SLAPP statute was enacted shortly thereafter in 1993.  California is the Delaware of anti-SLAPP law and is at the forefront of our nation in the development of such jurisprudence. Nearly 600 published appellate decisions in the area of anti-SLAPP law have been published in California alone since it was first enacted in 1992.  The California Supreme Court has published at least 25 of these decisions since 1999.

5. Because Nevada anti-SLAPP fee jurisprudence permits use of California's lodestar adjustment method under *Brunzell* so long as it is "tempered by reason and fairness,"[2] it is my opinion that the lodestar adjustment method as applied under California anti-SLAPP fee jurisprudence is the most appropriate method to apply here where the billing is skeletal, where

---

[1] *Stubbs v. Strickland* (2013) 297 P.3d 326, 330.

[2] *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969).

vague and indiscrete blocks of time are inextricably lumped together, and where the amount of the fee sought is unprecedented - in excess of $1 Million - as explained by the California Supreme Court in the leading anti-SLAPP fee case

6. I have also provided this court with a sampling of prior SLAPP fee awards I have obtained in a variety of SLAPP motions, including defamation actions, all the way through the California Court of Appeal and the California Supreme Court, with records as large as thirty to fifty volumes, which never exceeded more than a low six figure fee award even where the court applied a multiplier as high as 2.50 for contingent risk.  Additionally, I am unaware of any published anti-SLAPP fee award in any jurisdiction that exceeds $500,000 for a SLAPP motion in the trial court, even where a renewed SLAPP motion is filed, where no discovery was conducted, no contingent risk was assumed, and no appeal time was spent.[3] Defendants have not produced any "prior fee awards," which is one of twelve factors this court should consider under U.S. Supreme Court authority.[4]  No discovery was conducted in this case.  There was no trial testimony.  No time for related appeals or writs is included in the sum of over $1,000,000 sought, other than Plaintiff's ancillary motions to lift the discovery stay and motion to strike Defendants' briefs.  There is no claim that defense counsel assumed any contingent risk in this matter.

7. More importantly, the main contested issues on the Nevada SLAPP motion were neither novel nor complex and were purely legal in nature: (1) whether Defendants could properly invoke the Nevada anti-SLAPP statute (prong one) by showing that the cause of action arose from Defendants' prior petition-related activity, and (2) whether Defendants' activity

---

[3] The highest SLAPP motion fee award for trial-level work I am aware of is $500,000.00 in a recent federal copyright case - *Graham-Sult v. Clainos*, No. C 10–4877 CW, 2013 WL 1190325, at *1 (N.D. Cal. Mar. 21, 2013).  Even there only a portion of that fee was for the anti-SLAPP motion in the trial court.

[4] *Hensley v. Eckerhart*, 461 U.S. 424, 430 n.3 (1983).

constituted good faith communications in furtherance of the right of petition under N.R.S. 41.637, 41.650 - an immunity statute. This determination required only analysis, albeit a detailed one, of the Complaint, Defendants' internet post and substantially identical press release, the article to which the post was hyperlinked, and the Jacobs' declaration to which the article referred. (Dkt. No. 80 at 38-55). Although this Court acknowledged that the choice of law issue on the D.C. motion was complex, Plaintiff prevailed on that argument. (*Id.* at 9-17). Otherwise, the only somewhat novel issue was whether a hyperlink constitutes sufficient attribution or disclosure of facts to constitute a fair and true report of a judicial proceeding, which was resolved solely in connection with the motion to dismiss - not the Anti-SLAPP motion. (*Id.* at 17-39). Most importantly, the only dispositive issues on the Nevada Anti-SLAPP motion in this case were: (1) whether Defendants' internet publications and press release are protected communications aimed at procuring an electoral action - prong one - (*Id.* 80 at 39-51); and (2) whether Defendants' challenged publications were truthful *or* made without knowledge of falsity under Nevada's immunity statute. (*Id.* at 51-55). This court ultimately ruled under the Nevada immunity statute (N.R.S. 41.650) that, "*A fortiori,* the failure to allege *knowledge* of falsity - as required under the Nevada Anti-SLAPP statute - is ground for dismissal." (Dkt. No. 80 at 55). This Court's recent opinion did not rely on any declarations or other evidence, including the Strom Declaration with its voluminous irrelevant attachments. This Court's Anti-SLAPP opinion hinged solely on the face of the pleadings and the challenged communications, which consisted of a paragraph on an internet web page and a substantially identical press release, which hyperlinked to an article quoting Jacobs' declaration in a judicial proceeding.

8. The Nevada Anti-SLAPP motion was resolved under a substantive immunity statute for good faith communications seeking electoral action - a much less onerous standard than that

imposed by the D.C. or California statutes for a defendant to prevail on a SLAPP motion. Defendants were represented by at least three partners and at least five other attorneys at the LSKS firm, who collectively accumulated 2,200 hours of time pursuing this case, which was resolved by one successful SLAPP motion under Nevada law in the trial court. As shown in detail below, it is my opinion that the fees requested are grossly excessive in any jurisdiction in light of the work performed and defense counsel's experience.

## EXPERT QUALIFICATIONS

9. I am a 1994 graduate of the University of San Diego School of Law.  I am familiar with the hourly rates billed for attorneys of varying skill levels throughout California and the nation for work on anti-SLAPP matters.  My customary 2013 billing rate for expert testimony on anti-SLAPP attorneys' fee issues in California is $550.00 per hour, which is the rate of compensation for my services rendered herein.  I have handled numerous SLAPP motions, related SLAPP appeals, SLAPP discovery motions, and SLAPP fee motions for plaintiffs and defendants in California state courts, including the California Supreme Court since 1994.  I have consulted with both plaintiff's and defense attorneys in hundreds of cases in both California state and federal courts dealing with all aspects of California anti-SLAPP jurisprudence from making and opposing SLAPP motions, making and opposing SLAPP discovery motions, making and opposing SLAPP fee motions, providing expert testimony in SLAPP fee and SLAPP malpractice cases, to handling SLAPP appeals and related writs of supersedeas, and filing Petitions for Review and Amicus Curiae Briefs in the California Supreme Court in anti-SLAPP cases.  I also briefed and orally argued a landmark SLAPP case before the California Supreme Court as lead counsel.  See *Soukup v. Hafif*, 39 Cal.4th 260 (2006).  My practice has focused almost exclusively on handling anti-SLAPP cases since 2000.  The bulk of my SLAPP practice consists

of defamation, malicious prosecution, and internet speech type claims. I have previously testified as a fee expert on behalf of various plaintiffs in numerous SLAPP cases in which the trial court consistently reduced the defense fees requested by large firms by 50% to 75%. I also routinely provide expert testimony on behalf of the fee applicant in SLAPP cases. Although I often represent plaintiffs in SLAPP cases (45%), the majority of my practice (55%) is still devoted to representing defendants who are the targets of SLAPP suits. Accordingly, I understand a prevailing SLAPP defendant's right to recover a "reasonable" fee. But when the defendant inflates the bill and engages in overreaching, as apparently happened here, this is a special circumstance warranting a significant reduction or denial of the fee altogether. *See Ketchum v. Moses*, 24 Cal.4th 1122, 1138 (2001); *Maughan v. Google,* 143 Cal. App. 4th 1242, 1250-52 (2006).

10. I was a panelist on The Rutter Group's anti-SLAPP seminars with the Honorable Judith L. Haller, the Honorable William F. Rylaarsdam, and Mark Goldowitz of the California anti-SLAPP Project from 2003 through 2004. I prepared and drafted The Rutter Group's anti-SLAPP handbook, which comes with the seminar materials and anti-SLAPP video/on-line seminars. I have participated in four of the The Rutter Group's live anti-SLAPP seminars between February 2003 and July 2004, in which I along with my esteemed colleague, Mark Goldowitz, researched and drafted the SLAPP fee hypotheticals and delivered the answers. In June 2006, I participated again as a panelist in two live Rutter Group anti-SLAPP seminars with the Honorable Justice William F. Rylaarsdam and Sharon Arkin, Esq. in Los Angeles - previously voted superlawyer of the year. I was a panelist on The Rutter Group's 2009 and 2012 anti-SLAPP seminars. I have also been a regular panelist in Pincus Professional Education's annual anti-SLAPP seminars since 2009 and drafted the scripts for the best SLAPP cases of 2012

with Mark Goldowitz, Esq.  *See* www.pincusproed.com.  I have been an adjunct lecturer on anti-SLAPP law at the University of San Diego School of Law since 2001.  I lecture, provide, and grade research assignments for 2L and 3L civil clinic students on how to identify SLAPP issues and handle SLAPP motions and appeals.  I also supervise students handling anti-SLAPP motions at the law school's clinic.

11. I represented the plaintiff, Paul Copenbarger, in the trial court in opposing defendant's anti-SLAPP motion, which was granted in its entirety.  But the Court of Appeals reversed the order granting the SLAPP motion as to all causes of action in *Copenbarger v. Morris Curello World Evangalism,* 215 Cal. App. 4th 1237 (2013).  I represented the prevailing SLAPP defendants in *Ramona Unified School District v. Tsiknas,* 135 Cal. App. 4th 510 (2005) - a SLAPP suit filed by a government agency against two environmental activists and their CEQA attorney based on their participation in CEQA proceedings and their public comments therein.  In the *Ramona* opinion, the California Court of Appeal recognized me as an expert in the novel and complex area of California anti-SLAPP law. *Id.* at 522-24.

12. I represented the prevailing SLAPP defendant in *Dowling v. Zimmerman*, 85 Cal. App. 4th 1400, 1422-26 (2001), in which the Court of Appeal also recognized me as an anti-SLAPP specialist in affirming a clearly "modest" $9,300.00 fee award for my services in the trial court in that defamation case.  I represented the SLAPP defendant in *Commonwealth Energy Corporation v. Investor Data Exchange,* 110 Cal. App. 4th 26 (2003).  I represented the Law Office of Herbert Hafif as lead counsel in *Soukup v. Hafif,* 39 Cal. 4th 260 (2006), a SLAPP decision published by the California Supreme Court.  Although the Hafif defendants were ultimately unsuccessful in the California Supreme Court, Hafif prevailed in the *Soukup* appeal and in all four related SLAPP appeals below.  Moreover, Hafif did prevail in the California

Supreme Court on the first prong issue of whether newly enacted CCP § 425.18 precluded Hafif from using the anti-SLAPP procedure to defend Soukup's SLAPPback malicious prosecution suit as a matter of law - the primary issue upon which the California Supreme Court granted review. The court ruled that Hafif could use the anti-SLAPP procedure because his act of filing a SLAPP suit in the prior action was not illegal as a matter of law.  It was only because Hafif prevailed on the first prong that the California Supreme Court was forced to reach the second prong issue of probable cause on which Hafif did not prevail, which represented only the last five pages of a 39-page opinion.  I represented the prevailing SLAPP defendant, Hafif, in the related case of *Hutton v. Hafif*, 150 Cal. App. 4th 527 (2007).

13. I represented the petitioner/defendants in *Westshield Investigations v. Superior Court*, 82 Cal. App. 4th 935 (2000), a non-SLAPP case in which our petition for writ of mandate was granted in its entirety after denial of summary judgment.  I filed amicus briefs on the merits on behalf of the defendants in four cases before the California Supreme Court - *Equilon Enterprises LLP v. Consumer Cause, Inc.*, 29 Cal.4th 53 (2009); *City of City of Cotati v. Cashman*, 29 Cal.4th 69 (2002); *Jarrow Formulas v. La Marche*, 31 Cal.4th 728 (2003); and *Kids Against Pollution v. California Dental Association*, 4 Cal. Rptr. 3d 808 (2003).  I orally argued before the California Supreme Court as amicus counsel on June 6, 2002, in the *City of Cotati v. Cashman* case, at the request of Cashman's counsel, R.S. Radford, Esq. of the Pacific Legal Foundation. Although the defendant Cashman did not prevail, amicus was successful in convincing California's Supreme Court to reject the "actual chilling effect" requirement imposed by the California Court of Appeal.

14. I represented a plaintiff in a defamation action in opposing an anti-SLAPP motion filed by my esteemed colleague, Mark Goldowitz, Esq., of the California anti-SLAPP project.

Mr. Goldowitz was the principal drafter of California's anti-SLAPP statute, its amendments, and the federal anti-SLAPP bill currently pending in the House of Representatives. *See* www.casp.net. The trial court granted the SLAPP motion. But I obtained a complete reversal against Mr. Goldowitz on appeal in *Folkers v. Newton* (G017187) filed 4/24/98.[5] In addition, I have won numerous SLAPP motions on behalf of plaintiffs and defendants since 1994. I have published numerous articles in, *inter alia*, California Lawyer Magazine and the LA Daily Journal, and have given many MCLE seminars on the subject of anti-SLAPP law since 2000.

15. On January 6, 2011, in *Lefkowitz v. Gruenberg* (SDSC No. 37-2009-00101969-CU-PN-CTL), I testified as a SLAPP legal malpractice and attorney fee expert for the defense in the first anti-SLAPP malpractice case in California to reach a jury verdict, which was in favor of the defense on all issues with a special finding of "no negligence." The Honorable John S. Meyer ruled that my client/attorney was entitled to recover his attorney fees (except for the appeal, which we did not contest) and preserve his lien on the recovery therefor.

16. True and correct copies of the foregoing court opinions and articles can be found on the "attorney profile" link of my website www.slapplaw.com. I certify that the items set forth in the attorney profile section of my website www.slapplaw.com and my attached CV are true and correct representations of what they purport to be and that all statements therein are true and correct. (Ex. 1).

### SIGNIFICANT PRIOR SLAPP FEE AWARDS

17. ***Mr. Hutton v. Hafif* (BC 249367) filed 3/4/08:** The Honorable Helen I. Bendix issued a purposely equivocal award of fees due to a timeliness issue. The purpose of her ruling was to encourage the parties to settle as they had been in highly contentious SLAPP litigation

---

[5] A true and correct copy of this unpublished opinion is available on my website www.slapplaw.com at http://www.slapplaw.com/folkers1.htm.

that made it to the California Supreme Court twice over the past seven years. Her honor indicated that she was inclined to award at least $150K of the $200K of my fees, if the timeliness issue was resolved in our favor. My fees included all time spent on the SLAPP motion in the trial court back in 2001, all appeals, time spent in the California Supreme Court, and time spent in the California Court of Appeal back on remand through 2007, including time spent on the fee motion. A lodestar multiplier of 2.0 for partial contingent risk was allowed, assuming timeliness of the motion. I had only one associate and one paralegal at the Hafif firm assisting me at any given time throughout the pendency of the case. Hafif also prevailed on his SLAPP motion in the related case of *Mrs. Terrie Hutton v. Hafif*, 150 Cal. App. 4th 527 (2007), but could not recover fees because of the newly enacted SLAPP back statute, California Code of Civil Procedure (CCP) § 425.18.

18. ***Berger v. Dobias I* (2006)** – unpublished opinion (a true and correct copy is attached hereto as Exhibit 2): I defended two separate malicious prosecution causes of action alleged in the same complaint by two separate plaintiffs who were represented by a recalcitrant pro per attorney, Steve Berger, Esq., in the trial court. The trial court denied our SLAPP motion in its entirety. Representing the defendant and appellant, Dobias, I obtained complete reversal of the order denying the SLAPP motion as to all plaintiffs and all three causes of action. The record consisted of voluminous pleadings from two underlying litigations. In ruling on Dobias' 2007 fee motion, Judge Ann I. Jones of the Los Angeles Superior Court found that accomplishing both the trial and appellate tasks and obtaining complete reversal in 112.50 hours was exceedingly efficient and that she had seen many SLAPP motions in her court but none that efficient - as such she awarded 100% of my lodestar request at my 2007 rate of $450.00 per hour plus a 2.0 multiplier for partial contingent risk for a total fee award of $92,337.25. I was at all times the

sole attorney performing all Anti-SLAPP services for the defendant, other than James Hodges, who was collection counsel in the *Berger* case. This is in stark contrast to defense counsel's super-sized bill of 2,200 hours just for prevailing on one anti-SLAPP motion in the trial court, resolved solely on a pure issue of law on the face of the pleadings and internet posts at issue. As shown in the opinion, Berger was a recalcitrant pro per attorney SLAPP plaintiff. He appealed from the order granting the SLAPP motion and fee award after losing the *Berger I* SLAPP appeal claiming the California Court of Appeal got it wrong. But the California Court of Appeal in *Berger v. Dobias II* (filed 9/29/2009 No. B204631) unpub. at p. 15 (a true and correct copy of the opinion is attached hereto as Exhibit 3), had this to say about my fees and work-product in SLAPP cases:

> The work by Dobias' attorney [Moneer] far exceeded the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation. (*Ketchum v. Moses, supra,* 24 Cal.4th at p. 1139). ...

> ...We have reviewed the detailed declaration of Dobias' attorney [Moneer] and conclude that the award was amply supported. IN FACT, THE DECLARATION WOULD HAVE SUPPORTED A HIGHER AWARD. [The Court was likely referring to the 3.0 contingent risk multiplier requested by Dobias].

19. Surely, the prestigious attorneys at the LSKS firm, who are experts in anti-SLAPP and defamation law and have invoked the anti-SLAPP laws of seven states, can produce similar prior fee awards (not reversed on appeal as to amount) in a defamation case that approaches $1 Million, in a similar case where there was no discovery, no trial, no appeal, and no contingent risk assumed. "Prior fee awards" are one of the 12 factors identified in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), that a court may consider under federal fee jurisprudence. In a case like this, where the fee request exceeds $1 million for a dispositive motion resolved as a matter of law in the trial court without discovery, it is imperative that this court give "due weight" to the

factor that LSKS has not presented any prior fee awards in a similar cases under *Brunzell's* expansive reasonableness test, which must be "tempered by reason and fairness."[6]

20. ***Casey v. Copenbarger et al. (07-CC-02790) filed 12/12/07:***  In an extremely complex malicious prosecution/abuse of process case arising from a breach of fiduciary action, which in turn arose from an exceedingly complicated underlying probate and tax law matter involving a $5 million Hawaii Qualified Personal Residence Trust (QPRT), I was awarded $27K in fees for striking two out of three claims at my 2007 rate of $450.00/hr.  The two claims stricken were abuse of process and IIED.  No multiplier was awarded.  Plaintiff filed a motion for specified discovery on the malice issue, which was granted.  There was extensive deposition discovery.  Several court appearances were required because plaintiffs initially filed an ex-parte request for discovery and a request for a continuance, which were denied without prejudice. The court rescheduled a noticed motion for specified discovery, which was granted and required a continuance.  The parties were then required to file substantial supplemental briefing in light of the discovery before the SLAPP motion was heard.  While defendants appealed the malicious prosecution action, that case has since settled favorably for my clients, with Mr. Casey paying attorney's fees and dismissing his single remaining MP claim.  Even then, my total fees at the noncontingent rate of $450.00/hr for my work on all three causes of action in the trial court were $72,332.50.  The tax and probate issues in the Casey action were equally as complex as the libel and choice of law issues presented herein.  Although I had assistance from my client, Mark Ross, Esq., who was an attorney who had been in practice only seven years and had no SLAPP experience, his time was not compensable under California law as he was effectively representing himself even though he was assisting me.  I estimate that his time was not more than

---

[6] *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969).

half of the time I spent.   His billing rate was significantly lower than mine at that time. Moreover, Judge Munoz exclaimed on the record that he did his best to review the key declarations and evidence from the two underlying actions submitted by the parties but "he was not able to review everything."   His Honor also stated on the record that the case was "exceedingly complex" and that the record was "voluminous."

21. ***Styles v. Schwab* (GIC 830088) filed 9/7/05:** The Honorable Kevin A. Enright of the San Diego Superior Court awarded my SLAPP fees in the amount of $74,026.50 at my 2005 hourly rate of $400.00 per hour.   The court credited 100% of the time I billed (66.50 hours at $375.00/hr for work performed in 2004) and (27.50 hours at $400.00/hr for work performed in 2005). The court additionally applied a 2.50 multiplier to compensate for contingent risk I assumed in the representation.   The fees awarded included all time I spent in the trial court in connection with the SLAPP motion, opposition to SLAPP discovery motion, and responding to extensive SLAPP discovery, including two extensive depositions. Plaintiffs filed numerous ex parte requests seeking continuances and motions to broaden the scope of discovery permitted, which required numerous meet and confer letters. The parties were then required to file substantial supplemental briefing in light of the discovery before the SLAPP motion was heard. The fees also included my time on the fee motion.   No appeal time was included in the award. This case involved an extremely complex malicious prosecution case, with voluminous pleadings from two underlying fraud and negligence actions involving real property transactions between two ex-spouses, where the plaintiff was a local "celebrity," - a TV weatherman.   In addition to the complex probable cause and litigation privilege issues, defendants asserted advice of counsel and unclean hands defenses.   The Court also awarded my trial counsel, Greg Konoske, Esq., an additional $12,000.00 for the work performed in the trial court.  Although the California Court of

Appeal ultimately reversed the fee award, the Court did so only because the Court reversed the order granting the underlying SLAPP motion.  The California Court of Appeal did not address the issue of whether the amount of the fee award was reasonable.

22. ***Thermoview v. UCAN* (GIC 808576) filed 5/13/05** - The Honorable Kevin A. Enright awarded my SLAPP fees in the amount of approximately of $45,000.00 for my work on a SLAPP motion in the trial court where no SLAPP discovery was permitted. The claim stricken was a defamation claim involving a public issue in which the challenged statements were published in a consumer watchdog publication by UCAN. Thermoview's complaint alleged defamation and intentional interference torts against UCAN. The amount awarded was comprised of 66.67 hours of time at my 2003 rate of $350.00/hr, deducting the amount paid by the client in advance ($10,000), then multiplying that figure by 2.50 for *partial* contingent risk assumed.  The Court also awarded 4.00 hours at $400.00/hr for my time on the SLAPP fee motion in 2005.  The Court credited 100% of the hours I billed.  In addition, the Court awarded my co-counsel, Alan Mansfield and John Hanson at Rosner Law & Mansfield, a total of approximately $141,000 for the time spent assisting me with the motion papers in the trial court as well as their time spent on the subsequent SLAPP appeal and fee motion.  I had minimal involvement in the appeal as a consultant due to the client's financial constraints.

23. ***Terrie*[7] *Hutton v. Herbert Hafif et al.* (BC 241082) filed 5/10/05** - **LOS ANGELES SUPERIOR COURT:**  The Honorable Paul Gutman in Los Angeles awarded my attorney's fees in the amount of $150,400**,** after prevailing on a SLAPP motion after appeal, which did not involve any SLAPP discovery.  The Court credited 98%-99% of my hours, awarded the hourly

---

[7] For clarification, there were two related Hutton matters.  The first was Mr. *Terry Hutton v. Hafif* and the second involved *Mrs. Terrie Hutton v. Hafif*.  I refer to them as Mr. and Mrs. Hutton to avoid confusion.

rates requested for each respective year, awarding $400.00 per hour for all time spent in 2005. The Court also applied a 2.50 multiplier for partial contingent risk.  The court also noted my demonstrated expertise.  The SLAPP motion was filed in June of 2001.  At that time, the *Hutton* appeal involved a 20-volume record while the same issue was battled all the way up to the California Supreme Court in two related cases, which were transferred back to the California Court of Appeal, after which Hafif obtained complete reversal in 2004 in a valid and final judgment and obtained a fee award in 2005.  More than half of the fees awarded consisted of a contingent risk multiplier.  Hutton then appealed from the fee award. The California Court of Appeal affirmed the grant of the SLAPP motion but reversed the fee award in light of the California Supreme Court's 2006 opinion in the related *Soukup* matter because the new SLAPPback statute of CCP 425.18 went into effect during the pendency of Hutton's SLAPP fee appeal, which precludes a prevailing SLAPPback defendant from recovering fees.  I estimate that the Hafif  firm attorneys' fees for assisting me up to the point of the 2005 fee award after the first SLAPP appeal were no more than $50,000.00, as they were billed out at lower hourly rates at that time and could not recover fees for their time.  The Court of appeal did not address the reasonableness of the amount of the fee. *Hutton v. Hafif*, 150 Cal. App. 4th 527  (2007).

24. ***Tsiknas et al. v. Ramona Unified School Dist.*** **(GIE 020665)**: By order of November 14, 2004, the Honorable Eddie C. Sturgeon of the San Diego Superior Court - East County Branch - awarded my fees in the amount of $29,709.38 and awarded fees to my co-counsel, Julie Hamilton, in the amount of $17,688.38.  The court credited 100% of the time billed and awarded fees at my 2004 rate of $375.00 per hour.  The court also awarded fees to my co-counsel at her 2004 rate of $225.00 per hour.  In addition, the court applied a 1.50 multiplier to the lodestar to compensate for contingent risk assumed under *Ketchum v. Moses*, 24 Cal.4th 1122 (2001).

Affirmed: *RUSD v. Tsiknas*, 35 Cal. App. 4th 510 (2005). The issues were novel and complex as evidenced by the California Court of Appeal's published opinion. The total amount billed for my time and attorney Hamilton's time on the entire case, including appeal and fee motion time and multipliers, was $78,447.25, which plaintiff RUSD paid in settlement after the appeal was resolved in defendants' favor. Again, I used only one lead trial counsel to assist me.

25. ***Lockton v. Small* (CV 810963)**: I was retained by the plaintiff to provide an expert declaration in opposition to defendant's SLAPP fee request of over $324,000.00 after the defendant prevailed on the SLAPP appeal. Defendant was represented by partners at Bingham & McCutchen. The trial court considered my expert declaration in which I opined that the maximum reasonable fee to which defendants are entitled should not exceed $87,000.00. In a final order entered 12/8/05, the trial court, per Hon. William J. Elfving, awarded fees to the defendant in the amount of $101,134.71.

## EXPERT OPINION

### LSKS HAS NOT PRODUCED A SINGLE PRIOR FEE AWARD APPROACHING THE $1 MILLION RANGE IN A COMPARABLE LIBEL/ANTI-SLAPP CASE INVOLVING PURE ISSUES OF LAW WITH NO DISCOVERY

26. I do not dispute the stellar credentials of the LSKS attorneys or the $465.00 blended hourly rate they seek. It is my opinion, however, that while the rates sought are reasonable, the hours are not. Moreover, given the specialized knowledge, experience, and expertise in defamation and anti-SLAPP law brought to bear on this case by the LSKS billing partners, in my opinion, it is incumbent on them to produce at least one prior fee award in a comparable case (i.e., no discovery, no trial, no appeal, no contingent risk, where the anti-SLAPP motion was resolved solely on the face of the pleadings) approaching $1 million.[8] If an attorney, like myself,

---

[8] In *Fitzgerald v. Barnes*, (E.D. Cal. 2013) No. 1:12–cv–00071–LJO–GAS, 2013 WL 1627740, *1-2 (E.D. Cal. Apr. 15, 2013), Defendant sought a total of $85K in fees and costs.

can produce numerous SLAPP fee awards in a variety of cases far more complex than this one, none of which have total fees awarded for the SLAPP motion and appeal that exceed $200,000, in cases where the court credited all hours spent at hourly rates ranging from $350.00/hr to $450.00/hr and applied a multiplier ranging from 1.50 to 2.50 to the lodestar for contingent risk, then surely the Defendants should be expected to produce at least one comparable fee award approaching the million dollar range in a non-contingent case, other than in a federal copyright case.  In light of my experience and the prior fee awards I have identified above in a wide variety of anti-SLAPP cases, including defamation cases and complex malicious prosecution actions, through appeal up to the California Supreme Court, the $1 Million fee award sought by Defendants is unprecedented for comparable work.  Even in the seven years I spent litigating the *Soukup v. Hafif* case up to the California Supreme Court and back down, with its voluminous record, I generated a total fee of less than $400,000, based on my trial court hourly rates ranging from $325.00 to $400.00 per hour, and my Supreme Court hourly rates ranging from $400.00 to $450.00 per hour, which amounts to a little over 1,000 hours of time.  I estimate that my co-counsel generated not more than an additional $200,000.00 in fees assisting me with SLAPP motion in the trial court and subsequent appeals through disposition of the *Soukup* matter in the California Supreme Court in July 2006.  Even if we had all spent 2,000 hours of time, that would not be unreasonable for all the anti-SLAPP work in the trial court, along with two rounds of subsequent SLAPP appeals, which were ultimately reviewed and disposed of by the California Supreme Court on the merits.  Based on my experience, review of the work product, results obtained, and LSKS's blended hourly rate of $465.00 per hour, I cannot contemplate a fee award

---

The Court awarded only $4,810.90 based on, *inter alia*, the 12 *Kerr* factors.  Factor number 12 is "awards in similar cases." The *Kerr* factors were approved by the U.S. Supreme Court in *Hensley v. Eckerhart*, 424 U.S. 424, 430 n. 3 (1983).

for this type of trial-level law and motion work in a relatively straightforward SLAPP/defamation case like the instant that could possibly exceed $200,000, which is a little over 400 hours of time, and I am being overly generous, giving LSKS every benefit of the doubt.

**DEFENDANTS HAVE NOT ADDUCED SUFFICIENT PROOF OF THE REASONABLENESS OF THE REQUESTED FEES, DESPITE THE DECLARATION FROM THE CARRIER THAT THE BILL WAS PAID**

27. Defendants ask this Court to rubber stamp their $1 Million fee request without providing any detailed itemized billing statements, which would allow this Court and a reviewing expert to determine which tasks were necessary and connected to the Anti-SLAPP portion of the motions to dismiss under Nevada law, and whether the time spent on such compensable tasks was reasonable for the particular billing attorney performing that task. Defendants appear to seek these prodigious fees solely on the word of Defendant Stanley, Defendants' counsel, Declarant Metcalf, and their insurance carrier. Defendants curiously failed to produce the detailed and itemized billing records that the insurance carrier allegedly reviewed and approved. Moreover, Ms. Baker is a biased, interested party, as Travelers Insurance is hoping to recoup the fees paid to LSKS, even assuming they were paid in full. Defendants should have no trouble producing copies of their billing records, as they have already produced them to their insurance carrier for its review of LSKS's itemized billing statements. This Court and plaintiff are entitled to nothing less, especially where plaintiff will ultimately be responsible for some portion of the bill and where Defendants' insurance carrier has an interest in obtaining maximum recovery of fees it has already paid to LSKS.

**THE 2,200 ATTORNEY HOURS BILLED BY NUMEROUS ATTORNEYS FOR ONE
SUCCESSFUL ANTI-SLAPP MOTION UNDER NEVADA LAW IS GROSSLY
EXCESSIVE AND UNPRECEDENTED**

28. When I am called upon to review a SLAPP fee application from a large firm, the same inefficiencies often reveal themselves: (1) three or more attorneys billing excessive amounts of time on the case; (2) bundling time in vague and indiscrete blocks, which makes it difficult if not impossible to sift the compensable time from the noncompensable time; (3) excessive hours billed for basic black-letter legal research and drafting time; (4) multiple attorneys billing for the same task; (5) excessive consultation, email, and teleconference time among numerous attorneys, courts, clients, and opposing counsel; and (6) large numbers of hours billed for vague and indiscrete tasks that are  unnecessary or excessive hours billed for necessary tasks.  Each of these defects is present in the LSKS's billing.

**PLAINTIFF'S FEE SHOULD GUIDE THE COURT IN ASSESSING THE
REASONABLENESS OF DEFENDANTS' FEE REQUEST HEREIN**

29. Anti-SLAPP statutes are designed to make it more difficult for a SLAPP plaintiff to oppose a SLAPP motion than for a defendant to pursue one.  This is part and parcel to the Anti-SLAPP policy to quickly and inexpensively eradicate the chilling effect of the suit on the defendant's speech rights.  As California courts and the Legislature have observed, the anti-SLAPP statute was enacted to stack the procedural deck in favor of the specially moving SLAPP defendant.  The procedure makes it more expensive and difficult for a plaintiff to obtain even limited discovery by requiring a noticed motion within a shortened time frame under the California anti-SLAPP statute.  The burden under California law requires the plaintiff to state and substantiate a legally sufficient claim, supported by competent admissible evidence, at a very early stage in the proceedings under subdivision (b) of the statute, including rebutting any privilege or immunity defenses raised. The plaintiff cannot amend the complaint once the motion

is filed.[9] The time constraints work heavily to the disadvantage of plaintiffs. Subdivision (f) precludes continuances other than those "required" by the court's docket conditions. Because defendants are not required to produce any evidence as to the merits of plaintiff's claims on the second prong, opposing the SLAPP motion is a much more difficult task for the plaintiff generally. There is more at stake for the plaintiff here and in SLAPP cases generally - a one-sided mandatory award of attorney's fees to the prevailing defendant in addition to losing the entire case or, a substantial portion of it, before discovery. Consequently, I routinely spend twice as much time preparing the opposition papers to an anti-SLAPP motion than I do in the preparation of the opening papers in support of a defense anti-SLAPP motion. Unlike the defense, the plaintiff only gets one shot. Plaintiff's burden is a heavy one to satisfy in a highly time pressured context, and if the motion is granted, defendant is entitled to a mandatory fee award unless the court determines that the fee is "obviously overinflated" under *Ketchum*, 24 Cal.4th at 1132-33. Plaintiff must often argue both against the applicability of the anti-SLAPP statute, rebut any immunity statutes or privilege defenses, and present admissible evidence and legal argument showing the merits of their case without discovery. Yet I am informed that Plaintiff's counsel (including local counsel), equally skilled as the LSKS attorneys, billed less than $60,000.00 for the entire opposition to the Nevada-based anti-SLAPP motion and 12(b)(6) motion,, including the ancillary discovery motion. This is clearly a reasonable number in my opinion and should be considered as an important factor in arriving at a reasonable fee in this case. Yet Defendants' bill for the same Nevada Anti-SLAPP motion and 12(b)(6) motion exceeds Plaintiff's bill not by a factor of 2, but by a factor of 5. Given the results obtained and the fact that Defendants had to file two sets of briefs and moving papers (opening and reply

---

[9] *Simmons v. Allstate*, 92 Cal. App. 4th 1068, 1073-1074 (2001).

papers), it is not highly unusual for me to see a defendant's SLAPP fee billing that exceeds plaintiff's bill by twice as much in some cases even assuming equally matched counsel with comparable billing rates.   But where the highly skilled defense counsel's billing exceeds plaintiff's billing by an order of 5 for the same motion, in my opinion, such an inflated bill exceeds the bounds of reason, especially where counsel are equally matched.

30. In sum, the Nevada Anti-SLAPP statute may often require less of the movant, as the question may turn solely on the issues of good faith communications in furtherance of the right to petition, which are the beginning and the end of the anti-SLAPP inquiry, as the law does not call for the examination of the substantive merits of a plaintiff's claim in such cases. *See* N.R.S. §§ 41.637, 41.650.  This is in sharp contrast to the D.C. and California Anti-SLAPP statutes. As such, this Court ruled first that Defendants' internet post was a communication made in furtherance of the right to petition. Once this Court determined that the Nevada Anti-SLAPP statute was invoked on the first prong, it then ruled that Defendants' petition-related communications were made "without knowledge of falsity" (i.e., "in good faith") on the ground that Plaintiff failed to specifically plead "knowing falsity," as required by N.R.S. § 41.650. (Dkt. No. 80 at 55).   In contrast, both D.C. and California anti-SLAPP law would have required inquiry into the merits of Plaintiff's claim.

31. In my career, I have rarely worked with more than one associate, one lead trial counsel, and one legal secretary to handle an anti-SLAPP case, no matter how complex the case. Usually, I work with one other attorney.  I have handled numerous complex SLAPP cases with appellate records in excess of 30 volumes in length.  In most of my SLAPP cases, I handle them myself with the assistance of a legal secretary and one lead trial counsel and/or associate.  In my opinion, it is patently unreasonable and inefficient to have more than one "competent and

experienced" SLAPP attorney/partner and two associate attorneys or lead trial counsel handle a SLAPP motion at the pre-discovery stage of the case.  The instant case was, in my opinion, clearly overstaffed in light of the nature of the work required, the work performed, and the results obtained.

### THE 2,200 HOURS BILLED EXCEEDS THE BOUNDS OF REASON ON ITS FACE CONSIDERING THE NATURE OF THE WORK REQUIRED FOR THE SUCCESSFUL NEVADA ANTI-SLAPP MOTION

32. Based on my knowledge and experience, the 2,200 plus hours LSKS billed for trial court SLAPP motions of this nature, involving SLAPP threshold issues based primarily on the face of the complaint and plain black-letter libel and anti-SLAPP law are, in my opinion, not only excessive on their face, but also the product of overreaching.  Unlike the D.C. anti-SLAPP statute, the Nevada anti-SLAPP statute provides absolute immunity for good faith communications in furtherance of the right of petition. N.R.S. § 41.650.  In this case, dismissal under the Nevada anti-SLAPP statute involved a pure issue of law. Although there was substantial legal briefing on this and the defamation issues, they still remain pure issues of law. There was simply no need for all of the extraneous factual and evidentiary material presented by Defendants in connection with their D.C.-based motions, which was simply regurgitated in the Nevada-based motions. (*See* Exhibits A and B to Plaintiff's to Wood Declaration for opposition to Defendants' motion).  As such, either the D.C. SLAPP briefing and motions contributed little, if anything, to the results obtained on the Nevada motions or much of the hours spent on the Nevada anti-SLAPP motion were unnecessary and duplicative of the work on the D.C.-based motions.

33. Finally, I have reviewed the entire stack of paperwork filed by the parties in connection with the D.C. and Nevada anti-SLAPP/12(b)(6) motions and ancillary motions.

Quite simply, the value of all the defense work in this case, in my opinion, is not worth anywhere near $1 Million and does not even approach the $500,000 range, considering the results obtained, defense counsel's experience and skill, the quantity and quality of the work product, and the work necessary to prevail on the motion.  Although the quality of all the work product in this case was high, much of the defense work was not necessary to achieve the result obtained on the Anti-SLAPP portion of the Nevada motion to dismiss and much of the time spent on compensable tasks was unreasonable.  Although Defendants' briefing was extensive and contained detailed legal analysis, the factual record presented was wholly unnecessary in light of the work required to brief what was essentially a demurrer or motion to dismiss type of anti-SLAPP motion under Nevada's Anti-SLAPP immunity statute.  In contrast, Defendants' D.C. Anti-SLAPP motion was flatly denied by this Court (Dkt. No. 80 at 17, n. 11).  Based on my knowledge of Nevada authorities and public policy, Defendants are precluded from recovering any of the hours for the D.C. Anti-SLAPP/12(b)(6) motion, which was denied, and the Nevada 12(b)(6) motion.  Alternatively, if this Court deems it reasonable to credit some of the time on the D.C.-based  motions, the Court should also consider the following factors: the lack of success on the entire D.C. combined motions to dismiss, any noncompensable time spent solely on the Nevada 12(b)(6) motion, which is not properly compensable under the Nevada Anti-SLAPP statute, the duplication of effort between the D.C. and Nevada motions, and whether much of the D.C. Anti-SLAPP motion was, itself, cut and pasted from a prior motion in an unrelated D.C. SLAPP case LSKS handled, *Synder v. Creative Loafing, Inc.*, No. 2011-CA-003168B (Sup. Ct. D.C. 2011) (attached as Exhibit D to the Wood Declaration).  Given that LSKS has been recognized as the nation's top media and First Amendment law defense firm, with Mr. Berlin having invoked the anti-SLAPP statutes of seven states, I would expect the firm to be more

efficient than Mr. Levine's skeletal billing affidavit indicates by at least a factor of 5 in light of the results obtained, the character of the work required, and work actually performed.

34. As part of my SLAPP practice, I routinely cut and paste parts of prior briefs, motions, and declarations to save time and make myself more efficient.  I never double bill for the first motion when I use it in a subsequent motion or case.  I also understand that each anti-SLAPP motion (in different cases) is unique and that any such use of prior briefs must be tailored to the issues and facts of the particular case at hand, which time is properly billable.  But when the two SLAPP motions are based on the same set of facts and when the second anti-SLAPP motion under Nevada law was resolved in defendant's favor with significantly less effort as a matter of law under an immunity statute on the face of the pleadings, the fees billed for the successful Nevada anti-SLAPP motion, alone, are unprecedented.  In light of the stack of paper filed by the parties, the detailed legal briefing required, and the work reasonably necessary for defendants to prevail on the Anti-SLAPP portion of the Nevada motions to dismiss, it is my opinion that the work in this case was no more complex than a trial court anti-SLAPP motion with an average SLAPP appeal, that may have been somewhat legally complex, but ultimately resolved on the basis of undisputed facts on the face of the pleadings, which ultimately consisted of a few paragraphs on a website post and related press release, and an article to which the site was linked.  Accordingly, it is my opinion that the entire billing for both trial court SLAPP motions in this matter consisting of 2,200 hours seeking a total fee, including expenses, of over $1,000,000 is unreasonable on its face.  To put this in perspective, LSKS has billed for nearly 900 hours just for preparation of the opening and reply papers in connection with the initial combined anti-SLAPP/12(b)(6) motions to dismiss, which they lost. (Dkt. No. 82 at ¶ 18(f)). Similarly, the bill for the subsequent Nevada anti-SLAPP motion, alone, based on another 700

hours of time for preparation of the opening and reply papers on its "supplemental" combined motions, can only be the product of overreaching as substantial portions of that motion were obviously recycled from prior motions and the motion was resolved as a matter of law solely on the face of the pleadings and Nevada's immunity statute.  Given the readily apparent inflation of the bill, it is my opinion that this Court should consider exercising its discretion to deny the fee request altogether, reduce the fee request by at least 80%, or apply a negative multiplier between 5.0 and 10.0 to the total fee request, pursuant to *Brunzell* and the lodestar adjustment method under *Hensley*.  In my opinion, such a denial and/or drastic reduction in the fee is necessary to "temper" the method adopted with "reason and fairness."

## LEVINE'S SKELETAL BILLING AFFIDAVIT DOES NOT PERMIT MEANINGFUL EVALUATION OF THE REASONABLENESS OF THE TIME SPENT

35.  In my opinion, the palpable defects present in LSKS's billing are functionally indistinguishable from those in the billings at issue in cases where courts have reduced an anti-SLAPP movant's fees, such as the *Google* and *Christian Research Institute* cases discussed in Plaintiff's fee opposition memorandum.

36. The first thing that I have observed is that most of the published fee cases, where the fee was upheld as reasonable, involved rather modest fee awards and the fee applicants therein provided "detailed, itemized billings" in each case, even where the amounts in dispute are dwarfed by a factor ranging from 10 to 100 compared to the fees sought by LSKS herein. Based on my experience and my knowledge of published fee awards in similar cases, I cannot think of any reason to expect any less detail in the billings and efficiency for comparable work from our nation's premier First Amendment defense firm.

37. The billing breakdown in the Levine affidavit consists of vague blocks of time, with most entries spanning many months of work in conclusory fashion, which have inextricably

lumped together separate indiscrete tasks and billing attorneys.  Without the detailed itemized billing invoices I routinely see in SLAPP fee motions, I am unable to provide a complete detailed analysis as to which specific tasks are not compensable, or whether the time spent on each task by each billing attorney was reasonable.  Nonetheless, I have attempted to provide some insight into the major billing defects I have ascertained from the Levine affidavit:

### LSKS BILLED FOR HUGE CHUNKS OF APPARENTLY UNNECESSARY WORK

38. The 55.6 hours of time, spanning one month, billed for "factual investigation and collection of `potentially' relevant documents," (Dkt. No. 82 at ¶ 18(b)), were wholly unnecessary under the Nevada anti-SLAPP law, as none of these facts were necessary or relevant to the legal issues presented by defendants on their Nevada anti-SLAPP motion.  The only facts relevant to the defamation, privilege, and immunity issues were derived almost solely from the face of the Complaint, Defendants' website petition and related press release, the article to which the petition was hyperlinked, and a copy of Jacobs' declaration.  I cannot see how such a broad and sweeping investigation and production of voluminous but spurious exhibits was reasonably necessary to achieve the result on the Nevada Anti-SLAPP motion.  Even assuming this task was somehow necessary to achieve the result, I cannot fully assess the reasonableness of this time spent without a more detailed and itemized billing statement.  In light of my experience and the applicable authorities, it is my opinion that this time should not be credited or, at minimum, Defendants should be ordered to produce all itemized billing records reviewed and approved by their insurance carrier.

39. LSKS billed 90.3 hours just for time spent speaking with their clients and insurance carriers. (*Id.* at ¶ 18(c)).  Given the truncated time frame and lack of discovery in this case, these hours were, in my opinion, wholly unnecessary and/or vastly inflated.  The firm billed another

72.6 hours for speaking with Plaintiff's counsel and the Court.  (*Id.* at ¶ 18(d)). This results in a total of 162.9 hours just communicating for an anti-SLAPP matter in the trial court with no discovery, no other significant motion practice, no appeal, and no trial, in a case that was resolved on the face of the pleadings.  To put this billing entry into perspective, the 162.9 hours of communication time billed by LSKS is truly monumental and exceeds the time I spend litigating most of my anti-SLAPP cases through the court of appeal as shown above.  It is my opinion that this time is neither reasonable nor necessary to prevail on the Nevada anti-SLAPP motion and thus should not be credited.

40. The next billing entry that in my opinion is highly suspect claims 91.3 hours billed for time spent monitoring related litigation in Nevada and Florida. (*Id.* at ¶ 18(e)).  My question is what exactly were these experienced defamation attorneys doing with all this time?  Only LSKS can answer that question by providing itemized bills.  But, in my opinion, this time was spent on a wholly unnecessary task that did nothing to contribute to the result obtained on the Nevada Anti-SLAPP motion.  Again, I spend less time litigating many of my entire SLAPP motions in the trial court.  In my opinion, this entry is neither necessary nor reasonable and thus should not be credited.

41. The LSKS firm billed 97.4 hours, amounting to $45,291, just for preparation for and appearance at one oral argument on the D.C. SLAPP motion in the trial court, which they lost. (*Id.* at ¶ 18(h)).  This was not a hearing before a State Supreme Court or the United States Supreme Court.  When I prepared for oral argument before the California Supreme Court in the *Soukup v. Hafif* anti-SLAPP/SLAPPback matter in May of 2006, with a 50-volume record, multiple levels of briefing in the Supreme and lower courts, and voluminous legislative history behind the newly enacted SLAPPback statute in California Code of Civil Procedure section

425.18, I billed a little over $26,000 at my 2006 hourly rate of $425.00/hr.  In my opinion, the time spent preparing for oral argument by LSKS in this matter is simply unreasonable on its face. After having fully briefed the case, I would have spent no more than 40 hours of time preparing for oral argument in the trial court on the more complicated and unsuccessful D.C. Anti-SLAPP motion.  Hence, I would have billed no more than $18,600 for the oral argument in connection with the entire combined D.C. SLAPP/12(b)(6) motion.  If I were the fee applicant under Nevada law, assuming arguendo I would be entitled to recover for part of the time spent on the unsuccessful DC motion, I would have reduced this fee by at least half amounting to $9,300.00. Then, I would have again reduced this figure in half to account for the noncompensable time spent on the 12/(b)(6) portion of the Nevada motion to dismiss for a maximum total fee of $4,150.00 for the oral argument.  (See Rebel and S.B. Beach Properties).   Even then, I cannot ascertain how the time spent preparing for and appearing at oral argument on the unsuccessful DC motion could possibly have contributed to the result on the anti-SLAPP portion of the Nevada motion to dismiss and thus be compensable at all.

42. Finally, the roughly 700 hours of time (313 hours just for the reply papers) billed for the "preparation" of the opening and reply papers just for the Nevada combined anti-SLAPP motion/12(b)(6) motion alone is remarkably excessive and clearly unreasonable based on counsel's expertise, the nature of the work required and performed, and the extreme duplication of effort that is readily apparent from the work-product and billing in this matter. (Dkt. No. 82 at¶18(i)).  When compounded with the bill for an additional 900 hours of time (417.9 hours just for the reply papers) for "preparation" of the opening and reply papers in support of the unsuccessful combined Anti-SLAPP motion/motion to dismiss under DC law, it is my firm opinion that LSKS's bill is unconscionable on its face.  My opinion would not change even if

LSKS had succeeded on both motions, particularly in light of the fact that the time spent in connection with both 12(b)(6) motions is not properly compensable under the anti-SLAPP fee provision. In most cases, I spend substantially less time (usually half the time) on reply papers in support of an anti-SLAPP motion than I spend on the opening papers. In evaluating just the time spent on the reply papers alone for any, even the most complex, single anti-SLAPP motion in the trial court, it is my opinion that 300 plus hours of time is incomprehensible based on my experience, the issues, the material facts, and work performed in this case. I cannot recall any occasion where I have spent anywhere near 300 hours preparing one appellant's reply brief or the reply papers in support of one anti-SLAPP motion. I would expect to see these kinds of hours billed - 800 plus hours - only after prevailing on a highly complex anti-SLAPP appeal or one that is reviewed by a state's highest court. Even then, in my opinion, it would have to be a highly complex SLAPP appeal with a voluminous record to justify these kinds of hours. In the instant case, I would have spent no more than 100 hours in connection with the preparation of the opening papers in support of the Anti-SLAPP portion of the Nevada motion to dismiss and no more than 50 hours of time spent on the reply papers and no more than 350 hours maximum for the entire combined Nevada Anti-SLAPP/12(b)(6) motion to dismiss. Ultimately, I am unable to ascertain any reasonably necessary itemized tasks LSKS performed that could possibly justify such a huge number of hours based on all the factors previously identified.

**SLAPP FEES CANNOT BE PUNITIVE**

43. As the Nevada statute makes clear, a separate right of action for compensatory and punitive damages in addition to attorneys' fees is provided to a defendant if the "court grants a special motion to dismiss filed pursuant to NRS § 41.660," which happened here. N.R.S. § 41.670. This is the functional equivalent of California Code of Civil Procedure section (CCP) §

425.18, which provides the prevailing defendant on a SLAPP motion the right to bring a subsequent "SLAPPback" malicious prosecution action against the losing SLAPP plaintiff in the prior action, without having to oppose a traditional anti-SLAPP motion under CCP 425.16.  This further buttresses the conclusion that neither Legislature intended courts to award SLAPP fees for any purpose other than compensating the defendant for its "reasonable" attorneys' fees.

## CONCLUSION

44. In my opinion, which is based on the foregoing foundation and analysis, my prior experience with SLAPP/defamation cases, as well as my teaching experience with law students, one or two associates working with one partner experienced in First Amendment/media law should have been able to perform the tasks reasonably required to successfully and efficiently handle the combined Nevada anti-SLAPP and 12(b)(6) motions to dismiss on behalf Defendants in the present case in 350 hours or less of total attorney time, at an average combined hourly rate of $465.00/hr resulting in a total fee award of $162,750.00.  Assuming arguendo the Court is inclined to credit the time spent on the unsuccessful DC anti-SLAPP motion, which should be few, if any hours, it is my opinion that the total time spent in connection with the combined Nevada motions should be no more than 350 hours total and no more than 450 hours of total time, including time spent on the choice of law issues, for the combined DC motions, which would result in a total fee of $372,000.00 for both sets of motions in the trial court.  Given the palpable overlapping and recycled motion work, irrelevant and voluminous factual record, and that the time spent on the Nevada Anti-SLAPP motion, alone, is plainly excessive, it is my opinion that none of the time spent on the D.C. motion should be credited under Nevada law or any other state anti-SLAPP fee provision, nor should the time spent on the Nevada 12(b)(6) motion be credited.  This result is, in my opinion, necessary to "temper" whatever reasonable

31

method this Court applies with "reason and fairness." Accordingly, it is my opinion that this Court should give great weight to the lack of success of the D.C. Anti-SLAPP motion and the extreme inefficiency with which the motions were handled in light of the exceptional skill and experience LSKS brought to bear on this case.

45. It is thus my firm opinion, based on the foregoing analysis, that a reasonable fee award for all time spent in connection with prevailing solely on the anti-SLAPP portion of the Nevada motion to dismiss herein, is one that does not exceed $69,750.00, which is based on a maximum of 150 hours of total attorney time at a combined hourly rate of $465.00/hr.

46. Alternatively, this Court could simply apply a negative multiplier of 5.0 to 10.0 under the lodestar adjustment approach to the total $1,000,000 fee requested to reflect the lack of success of the D.C. SLAPP motion, the noncompensable 12(b)(6) motion time, the unnecessary time, duplication of effort, and inefficiency with which both motions were handled by all the expert billing attorneys, which would result in a total fee award of between $100,000 and $200,000 maximally, or it could simply deny the fee altogether.

**I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of November 2013**

**JAMES J. MONEER**
**Declarant**

32

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2013, a true and correct copy of the foregoing **Declaration of James J. Moneer** was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the following counsel of record:

> Lee Levine
> Gayle Sproul
> Chad R. Bowman
> Seth D. Berlin
> Rachel F. Strom
> **LEVINE SULLIVAN KOCH & SCHULZ, LLP**
> 321 West 44th Street, Suite 510
> New York, New York 10036
> Telephone: 212-850-6100
> llevine@lskslaw.com
> gsproul@lskslaw.com
> cbowman@lskslaw.com
> sberlin@lskslaw.com
> rstrom@lskslaw.com

/s/ L. Lin Wood

33