UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

SHELDON G. ADELSON,

                Plaintiff,

v.

DAVID A. HARRIS, MARC R. STANLEY, and
NATIONAL JEWISH DEMOCRATIC COUNCIL,

                Defendants.

Case No. 12-Civ-6052-JPO

ECF Case

---

## SECOND SUPPLEMENTAL DECLARATION OF LEE LEVINE

I, **Lee Levine**, declare as follows:

1. I am Senior Counsel at Ballard Spahr, LLP, counsel for defendants David A. Harris, Marc R. Stanley and the National Jewish Democratic Council ("NJDC") (collectively, "defendants") in this action. I make this Declaration to place before the Court information and materials in support of Defendants' Supplemental Statement of Counsel Fees and Expenses in accordance with this Court's Memorandum and Order dated September 30, 2013 (the "Order"), and its Order dated December 12, 2017. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. This Declaration supplements my previous declarations dated October 15 and November 26, 2013, submitted in connection with Defendants' initial Statement of Attorneys' Fees and Expenses (the "Statement"), both of which are incorporated herein by reference. The Court is respectfully directed to those declarations, which set out, *inter alia*, (1) relevant background concerning this litigation through entry of the Order, (2) information concerning the qualifications of and hourly rates charged for the services rendered by counsel for defendants,

and (3) detailed descriptions of those services and the fees charged to and paid on behalf of defendants by their insurance carrier.

3. Prior to October 1, 2017, with one exception explained in paragraph 10 *infra*, counsel for defendants all practiced law at Levine Sullivan Koch & Schulz, LLP ("LSKS"). Effective that date, LSKS merged with Ballard Spahr, LLP ("Ballard"), through which I and my LSKS colleagues have continued to represent defendants. I have been the senior lawyer in charge of this matter at both LSKS and Ballard. In my initial declaration, at paragraphs 15 and 16, I described the roles that each of my colleagues played in the defense of this case through the date of that declaration as well as their qualifications to do so. In performing the services described in this declaration, that division of responsibility has generally continued, with some limited exceptions – specifically, during the more than four years that have elapsed since my initial declaration, (a) some associates and paralegals assigned to the case (specifically, Mr. Kabat, Ms. Atcherley, Ms. Pinkerton-Burke and Ms. Kratenstein) left LSKS to pursue other opportunities and were, where necessary, replaced by other associates and paralegals and (b) on occasion, following the issuance of court orders requiring and setting deadlines for the filing of briefs in this case, some attorneys otherwise assigned to it were actively embroiled in other litigation, such that their responsibilities were assumed by others already assigned to the case. I describe below the relevant qualifications of and services rendered by those associates and paralegals not identified in my initial declaration:

> *Mara J. Gassmann* graduated *magna cum laude* and Order of the Coif from Georgetown University Law Center in 2011 and, before joining LSKS, served as a law clerk to the Hon. Leonie M. Brinkema of the U.S. District Court for the Eastern District of Virginia. In this case, Ms. Gassmann conducted discrete legal research in connection with the supplemental briefing in the Court of Appeals described in paragraph 4(e) *infra*.
>
> *Shaina Jones Ward* graduated from Vanderbilt University Law School in 2009 and, before joining LSKS, served as a law clerk to the Hon. Raymond A. Jackson of the U.S. District Court for the Eastern District of Virginia. In this case, Ms. Ward conducted

discrete legal research in connection with preparation for the oral arguments in the Court of Appeals described in paragraph 4(d) *infra* and in the Nevada Supreme Court described in paragraph 4(g) *infra*.

The following additional paralegals assisted with the following tasks: *Cynthia A. Lindsay*, who received her B.A. from Fort Hays State University in 1993, assisted in the preparation of the submission described in paragraph 4(b) *infra* and reviewed citations and quotations in the brief described in paragraph 4(f) *infra* for accuracy. *Brian C. Earl*, who received his B.A. from Rutgers University in 2012, reviewed citations and quotations in the briefs described in paragraphs 4(f) and 4(h) *infra* for accuracy and assisted in preparation for the oral argument in the Nevada Supreme Court described in paragraph 4(g) *infra*.

4. Following entry of the Order on September 30, 2013, my colleagues and I have rendered legal services to defendants with respect to the following proceedings in this action:

  a. On October 15, 2013, defendants filed the Statement, which was accompanied by my above-referenced declaration and the declarations of Slade R. Metcalf, Marc. R. Stanley and Amy M. Baker, as well as multiple exhibits to those declarations. *See* Dkts. 81-85.

  b. Following the filing of Plaintiff Sheldon Adelson's Memorandum of Law in response to defendants' Statement, which was itself accompanied by the declarations of L. Lin Wood, Mark C. Morril and James J. Moneer, as well as multiple exhibits to those declarations, *see* Dkts. 91-94, defendants filed their Reply in support of the Statement (the "Reply"), which was accompanied by my reply declaration, the reply declaration of Amy M. Baker, and the declaration of Seth D. Berlin, as well as multiple exhibits to the Berlin Declaration. *See* Dkts. 95-98.

  c. On October 30, 2013, Adelson filed a notice of appeal, *see* Dkt. 88, and, on January 29, 2014, filed his opening brief in the Court of Appeals, a true and correct copy of which is attached hereto as Exhibit 1. Defendants filed their brief in the Court of Appeals on April 30, 2014, a true and correct copy of which is attached hereto as Exhibit 2 (the "Second

3

Circuit Brief"). A true and correct copy of Adelson's reply brief, which was filed in the Second Circuit on June 4, 2014, is attached hereto as Exhibit 3.

        d.        On August 28, 2014, the Court of Appeals heard oral argument, a true and correct transcript of which is attached hereto as Exhibit 4.

        e.        Following oral argument, pursuant to an Order by the Court of Appeals dated August 29, 2014, a copy of which is attached hereto as Exhibit 5, the parties submitted supplemental briefs to that Court. A true and correct copy of defendants' supplemental brief (the "First Supplemental Brief") is attached hereto as Exhibit 6 and a true and correct copy of Adelson's Supplemental Brief is attached hereto as Exhibit 7.

        f.        On December 19, 2014, the Court of Appeals issued a written decision affirming this Court's Order in significant part and certifying two questions to the Nevada Supreme Court. *See Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014). By Order dated March 19, 2015, a true and correct copy of which is attached hereto as Exhibit 8, the Nevada Supreme Court accepted the certified questions and directed the parties to submit briefs addressing them as well as additional issues referenced by the Court of Appeals in its decision. Accordingly, following the filing of Adelson's brief in the Nevada Supreme Court, defendants filed their brief in that court on June 3, 2015 (the "Nevada Brief"). True and correct copies of the parties' briefs filed in the Nevada Supreme Court are attached hereto as Exhibits 9, 10 and 11.

        g.        On April 4, 2016, the Nevada Supreme Court, sitting en banc, heard oral argument. To my knowledge, no transcript of that argument has been created.

        h.        By opinion dated September 27, 2017, the Nevada Supreme Court answered the certified questions, and an additional substantive issue raised by Adelson in his briefs to that court, in a manner consistent with this Court's Order. *See Adelson v. Harris*, 402

P.3d 665 (Nev. 2017).  By Order dated October 4, 2017, a true and correct copy of which is attached hereto as Exhibit 12, the Court of Appeals ordered the parties to submit supplemental briefs addressing the import of the Nevada Supreme Court's opinion (the "Second Supplemental Briefs").  On October 25, 2017, the parties submitted those briefs, true and correct copies of which are attached hereto as Exhibits 13 and 14.

    i. Pursuant to this Court's order dated December 12, 2017, defendants prepared their supplemental statement of fees, supported by this supplemental declaration detailing four years' worth of fees and costs since the initial Statement was filed, as well as supplemental declarations submitted by Slade R. Metcalf and Amy M. Baker.

    j. In addition to the foregoing, during the more than four years that have now elapsed since the entry of this Court's Order in September 2013, in connection with the legal services rendered to defendants set out *supra*, my colleagues and I (i) periodically communicated with them concerning the ongoing litigation, (ii) communicated with the claims counsel responsible for this matter at defendants' insurance carrier, Travelers Indemnity Company ("Travelers"), (iii) communicated with Adelson's counsel and the various courts referenced *supra* concerning a variety of litigation-related matters, and (iii) continued to monitor those related legal proceedings involving Adelson, which are described in my initial declaration at paragraphs 2-5.

    5. As noted in my initial declaration, effective October 1, 2012, the services rendered by LSKS in the defense of this litigation have been billed to Travelers at a negotiated blended rate of $465 for all attorneys and $200 for all paralegals.  During the more than five years since then, those rates have not been raised, either by LSKS or by Ballard.  By way of comparison, during the same five year period, the standard hourly rates charged by LSKS for

comparable legal services rose from those described in my initial declaration (at paragraph 13) to $815 for senior partners, $405 for junior associates, and $260 for paralegals.

6. As the chronology set out in paragraph 4 of this declaration demonstrates, appellate proceedings in this litigation have been both protracted and complex. In all, defendants were ordered to file four separate briefs and to present oral argument in two different appellate courts. In those briefs and arguments, defendants were obliged to address, either in response to contentions made by Adelson or by court order, a host of legal issues, including:

   a. Whether a hyperlink to a news report detailing the contents of a declaration filed in a judicial proceeding satisfies the fair report privilege's attribution requirement as a matter of Nevada law;

   b. Whether the challenged publication in this case presented a "fair and impartial" account of that proceeding within the meaning of the fair report privilege as a matter of Nevada law;

   c. Whether certain statements alleged by Adelson to be defamatory constituted expressions of opinion protected by Nevada law and/or the First Amendment;

   d. Whether, separate and apart from the fair report privilege and the protections afforded to expressions of opinion, the challenged publication was defamatory, either as a matter of Nevada law or under the First Amendment;

   e. Whether the relevant provisions of Nevada's anti-SLAPP statute apply in the federal courts, including whether those provisions (i) are compatible with the Federal Rules of Civil Procedure and (ii) are "substantive" within the meaning of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938);

      f.      Whether this Court otherwise properly had jurisdiction to consider defendants' motion under the Nevada anti-SLAPP statute;

      g.      Whether defendants had presented "good cause," within the meaning of the Nevada statute, for filing their anti-SLAPP motion more than 60 days following service of the complaint in this action;

      h.      Whether the Nevada statute applies to statements not directed to a governmental official or entity;

      i.      Whether defendants published the challenged statements in "good faith" within the meaning of the Nevada statute;

      j.      Whether Adelson was entitled to conduct discovery under Federal Rule of Civil Procedure 56(d) in order to rebut defendants' contention that the challenged statements were published in "good faith" within the meaning of the Nevada statute; and

      k.      Whether multiple amendments to the Nevada statute since 2012, as they have been construed by the Nevada Supreme Court, affected the statute's application in this case.

      7.      During the course of appellate proceedings in this action, Adelson has employed attorneys at four separate law firms to represent him.  In the Court of Appeals, in addition to the Wood, Hernacki & Evans, LLC firm that has represented him in this Court and continued to represent him in the Second Circuit, Adelson retained a team of lawyers at Mayer Brown LLP.  In all, six lawyers appeared on the briefs filed on Adelson's behalf in the Court of Appeals, including Andrew L. Frey, the renowned former Deputy Solicitor General of the United States, and James R. Ferguson, a distinguished appellate advocate who presented oral argument in the Second Circuit on Adelson's behalf.  In the Nevada Supreme Court, in addition to those firms, Adelson retained multiple lawyers at two additional firms to represent him – Lewis Roca

Rothberger Christie LLP and the Morris Law Group. One of those lawyers, Daniel F. Polsenberg, who presented oral argument in the Nevada Supreme Court on Adelson's behalf, is, according to his firm's website, "the lawyer to see for a big appeal" in that court. *See* People: Daniel F. Polsenberg, LEWIS ROCA ROTHBERGER CHRISTIE, https://www.lrrc.com/Daniel-Polsenberg#overview (last visited December 21, 2017).

        8.      In addition to the sheer number of distinct legal issues raised during the course of appellate proceedings in this case, and the multiple, sophisticated law firms and lawyers that Adelson retained to address them on his behalf, additional indicia of the significance and complexity of those issues, as well as the quality of the services rendered to the parties by their lawyers, include the following:

        a.      Although, as is customary, the Court of Appeals allotted ten minutes per side for argument, the actual argument lasted one hour and fifteen minutes because the court had so many questions, covering a range of different issues, for Mr. Ferguson and me. Indeed, at the argument's conclusion, Judge Raggi, who presided, thanked both counsel "for their patience in answering all our questions" and Judge Calabresi volunteered on the record that the appeal had been "very well argued" on both sides. Ex. 4, at 62.

        b.      Despite the extensive questioning of counsel at oral argument, the next day, the Court of Appeals issued an order requiring the parties to address an additional issue that members of the panel had raised *sua sponte* at the argument itself – whether the challenged publication was "defamatory" under Nevada law. Ex. 5. In its initial decision, although the panel concluded that it was, it expressly reserved decision on a related issue that had been raised by defendants in their supplemental brief – namely, whether the defamatory meaning question

also presented an issue of constitutional law to be decided under the First Amendment in defendants' favor. *See* 774 F.3d at 807-08.

    c.  In its initial decision, the Court of Appeals found two of the issues before it sufficiently novel that it certified them to the Nevada Supreme Court and further invited that Court to address a third. The Court did so despite the fact that, at argument, it was made aware that certification would inevitably entail "more expense and more burden" for defendants. Ex. 4 at 50.

    d.  The Nevada Supreme Court found all three of those issues sufficiently complex and significant that it (i) elected to hear the matter *en banc* (rather than before a three judge panel as is customary in that court), (ii) ordered the parties to brief them *de novo* and (iii) directed them to appear for oral argument. Following that argument, it wrestled with the case for some 18 months before issuing its decision.

    e.  Following that decision, the Court of Appeals took the additional step of ordering the parties to submit further briefing assessing the import of the Nevada Supreme Court's decision. It specifically asked the parties to address the significance of *Delucchi v. Songer*, 396 P.3d 826 (Nev. 2017), one of several decisions by the Nevada Supreme Court construing the Nevada statute in the years following the Second Circuit's initial decision. During that same period, the Nevada legislature amended the statute for the second time since the institution of this litigation, amendments the import of which were assessed both by the Court of Appeals and by the Nevada Supreme Court in their respective decisions.

    f.  In addition to the obvious importance of monitoring such ongoing legislative and judicial developments in Nevada during the nearly three years that passed between the Court of Appeals' and the Nevada Supreme Court's decisions, my colleagues and I

were obliged to continue to track ongoing proceedings in other relevant litigation involving Adelson as well. For example, on May 31, 2016, the parties announced the settlement of the underlying litigation brought by Steven Jacobs against Adelson's companies, in which Jacobs submitted the declaration on which defendants in this case based their invocation of the fair report privilege. *See* Farah Master, *Las Vegas Sands Settles with Former CEO of Macau Casino Unit*, Reuters (May 31, 2016), http://www.reuters.com/article/us-lasvegassands-lawsuit/las-vegas-sands-settles-with-former-ceo-of-macau-casino-unit-idUSKCN0YN30X (reporting that Adelson's companies paid Jacobs more than $75 million to settle that litigation). In addition, on January 12, 2017, Adelson voluntarily dismissed defamation litigation he had filed in Hong Kong against a *Wall Street Journal* reporter, litigation that defendants had cited in support of their contention that Adelson has a well-documented history of instituting SLAPP suits against those who criticize him regardless of his prospects for success on the merits of such claims. *See* Lukas I. Alpert, *Libel Lawsuit Settled Between Casino Magnate Sheldon Adelson, WSJ Reporter*, WALL ST. J. (Jan. 12, 2017), http://www.wsj.com/articles/libel-lawsuit-settled-between-sheldon-adelson-and-wsj-reporter-1484262863 (reporting that, after years of costly litigation in Hong Kong, Adelson simply dropped the suit without receiving a monetary settlement, retraction or correction of any kind).

9. Attached hereto as Exhibit 15, and incorporated herein by this reference, is a chart that sets forth the legal services that LSKS and Ballard rendered in the defense of this litigation commencing on October 1, 2013 and through December 31, 2017, broken down by category. This chart was created at my direction and I have reviewed it and attest to the Court both (i) that it is an accurate description of the services rendered and the hours for which LSKS and Ballard have billed, and (ii) that it is drawn from the contemporaneous billing records maintained by

those firms.  In those records, time is recorded in 0.1 hour increments.  The chart does not include 314.3 hours of attorney and paralegal time written off by the firms and not included in a statement for services rendered.  Those hours, the dollar value of which is $138,623.50, include time devoted to travel in connection with the case, for which LSKS did not typically charge its clients, as well as those hours that the firms wrote off so that each invoice included only those charges that were deemed entirely appropriate for billing.  In addition, the chart does not include 243.0 hours of attorney and paralegal time actually billed to and paid for by Travelers, the dollar value of which is $108,382.00, for which defendants do not seek reimbursement.  The following is a summary of the information contained in Exhibit 15, which includes the dollar value of the services rendered in each category, which amounts were in fact billed to and paid by Travelers on behalf of its insureds:

      a.     For preparation of the Statement, the accompanying declarations and the exhibits thereto filed in this Court, LSKS attorneys billed 138.3 hours and LSKS paralegals billed 13.5 hours for a total fee of $67,009.50.

      b.     For preparation of the Reply, the accompanying declarations and the exhibits thereto filed in this Court, LSKS attorneys billed 195.2 hours and LSKS paralegals billed 6.6 hours for a total fee of $92,088.00.

      c.     For preparation of the Second Circuit Brief, including review and analysis of Adelson's opening and reply briefs and participation in preparation of the Joint Appendix and related submissions filed in the Court of Appeals, LSKS attorneys billed 570.9 hours and LSKS paralegals billed 17.1 hours for a total fee of $268,888.50.

      d.     For preparation for and presentation by me of oral argument in the Court of Appeals, LSKS attorneys billed 99.2 hours for a total fee of $46,128.00.

  e. For preparation of the First Supplemental Brief filed in the Court of Appeals, including review and analysis of Adelson's first supplemental brief filed in that court, LSKS attorneys billed 122.8 hours and LSKS paralegals billed 9.9 hours for a total fee of $59,082.00.

  f. For preparation of the Nevada Brief, including review and analysis of Adelson's opening and reply briefs filed in the Nevada Supreme Court, LSKS attorneys billed 306.2 hours and LSKS paralegals billed 8.3 hours for a total fee of $144,043.00.

  g. For preparation for and presentation by me of oral argument in the Nevada Supreme Court, including review of that court's subsequent decision, LSKS attorneys billed 203.2 hours for a total fee of $94,488.00.

  h. For preparation of the Second Supplemental Brief filed in the Court of Appeals, including review and analysis of Adelson's second supplemental brief filed in that Court and the Court of Appeals' subsequent decision, Ballard attorneys billed 74.7 hours and Ballard paralegals billed 2.7 hours for a total fee of $35,275.50.

  i. For preparation of the Supplemental Statement, this supplemental declaration (and exhibits thereto), as well as the supplemental declarations of Mr. Metcalf and Ms. Baker, through December 31, 2017, Ballard attorneys billed 83.8 hours for a total fee of $38,967.00.

  j. For communications with our clients and their insurance carrier, LSKS and Ballard attorneys billed 85.1 hours for a total fee of $39,571.50.

  k. For monitoring of legislative and case law developments in Nevada and relevant litigation involving Adelson, LSKS attorneys billed 13.7 hours and LSKS paralegals billed 5.4 hours for a total fee of $7,450.50.

l. For communications with Adelson's counsel, this Court, the Court of Appeals and the Nevada Supreme Court, LSKS and Ballard attorneys billed 16.7 hours for a total fee of $7,765.50.

**TOTAL SINCE OCTOBER 1, 2013: Hours: 1,973.3  Fees: $900,757.00**

10. Following the Court of Appeals' December 2014 Order certifying questions to the Nevada Supreme Court, defendants were obliged to retain Nevada counsel licensed to practice in that court. Accordingly, defendants retained the firm of Campbell & Williams, a highly respected firm with substantial experience in both media and appellate litigation, which thereafter, and up through issuance of the Nevada Supreme Court's decision in September 2017, advised defendants (through LSKS) with respect to both the substance of the brief and argument submitted to that court as well as questions regarding local Nevada practice and procedure. In addition, because I argued the case on defendants' behalf in the Nevada Supreme Court *pro hac vice,* name partner Donald J. Campbell attended the argument as defendants' Nevada counsel. For those services, Campbell & Williams charged defendants an hourly rate of $450 per hour for advice rendered by Mr. Campbell and his partner J. Colby Williams. In total, during the three years since their retention, Campbell & Williams attorneys charged defendants a total of $19,665.00 for 43.7 hours of services rendered and the firm has been paid that amount. Attached hereto as Exhibit 16, and incorporated herein by this reference, is a chart that sets forth the services that Campbell & Williams rendered in the defense of this litigation, broken down by category and by timekeeper. This chart was created at my direction and I have reviewed it and attest to the Court both that it is an accurate description of the services rendered and the hours for which Campbell & Williams has billed, and that it is drawn from the contemporaneous billing records maintained by that firm. In those records, time is recorded in 0.1 hour increments.

13

**TOTAL NEVADA COUNSEL FEES:  Hours: 43.7  Fees: $19,665.00**

11. Attached hereto as Exhibit 17, and incorporated herein by this reference, is a chart that sets forth the out-of-pocket expenses and costs incurred by LSKS, Ballard and Campbell & Williams in the defense of this litigation commencing on October 1, 2013, and through December 31, 2017, and actually billed to defendants and their carrier.  This chart was also created at my direction and I have reviewed it and attest to the Court that it is an accurate description of out-of-pocket expenses actually incurred, billed and paid.  The following is a summary of those expenses.  All of the referenced charges were billed at the actual costs incurred by the firms.

    a. Defendants compensated Mr. Metcalf in the amount of $7,076.25 for the time he devoted to preparation of his initial declaration (9.25 hours billed at an hourly rate of $765), and $13,578.75 for the time he devoted to preparation of his supplemental declaration filed herewith (17.75 hours at $765 per hour).

    b. Defendants paid a total of $4,150.00 in fees to the Nevada Supreme Court so that defendants' counsel could appear in that Court *pro hac vice*.  The Nevada Supreme Court charges an initial fee of $550 and an annual renewal fee of $500 for each lawyer admitted *pro hac vice* in connection with an appeal to that court.  Because this case remained pending before the Nevada Supreme Court for three years, defendants were obliged to pay a total of eight such fees (three years each for me and Mr. Berlin and two years for Ms. Sproul).

    c. Defendants incurred a filing fee of $125.00 assessed by the Nevada Supreme Court in connection with the proceedings over the certified questions.

    d. Defendants incurred a total of $3,120.14 in long distance travel expenses in connection with the arguments in the Court of Appeals and in the Nevada Supreme Court.

Specifically, defendants incurred $687.35 in expenses, including train fare, overnight lodging and parking, for my travel to New York City for the argument in the Court of Appeals, and $2,432.79 in expenses, including airfare, overnight lodging and meals, for my and Ms. Sproul's travel to Las Vegas for the argument in the Nevada Supreme Court.

   e. Defendants paid a total of $1,466.23 in fees to obtain from courts in Nevada and Florida various pleadings and other documents filed in the then-ongoing litigation between Jacobs and Adelson and his companies as well as judicial records in certain proceedings in the trial courts of Nevada referenced in defendants' brief in the Nevada Supreme Court.

   f. Defendants paid a total of $605.00 in fees to obtain the original and one certified copy of the transcript of the argument in the Court of Appeals.

   g. Defendants paid Campbell & Williams a total of $441.84 in expenses for Westlaw research ($252.93) and duplicating and delivery charges ($188.91) in connection with briefing in the Nevada Supreme Court.

**TOTAL COSTS: $30,563.21**

   12. All of the fees and expenses itemized in Exhibits 15-17 were submitted to defendants and to Travelers and have been deemed reasonable and have been paid. Based on my more than 35 years' experience litigating appeals of defamation actions in state and federal courts throughout the country, I believe that all of the fees and expenses described in Exhibits 15-17 are reasonable and appropriate for all the reasons stated herein.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 5th day of January 2018.

                 _____
                 Lee Levine