UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SHELDON G. ADELSON, | : |
| Plaintiff, | : |
| | : Case No. 12-Civ-6052-JPO |
| v. | : |
| | : **ECF Case** |
| DAVID A. HARRIS, MARC R. STANLEY, and | : |
| NATIONAL JEWISH DEMOCRATIC COUNCIL, | : |
| | : |
| Defendants. | : |
| | : |
| | : |

---

# REPLY IN SUPPORT OF DEFENDANTS' SUPPLEMENTAL STATEMENT OF ATTORNEYS' FEES AND EXPENSES

Lee Levine (*pro hac vice*)
Seth D. Berlin
Chad R. Bowman (*pro hac vice*)
Ballard Spahr, LLP
1909 K Street, N.W., 12th Floor
Washington, DC 20006
Tel: (202) 508-1122
Fax: (202) 661-2299
levinel@ballardspahr.com
berlins@ballardspahr.com
bowmanchad@ballardspahr.com

*Counsel for Defendants David A. Harris, Marc R. Stanley and National Jewish Democratic Council*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

I.     The Amount of the Fees Requested is Reasonable ............................................................. 2

II.    Adelson's Litigation History Fully Supports Defendants' Defense Strategy .................... 10

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                    Page(s)

*Academia Semillas del Pueblo v. McIntyre*,
   2008 WL 5108838 (Cal. Super. Ct. May 30, 2008)..................................................................8

*Adelson v. Adelson*,
   2001 WL 736739 (Mass. Super. Ct. Apr. 18, 2001).................................................................10

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*,
   522 F.3d 182 (2d Cir. 2008)....................................................................................................10

*Beach v. Wal-Mart Stores, Inc.*,
   958 F. Supp. 2d 1165 (D. Nev. 2013)....................................................................................5, 6

*Brandt v. Schal Assocs., Inc.*,
   960 F.2d 640 (7th Cir. 1992) ....................................................................................................9

*Brunzell v. Golden Gate National Bank*,
   455 P.2d 31 (Nev. 1969).......................................................................................................1, 4

*Cassese v. Williams*,
   503 F. App'x 55 (2d Cir. 2012) ................................................................................................6

*Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*,
   246 F.3d 142 (2d Cir. 2001).....................................................................................................1

*Fox v. Vice*,
   563 U.S. 826 (2011)..................................................................................................................4

*Haley v. Eighth Judicial Dist. Ct.*,
   273 P.3d 855 (Nev. 2012).........................................................................................................4

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)............................................................................................................5, 10

*Kim Laube & Co. v. Wahl Clipper Corp.*,
   2013 WL 12085140 (C.D. Cal. Nov. 6, 2013).........................................................................2

*In re Margaret Mary Adams 2006 Trust*,
   2015 WL 1423378 (Nev. Mar. 26, 2015) (unpublished) .........................................................4

*Nesse v. Pittman*,
   202 F.R.D. 344 (D.D.C. 2001)..................................................................................................6

*New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*,
   442 F.3d 101 (2d Cir. 2006)..................................................................................................2, 3

*Perdue v. Kenny A.*,
  559 U.S. 542 (2010) ................................................................................................................ 1

*Pohl v. Ninth Judicial Dist. Ct.*,
  2016 WL 383086 (Nev. Jan. 28, 2016) (unpublished) ............................................................ 5

*Rebel Communications, LLC v. Virgin Valley Water District*,
  2012 WL 5839048 (D. Nev. Nov. 16, 2012) ........................................................................... 4

*S. New England Tel. Co. v. Glob. Naps, Inc.*,
  2008 WL 1848899 (D. Conn. Apr. 25, 2008) .......................................................................... 2

*Shuette v. Beazer Homes Holdings Corp.*,
  124 P.3d 530 (Nev. 2005) ........................................................................................................ 4

*In re Smith*,
  389 B.R. 902 (D. Nev. Bankr. 2008) ..................................................................................... 10

*United States v. Wilson*,
  571 F. Supp. 1417 (S.D.N.Y. 1983) ........................................................................................ 6

**Statutes & Other Authorities**

10 *Moore's Federal Practice-Civil* ¶ 54.155[2] (3d ed. 2003) ..................................................... 2, 3

Nev. Rev. Stat. § 41.670(c) ............................................................................................................ 5

iii

Plaintiff Sheldon Adelson's Response to defendants' Supplemental Statement of Attorneys' Fees and Expenses ("Opp."), Dkt. 116, makes several notable concessions and abandons prior arguments, all of which substantially narrow the issues before this Court:

1. Adelson concedes that defendants' application is governed by the four factors set out in *Brunzell v. Golden Gate National Bank*, 455 P.2d 31 (Nev. 1969), and that the court has broad discretion to weigh them in a particular case. Opp. at 3. In so doing, Adelson no longer appears to contend that only fees and costs related to defendants' Anti-SLAPP motion are recoverable, as he argued, albeit incorrectly, in response to defendants' initial Fee Statement. *See* Dkt. 91 at 1-2; Dkt. 95 at 1-2. And, with one exception, Adelson no longer invokes other factors that apply only in cases, unlike this one, where a plaintiff has not actually paid a fee but the court must nevertheless fashion an award. *See* Dkt. 91 at 4-5; Dkt. 95 at 5-6.[1] As one of the principal authorities he cites makes clear, where a party has engaged and paid "private counsel, the actual billing arrangement is a significant . . . factor in determining what fee is 'reasonable.'" *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001) (Opp. at 3).

2. Adelson further concedes that both the first and fourth *Brunzell* factors – the "quality of the advocate" and "the result" – weigh decisively in defendants' favor. *See, e.g.*, Opp. at 10 ("Defendants' attorneys are undoubtedly of the highest caliber").

3. In addressing factors two and three, Adelson appears to concede that this case involved complex appellate proceedings in two courts, including multiple rounds of briefing and two oral arguments, and that prevailing required skillful appellate advocacy. Opp. at 9-10.

---

[1] The one exception is that Adelson continues to argue that "awards in similar cases" are relevant to this Court's analysis. Opp. at 3 (citation omitted). In so doing, he relies on a Nevada district court opinion that in turn cites to Ninth Circuit cases pre-dating by several decades the Supreme Court's controlling decision in *Perdue v. Kenny A.*, 559 U.S. 542 (2010), which rejected such factors in favor of a lodestar approach. In any event, even if fee awards in comparable cases were relevant, and putting aside the inherent difficulty of identifying truly comparable cases, Adelson has submitted no evidence that other similarly difficult and protracted appellate proceedings were defended for materially lower fees.

1

        4.        Adelson does not contest the $30,563.21 in defendants' costs.

Given these concessions, Adelson's objections essentially reduce to (1) challenging the overall amount of defendants' fees as well as the level of detail they have provided to explain them, and (2) claiming that he is not an aggressive litigant whose track record warranted a vigorous defense. Opp. at 1-2. Each of these contentions is without merit.

**I.        The Amount of the Fees Requested is Reasonable.**

Adelson contends that the fees requested "are excessive on their face." Opp. at 2. Unlike his prior response, however, he offers no expert declaration supporting that contention. And, he submits no declaration from his various appellate lawyers, including those from Mayer Brown, who bill at a materially higher hourly rate and regularly incur significant fees for their work. *See, e.g.*, *Kim Laube & Co. v. Wahl Clipper Corp.*, 2013 WL 12085140, at *6 (C.D. Cal. Nov. 6, 2013) ($750 per hour for Mayer Brown partner for work prior to 2013); *S. New England Tel. Co. v. Glob. Naps, Inc.*, 2008 WL 1848899, at *3-4 (D. Conn. Apr. 25, 2008) (awarding more than $600,000 in fees charged by Mayer Brown and local counsel for six-month prosecution of contempt motion in 2007 that involved one hearing, rejecting arguments that firm's billing records were too vague and holding that, if a party "has 'obtained excellent results . . . the attorneys should be fully compensated'") (citations omitted). Adelson does not even submit a declaration from his counsel in this Court addressing the fees incurred preparing his voluminous response to defendants' initial fee statement. *Compare* Dkt. 92 (L. Wood declaration reciting fees incurred for initial merits briefing, albeit for half as many briefs as defendants had to file). Instead of submitting testimonial declarations, Adelson simply argues that defendants' declarations – which stand unrebutted – should be disregarded. *See, e.g.*, *New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 116 (2d Cir. 2006) ("If the fee

movant properly carries the burden of establishing the right to the fee and its amount, the burden shifts to the fee opponent to contest the fee with its own evidentiary submissions.") (quoting 10 *Moore's Federal Practice-Civil* ¶ 54.155[2] (3d ed. 2003)).

Adelson begins by challenging the declaration of Amy Baker, Travelers' claims counsel with close to 25 years' experience, who actually reviewed and paid all of the fees defendants now seek. Opp. at 8. Adelson does not dispute that, under applicable law, the fact that the fees were paid in full by Travelers, at a negotiated discounted hourly rate and after careful scrutiny, is afforded substantial weight. His only response is to recycle his prior argument that Travelers' defense is subject to a reservation of rights and that it therefore paid defendants' fees and costs "hoping it would not be left holding the bag." *Id*. But, as Ms. Baker explained in her reply declaration that is already before this Court, "Travelers' reservation of rights would provide no basis for it to attempt to recoup from its insureds expenditures for defense costs it had already made." Dkt. 97 at 3-4; *see also* Dkt. 114. Thus, the evidence that Travelers, a sophisticated purchaser of legal services, has paid all the fees at issue stands unrebutted.

Next, Adelson challenges defendants' expert, Slade Metcalf. Mr. Metcalf, a highly-respected First Amendment advocate, conducted a detailed review of the briefs, transcripts, and records of the appellate and fee application phases of the case before opining that the amounts sought for each phase were reasonable, particularly in light of the number and complexity of the issues as well as the caliber of the multiple lawyers Adelson retained to represent him at each phase. As addressed in greater detail *infra*, Adelson's contention that Mr. Metcalf should have instead focused myopically on daily billing records, and that his declaration should be disregarded as a result, is incorrect. To the contrary, Mr. Metcalf addressed the only issue actually before the Court: the reasonableness of the total fee charged in light of the work

performed. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 838 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."); *Haley v. Eighth Judicial Dist. Ct.*, 273 P.3d 855, 860 (Nev. 2012) ("'[I]n determining the amount of fees to award, the court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount,' so long as the requested amount is reviewed in light of the factors set forth in *Brunzell*.") (quoting *Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 549 (Nev. 2005)). Mr. Metcalf reviewed that work in detail through the lens of his expertise as a veteran practitioner in this area of the law. His declaration stands unrebutted.

Finally, Adelson takes issue with portions of the declaration of Lee Levine. Adelson does not challenge the reasonableness of the substantially discounted hourly rate Travelers negotiated, which has not increased over the five-year life of this case. Nor does he challenge the expertise of defendants' counsel. Instead, he argues that the declaration's detailed summaries, by category, of the time each attorney devoted to each substantive phase of the litigation is insufficient in the absence of daily billing records. Opp. at 1-2, 4-9. Defendants have already addressed this argument in their prior briefing, providing this Court with substantial authority in both Nevada and this Circuit confirming that daily billing records are *not* required. *See* Dkt. 81 at 3 n.1; Dkt. 95 at 8-10.[2] Simply put, which day particular tasks were performed in

---

[2] Defendants previously addressed *Rebel Communications, LLC v. Virgin Valley Water District*, 2012 WL 5839048 (D. Nev. Nov. 16, 2012) (Opp. at 4). *See* Dkt. 95 at 1 n.2. Adelson correctly notes that the court in that case found one defendant's fee submission insufficient because it simply enumerated four categories of work – but, unlike here, the relevant submission failed to identify the number of hours worked (let alone to break them down by timekeeper) for each such category. *See* Levine Third Suppl. Decl. Ex. 21. And, although Adelson cites *In re Margaret Mary Adams 2006 Trust*, 2015 WL 1423378 (Nev. Mar. 26, 2015) (unpublished) (Opp. at 4), to suggest that block billing or other accumulations of time is insufficient, the case actually holds that "block-billed time entries are generally amenable to consideration under the *Brunzell* factors" and "that it was an abuse of discretion for the district court to categorically exclude all block-billed time entries from the attorney fees award." *Id.* at *2-3.

a case that spanned multiple years is of limited value in assessing whether the total hours worked and fee charged for each phase of that litigation were reasonable. The Court is therefore not obliged to review the 52 separate monthly statements, spanning 375 pages and containing some 1,982 separate descriptive entries, submitted to Travelers since this case began. Levine Third Suppl. Decl. ¶ 3. Adelson's insistence on combing through five years of individual time entries cannot be reconciled with the Supreme Court's admonition that a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

That is especially so where, as here, those records would reveal attorney work-product to a litigation adversary. Dkt. 95 at 9-10. If nothing else, because Mr. Wood regularly represents defamation plaintiffs, the parties' counsel are frequent adversaries, such that disclosing defense counsel's protected thought processes and strategies remains a serious concern. Indeed, it is an ongoing issue even in this dispute: having successfully defended a SLAPP suit by Adelson, the Nevada Anti-SLAPP Act now permits defendants to file a separate lawsuit asserting affirmative claims against him for compensatory and punitive damages. *See* Nev. Rev. Stat. § 41.670(c). While defendants have yet to decide whether to file such an action, Adelson should not be permitted to invade defense counsel's work product and privileged communications with their clients in such circumstances. *See* Dkt. 95 at 9-10 (citing cases); *see also, e.g.*, *Pohl v. Ninth Judicial Dist. Ct.*, 2016 WL 383086, at *2 n.3 (Nev. Jan. 28, 2016) (unpublished) ("The substance of the consultations for which the fees were charged is protected by the privilege, and will remain privileged despite a requirement that the amount, source and manner of payment of the fee be disclosed.") (citation omitted); *Beach v. Wal-Mart Stores, Inc.*, 958 F. Supp. 2d 1165, 1170 (D. Nev. 2013) (Opp. at 3) (holding that defense counsel's "fee agreement is protected by attorney-client privilege" and crediting counsel's "represent[ation that] the rates set forth in the

motion for attorney's fees are the rates actually charged to and agreed to be paid by the defendant"). Accordingly, if this Court concludes that it needs to review individual billing statements, it should only do so *in camera* and should not permit Adelson or his counsel access to them, an approach Adelson appears to concede is appropriate. Opp. at 7 (citing *Cassese v. Williams*, 503 F. App'x 55 (2d Cir. 2012)).[3]

In any event, Adelson's proffered reasons for his asserted need to parse individual billing records do not withstand scrutiny. First, he speculates that such a review might reveal that former partner (and now in-house counsel for CBS News) Gayle Sproul spent approximately 100 hours analyzing a single Supreme Court decision (*Milkovich v. Lorain Journal*) in the course of preparing defendants' Second Circuit brief. Opp. at 6. It is fanciful in the extreme to suggest that a seasoned practitioner like Ms. Sproul would have done so, much less that the firm would have billed her time if she had, or that Travelers would have paid such an invoice. Not even Adelson believes that to be the case, conceding that he is advancing a "wild proposition." *Id.* In fact, as defendants previously explained, Dkt. 82 ¶ 15; Dkt. 112 ¶ 2, Ms. Sproul took the lead, in both this Court and the Second Circuit, in crafting their statements of facts and their arguments with respect to the most hotly contested issue in this case: whether the fair report privilege's attribution requirement is satisfied by hyperlinked references to official proceedings. Defendants' success on that novel issue – in this Court, in the Nevada Supreme Court, and in the Second Circuit – speaks volumes about the quality and value of Ms. Sproul's work.

---

[3] Contrary to Adelson's suggestion, Opp. at 7 n.1, the other "work product" cases defendants previously cited address billing records. *See, e.g., Nesse v. Pittman*, 202 F.R.D. 344, 356 (D.D.C. 2001) (expressly applying work product protection to "billing entries of an attorney"); *United States v. Wilson*, 571 F. Supp. 1417, 1422 (S.D.N.Y. 1983) (subpoena upheld only because it did not seek "production of itemized bills for legal services . . . or other documents that would indicate [defendant's] legal strategy during the trial or appellate process" because such material is "protected by the work product doctrine").

Second, Adelson questions why defense counsel devoted more hours in connection with the Nevada Supreme Court oral argument than the Second Circuit argument. Once again, the answer should have been obvious, if not to Mr. Wood, then at least to Adelson's Nevada counsel. As Mr. Levine explains for this Court's benefit in his supplemental declaration filed herewith, in preparing for that argument, he took the time necessary to familiarize himself with both the relevant judicial record and background of each member of the *en banc* court as well as each justice's approach to questioning counsel at argument (including by observing prior arguments streamed on the court's website). Levine Third Suppl. Decl. ¶ 5. In contrast, because Mr. Levine has appeared in the Second Circuit many times, he did not need to familiarize himself with either the judges on the panel or that court's practices. *Id.* Moreover, because nine months passed between the close of briefing and the Nevada Supreme Court argument, Mr. Levine was obliged to keep abreast of ongoing developments under the law of Nevada with respect to (a) its anti-SLAPP statute, (b) its law of defamation generally and the fair report privilege specifically, and (c) the litigation brought by Stephen Jacobs underlying defendants' invocation of the fair report privilege. *Id.* ¶¶ 6-7. Indeed, because the Nevada Supreme Court had heard multiple interlocutory appeals in the *Jacobs* case, including during the same period that the certification proceedings were pending before it, Mr. Levine needed to be fully informed about those ongoing proceedings when he appeared for oral argument. *Id.* ¶ 8. Finally, as Adelson's Nevada counsel well knows, in the course of preparing for argument, defense counsel learned that one justice was then serving on the board of the Adelson Clinic for Drug Abuse Treatment & Research, *id.* ¶ 9, an entity established by Adelson and his wife that is specifically referenced in his complaint in this action, *see* Dkt. 1 at ¶¶ 17-21. That discovery necessitated both legal research and careful deliberations about counsel's obligations, to both the clients and the court, and ultimately led to a

7

filing alerting the justice to the potential conflict and subsequently to his voluntary recusal. Levine Third Suppl. Decl. ¶¶ 9-12 & Exs. 18-20.  None of these tasks was necessary in connection with the Second Circuit argument.

Third, Adelson points to the fee application Mr. Berlin submitted in the *Academia* case. Opp. at 6; Dkt. 116-2.  Putting aside the irony that the declaration previously filed by Adelson's purported SLAPP expert James Moneer, Dkt. 93, omitted any mention of *Academia*, despite Mr. Moneer's direct involvement in that case, *see* Dkt. 98 at 10-14, it in fact supports defendants' application here.  As Adelson's exhibit makes clear, the *Academia* defendants were *not* obliged to submit their counsels' actual bills or time records, but instead created a separate document listing certain time entries, which were edited, including to remove work product and privileged matters, Dkt. 116-2 at ECF p. 10 nn.3-4, 14 ¶ 10, 16-17 ¶¶ 15-16; *id.* Ex. A, and which provided only generic information, as Adelson himself concedes, *see* Opp. at 6 (describing *Academia* billing entries as "curt").  Moreover, at the end of the day, the *Academia* court engaged in exactly the kind of analysis defendants advocate here:  first, rather than analyzing individual billing entries, it considered the reasonableness of the total hours devoted to each phase of the case, *see Academia Semillas del Pueblo v. McIntyre*, 2008 WL 5108838 (Cal. Super. Ct. May 30, 2008), and then concluded that the overall time for each phase was "reasonable and necessary given the number and complexity of the issues presented and plaintiffs' aggressive opposition," *id.* Indeed, the Court relied heavily on the fact that the charges had been "reviewed by a sophisticated client and paid in full without any request for reduction," which provided a significant "indicia of reasonableness." *Id.*; *see also id.* (finding that fees requested were "reasonable given the nature and difficulty of the litigation, the skill of defendants' counsel, the importance of the litigation, and the complete success of the anti-SLAPP motion").

8

Fourth, Adelson advances the facially absurd argument that, by counting the number of times various cases were cited in defendants' briefs, one can establish that counsel had no legitimate need to devote additional time to reviewing or briefing the significance of those cases in briefs filed after their initial citation. Opp. at 2, 10; Dkt. 116-3. Defendants are aware of no authority – and Adelson cites none – endorsing this method for evaluating a fee request, and for good reason. Brief writing does not involve the mechanical citation of cases, but rather thoughtful analysis and written discussion of those authorities, particularly in responding to the analysis of those same cases contained in appellate briefs filed by skilled adversaries. Such careful analysis and the crafting of persuasive arguments is what wins cases, including this one.

Indeed, Adelson's conduct of the various appellate proceedings in this case reveals that he does not really subscribe to his own argument – *i.e.*, that an appellate brief involves no more than the mechanical exercise of cutting and pasting citations to cases briefed in the district court. Not only did he petition the Second Circuit for full briefing and argument after the Clerk had initially placed this case on its summary docket, *see* Levine Third Suppl. Decl. ¶ 14 & Ex. 22, he retained new counsel at each appellate phase, all of whom attempted, as would be expected, to develop a fresh approach to addressing the multiple issues before the appellate courts. Having retained five prominent law firms over the course of this litigation, Adelson cannot seriously fault defendants for fashioning uniquely tailored responses at each phase, and certainly not by counting the cases cited in defendants' briefs. *See, e.g.*, *Brandt v. Schal Assocs., Inc.*, 960 F.2d 640, 648 (7th Cir. 1992) (court had "little sympathy for the litigant who fires a big gun, and when the adversary returns fire, complains he was only firing blanks").[4]

---

[4] Although defendants have not done so, they would have been more than justified in seeking an enhancement of their fees given counsel's materially below-market hourly rates, the complexity and difficulty of the case, the resources marshaled by opposing counsel, and the complete success they

9

**II.     Adelson's Litigation History Fully Supports Defendants' Defense Strategy.**

In what is perhaps his most remarkable contention, Adelson asserts that defendants were not justified in mounting a robust defense because he is not really an aggressive litigant. With all due respect, the record demonstrates precisely the opposite:

- The records Adelson himself submitted from *In re Barricade Books* and *In re Smith* confirm that he sued a small publisher and an individual author into bankruptcy, then advocated that the bankruptcy stay be lifted so he could continue pursuing his claims against them, *see, e.g.*, *In re Smith*, 389 B.R. 902 (D. Nev. Bankr. 2008), and ultimately sought a ruling that his claims were not dischargeable in bankruptcy in any event, *id.*; Dkt. 116-6 at 3 (Adelson's filing describing non-dischargeability proceeding).

- In *Adelson v. Adelson*, 2001 WL 736739, at *1 (Mass. Super. Ct. Apr. 18, 2001), the court described Adelson's conduct in litigating the case as "rancid" and "unseemly," criticizing him for having "let loose the dogs of war."

- Adelson fails even to address defendants' showing that, during the pendency of this litigation, he sued a *Wall Street Journal* reporter, in Hong Kong, for describing him as "foul-mouthed" in a published article, only to abandon the case after years of costly and burdensome litigation. *See* Dkt. 112 ¶ 8.

Against this backdrop, and despite the fact that the Petition at issue had been taken down after six days, Adelson engaged multiple "heavy-hitter" law firms to press this case for five years, litigating every conceivable issue in multiple courts. Given Adelson's track record, defendant NJDC was more than justified in concluding it faced an existential threat. Defendants Stanley and Harris likewise found themselves faced with the prospect of personal bankruptcy initiated by a litigant who had already argued that similar defamation claims are not dischargeable. Dkt. 84 at ¶ 4. Adelson should not now be heard to claim that he is a reluctant and restrained litigant or that this lawsuit need not have been taken seriously.

---

achieved. *See, e.g.*, *Hensley*, 461 U.S. at 435; *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 183-84 (2d Cir. 2008).

Dated: February 21, 2018       Respectfully submitted,

BALLARD SPAHR, LLP

By: /s/ Seth D. Berlin
   Lee Levine (*pro hac vice*)
   Seth D. Berlin (SB7978)
   Chad R. Bowman (*pro hac vice*)

1909 K Street, N.W.
12th Floor
Washington, DC  20006
Tel:  (202) 508-1122
Fax:  (202) 661-2299
levinel@ballardspahr.com
berlins@ballardspahr.com
bowmanchad@ballardspahr.com

*Counsel for Defendants David A. Harris,
Marc R. Stanley and National Jewish
Democratic Council*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of February 2018, I caused to be served a true and correct copy of the foregoing Reply in Support of Defendants' Supplemental Statement of Attorneys' Fees and Expenses and the supporting Third Supplemental Declaration of Lee Levine (and exhibits thereto) to be served through the Court's ECF-CM system upon counsel for plaintiff as follows:

> David M. Olasov, Esquire
> **Olasov + Hollander LLP**
> 27th Floor
> 1325 Avenue of the Americas
> New York, NY 10019
> dolasov@olasov.com
>
> L. Lin Wood, Esquire
> lwood@whetriallaw.com
> Jonathan Grunberg, Esquire
> jgrunberg@whetriallaw.com
> **Wood, Hernacki & Evans, LLC**
> 1180 West Peachtree Street N.W.
> Suite 2400
> Atlanta, Georgia 30309

                                                     /s/  Seth D. Berlin