UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
SHELDON G. ADELSON,               :
                                                 :
                        Plaintiff,      :
                                                 :        12 Civ. 6052 (JPO)
                -against-       :
                                                 :        OPINION AND ORDER
DAVID A. HARRIS, MARC R. STANLEY, and :
NATIONAL JEWISH DEMOCRATIC         :
COUNCIL,                            :
                                                 :
                      Defendants.  :
------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

      This is a defamation action filed by Sheldon G. Adelson arising out of the 2012 presidential campaign. Adelson brought suit against David A. Harris, Marc R. Stanley, and the National Jewish Democratic Council ("NJDC") (together, "Defendants") for libel based on a publication on NJDC's website in July 2012. This Court dismissed Adelson's complaint in 2013, and that dismissal was affirmed by the Second Circuit following a certification of questions to the Nevada Supreme Court. Presently before the Court is Defendants' motion for attorney's fees and costs.

**I.    Background**

      In 2013, this Court dismissed Adelson's complaint under both Rule 12(b)(6) of the Federal Rules of Civil Procedure and Nevada's anti-strategic litigation against public participation ("Anti-SLAPP") statute, Nev. Rev. Stat. § 41.635–670. The Court also concluded that Defendants were entitled to reasonable attorney's fees and costs under Nevada's Anti-SLAPP statute, Nev. Rev. Stat. § 41.670(1). *See Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013).

On appeal, the Second Circuit certified to the Nevada Supreme Court two unresolved questions of Nevada law—one involving Nevada common law and one involving the scope of the Nevada Anti-SLAPP statute. *See Adelson v. Harris*, 774 F.3d 803 (2d Cir. 2014). The Nevada Supreme Court answered both questions in a manner consistent with this Court's earlier decision. *See Adelson v. Harris*, 402 P.3d 665 (Nev. 2017). The Second Circuit then affirmed this Court's decision dismissing the complaint. *See Adelson v. Harris*, 876 F.3d 413 (2d Cir. 2017).

Defendants originally filed a motion for attorney's fees and costs in October 2013 (Dkt. No. 81), after this Court's decision dismissing the complaint. Although that motion was fully briefed, the Court deferred ruling on it in light of the subsequent appeal to the Second Circuit and certification to the Nevada Supreme Court (which might have rendered moot the initial fee request had those courts ruled differently). Following the Second Circuit's affirmance in 2017, Defendants filed a supplemental motion for attorney's fees and costs (Dkt. No. 111), which is fully briefed. The Court now addresses both fee motions together.

The Court assumes familiarity with the factual background, legal issues, and procedural history of this case, which are set forth in the above-cited opinions of the Second Circuit, the Nevada Supreme Court, and this Court.

**II.     Discussion**

Where an action is dismissed pursuant to Nevada's Anti-SLAPP statute, "[t]he court shall award reasonable costs and attorney's fees to the person against whom the action was brought." Nev. Rev. Stat. § 41.670. Thus, persons who are sued for communications protected by the statute are granted "immunity from civil liability" as well as "mandatory fee shifting." *Adelson*, 774 F.3d at 809.

The Supreme Court of Nevada has explained:

> "[T]he method upon which a reasonable fee is determined is subject to the discretion of the court," which "is tempered only by reason and fairness." Accordingly, in determining the amount of fees to award, the court is not limited to one specific approach; its analysis may begin with any method rationally designed to calculate a reasonable amount, including those based on a "lodestar" amount or a contingency fee. We emphasize that, whichever method is chosen as a starting point, however, the court must continue its analysis by considering the requested amount in light of the factors enumerated by this court in *Brunzell v. Golden Gate National Bank*, namely, the advocate's professional qualities, the nature of the litigation, the work performed, and the result. In this manner, whichever method the court ultimately uses, the result will prove reasonable as long as the court provides sufficient reasoning and findings in support of its ultimate determination.

*Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 548–49 (Nev. 2005) (footnotes omitted) (quoting *Univ. of Nev. v. Tarkanian*, 879 P.2d 1180, 1188, 1186 (Nev. 1994) (citing *Brunzell v. Golden Gate Nat'l Bank*, 455 P.2d 31, 33 (Nev. 1969)). As the court summarized in *Shuette*, the *Brunzell* factors are:

> (1) the qualities of the advocate: his ability, his training, education, experience, professional standing and skill; (2) the character of the work to be done: its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation; (3) the work actually performed by the lawyer: the skill, time and attention given to the work; (4) the result: whether the attorney was successful and what benefits were derived.

*Brunzell*, 455 P.2d at 33.[1]

The parties have briefed Defendants' fee request in two rounds of filings: first for the district court phase of litigation (*i.e.*, fees and costs incurred from the beginning of the case through September 30, 2013); and second for the appellate phase (*i.e.*, fees and costs incurred from October 1, 2013, through December 31, 2017). Each is addressed in turn.

---

[1] This Court previously ruled that Nevada law governs this case, and the parties agree that Nevada law also governs the award of attorney's fees. *See Adelson*, 973 F. Supp. 2d at 481.

3

### A. Fees and Costs in the District Court

For the district court phase of the litigation, Defendants seek $989,054.50 in attorney's fees and $25,153.43 in expenses. (Dkt. No. 82 ¶¶ 18–19.) The requested fee amount is based on the lodestar method: the number of hours spent multiplied by the hourly fee. Defendants' law firm—at the time, Levine Sullivan Koch & Schulz, LLP ("LSKS")—negotiated reduced hourly rates with Defendants' insurer, Travelers Indemnity Company ("Travelers"), agreeing to charge a blended hourly rate of $465 for attorneys and $200 for paralegals.[2] It is undisputed that Travelers has in fact paid the fees sought by Defendants. (Dkt. No. 82 ¶ 14.)

Adelson does not challenge LSKS's hourly rate. That rate is clearly reasonable—indeed, cheap—in light of prevailing market rates, the level of quality of counsel, and the complexity of the legal issues involved. (*See* Dkt. No. 83 ¶¶ 21–22 (Declaration of Slade R. Metcalf).)

Adelson argues, however, that Defendants' request is not "reasonable" because (1) it is inadequately documented, (2) the hours were excessive, (3) recoverable fees should be limited to work performed on Defendants' successful Nevada Anti-SLAPP motion, and (4) the request for costs is procedurally defective. (*See* Dkt. No. 91, at 1–2.) Adelson also argues that any award should be reduced in light of the *Brunzell* factors under Nevada law.

Before turning to Adelson's specific objections, the Court addresses the *Brunzell* factors, which govern the overall exercise of this Court's discretion in awarding fees. *Shuette*, 124 P.3d at 548–49.

---

[2] This fee arrangement took effect on October 1, 2012. Travelers agreed to pay LSKS's standard hourly fees for the August and September 2012 invoices (ranging from $575 for a senior partner to $365 for a junior associate to $235 for a paralegal). (Dkt. No. 82 ¶ 13.)

4

        **1.**    *Brunzell* **Factors**

*Qualities of the Advocate*.  Adelson does not dispute the high level of defense counsel's "ability, [ ] training, education, experience, professional standing and skill."  *Brunzell*, 455 P.2d at 33.  Defendants' lead counsel, Lee Levine, is one of the most highly regarded and well-known lawyers in the United States in the fields of media law, defamation, and the First Amendment.  He has been named one of the top three First Amendment lawyers in the country by Chambers.  (*See* Dkt. No. 83 ¶ 16.)  The quality of briefing and advocacy by Levine and his colleagues in this case was extraordinarily high.

*Character of the Work*.  The second *Brunzell* factor directs the court to consider the character of the work performed: "its difficulty, its intricacy, its importance, time and skill required, the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation."  455 P.2d at 33.  Adelson argues that this case was not especially complex or novel, noting that it involved only motion practice and no discovery.  (Dkt. No. 91 at 22–23.)  However, cases can be difficult and complex without involving fact discovery.  This case was legally and procedurally complex like few cases are.  It was vigorously litigated on both sides.  Among the complex and intricate issues that the parties addressed in multiple rounds of briefing were: (1) choice of law, potentially involving the District of Columbia, Nevada, Texas, or New York;[3] (2) the scope of the D.C. and Nevada Anti-SLAPP statutes—the latter of which was subsequently certified by the Second Circuit to the Nevada Supreme Court; (3) the constitutionality of the D.C. and Nevada Anti-SLAPP statutes as applied

---

[3]    As the Court noted in its earlier opinion, "[c]hoice of law analysis in defamation cases remains, as it was in Dean Prosser's time, 'a dismal swamp, filled with quaking quagmires, and inhabited by learned but eccentric professors who theorize about mysterious matters in a strange and incomprehensible jargon.'"  *Adelson*, 973 F. Supp. 2d at 475 (quoting William L. Prosser, *Interstate Publications*, 51 Mich. L. Rev. 959, 971 (1953)).

in federal court; (4) the fair report privilege under state law; (5) the developing case law on the significance of hyperlinks in the context of the fair report privilege—another issue that the Second Circuit certified to the Nevada Supreme Court; (6) the opinion doctrine and First Amendment protections; and (7) various procedural and evidentiary issues, including Adelson's motion to strike and request for discovery.  In addition, because Defendants made an (ultimately successful) argument based on the fair report privilege, they reasonably investigated factual issues relating to the ongoing litigations involving Steven C. Jacobs, which were the underlying source of the attribution at issue.  *See Adelson*, 973 F. Supp. 2d at 472, 485–87.

This factor also requires the Court to consider the "importance" of the legal work as well as "the responsibility imposed and the prominence and character of the parties where they affect the importance of the litigation." *Brunzell*, 455 P.2d at 33.  The challenged speech involved political speech at the core of the First Amendment.  *Adelson*, 973 F. Supp. 2d at 490 & n.18.  It was within the scope of speech protected by Nevada's Anti-SLAPP law.  *Adelson*, 402 P.3d at 670.  These considerations alone establish the importance of the defense of the litigation.  But in addition, Adelson's lawsuit was covered in the national news media and accompanied by an aggressive publicity campaign featuring Professor Alan Dershowitz.  (*See* Dkt. No. 82 ¶ 7.)  The lawsuit was brought by a billionaire and sought at least $60 million.  Defendants faced the very real prospect of devastating liability.  They had every reason to treat the lawsuit as serious and important.

*The Work Actually Performed*.  The third *Brunzell* factor focuses on "the skill, time and attention given to the work." 455 P.2d at 33.  As noted above, the skill involved in the work of Defendants' counsel in this case was extraordinarily high.  It was also highly specialized.  Defense counsel's research was thorough and their arguments, both oral and written, were

analytically sharp and skillfully presented. Adelson argues that defense counsel devoted *too much* time and attention to this case. (Dkt. No 91 at 24.) The Court disagrees. In view of the complexity of the issues and the importance of the litigation, the quality and quantity of counsel's work were reasonable.

*The Result*. The fourth *Brunzell* factor involves "whether the attorney was successful and what benefits were derived." 455 P.2d at 33. As Adelson acknowledges, defense counsel were successful in this case. Moreover, they succeeded in avoiding discovery, which would have increased the costs and burdens of the litigation, and succeeded in winning a fee-shifting motion. The "benefits" in that success included not only avoiding potentially devastating liability, but protecting political speech under the First Amendment and Nevada law.

In sum, all four *Brunzell* factors weigh in favor of Defendants' requested fee award.

### 2. Adelson's Objections

The Court now turns to Adelson's specific objections to Defendants' fee request.

First, Adelson argues that Defendants' fees are inadequately documented with detailed time records. The Court disagrees. Defendants' fee application is supported by affidavits describing the categories of work and hour breakdowns into substantive categories, timekeeper, and type of work. (Dkt. No. 82 ¶¶ 17–18 & Ex. A.) Having reviewed this supporting documentation, the Court finds it sufficient to assess the reasonableness of the hours worked, particularly in light of the Court's familiarity with all the issues in the case. Adelson argues that Defendants have not submitted copies of counsel's actual detailed hourly billing statements. While it is true that in some cases it may be necessary to review detailed billing records in order to assess the reasonableness of fees, that is not always the case. The level of detail required is a matter left to the Court's discretion, under both Second Circuit law and Nevada law. *See, e.g.*,

*Cruz v. Local Union No. 3*, 34 F.3d 1148, 1160 (2d Cir. 1994); *Miller v. Wilfong*, 119 P.3d 727, 730 (Nev. 2005). Here, Defendants have provided sworn declarations detailing the identities, rates, and credentials of the lawyers, the hours they worked, the litigation tasks they performed, and when they performed them. That is sufficient, given the nature and complexity of the case and the Court's familiarity with it.

Second, Adelson argues that the hours spent on the case by Defendants' counsel were excessive. Again, the Court disagrees. Having reviewed the documentation, the Court finds nothing excessive in the billings by Defendants' counsel, in light of the nature of the case, its importance, and the complexity of issues involved, as discussed above. The fact that Defendants' insurer agreed to the fee arrangement and actually paid the fees is evidence of the fees' reasonableness. *See Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 121 (E.D.N.Y. 2010). The declarations of Defendants' insurance case specialist and media law expert further support the reasonableness of the fees. (Dkt. Nos. 83, 85.) The cases cited by Adelson are inapposite, as they simply did not involve the range and complexity of issues as those involved in this case.

Third, Adelson argues that recoverable fees should be limited to work performed on Defendants' successful Nevada Anti-SLAPP motion. Because the basis for fees is the Nevada Anti-SLAPP statute, he contends, Defendants should not be able to recover for work that was not specifically dedicated to the motion under that statute (such as review of the complaint, general strategizing, or arguments about the D.C. Anti-SLAPP statute). Adelson relies on the district court's decision in *Rebel Communications, LLC v. Virgin Valley Water District*, which held that defendants "may not recover attorneys' fees for work prior to work conducted on the renewed special motion to dismiss [under Nevada's Anti-SLAPP law]." 2012 WL 5839048 at *1 (D.

Nev. Nov. 16, 2012). Adelson also relies on cases decided under California's Anti-SLAPP statute.

The language of the Nevada statute, however, is plain: "The court shall award reasonable costs and attorney's fees to the person against whom *the action* was brought." Nev. Rev. Stat. § 41.670 (emphasis added). This is in contrast to the language of California's statute, which provides that "a prevailing defendant *on a special motion to strike* shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1) (emphasis added). The *Rebel Communications* court does not appear to have focused on the language of the Nevada statute. Indeed, the Nevada statute goes further, allowing a party who obtains dismissal under the statute to be awarded an additional sum of "up to $10,000" and to bring a separate action for compensatory and punitive damages, plus fees and costs for the separate action. Nev. Rev. Stat. § 41.670. In view of the statutory language and the broad purposes of the statute, *see Adelson*, 973 F. Supp. 2d at 923–24, this Court agrees with the reasoning of now-Circuit Judge Hamilton, discussing Indiana's analogous Anti-SLAPP statute:

> The attorney fee-shifting provision of the anti-SLAPP statute is a key part of the law's substantive policy.
> . . . .
> [T]o the extent that [the plaintiff] is arguing that a fee award should be limited to the time spent actually preparing a motion to dismiss, the court views that limit as inconsistent with the anti-SLAPP statute and its purpose. Nothing in the statutory language imposes that limit.

*Containment Techs. Grp., Inc. v. Am. Soc'y of Health Sys. Pharmacists*, 2009 WL 2750093, at *2, *4 (S.D. Ind. Aug. 26, 2009).[4]

---

[4] Nor is the Court persuaded by Adelson's argument that Defendants should not recover fees incurred in connection with arguments "on which they did not prevail." (Dkt. No. 91 at 22.) "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).

9

Finally, Adelson argues that Defendants' request for $25,153.43 in expenses should be denied on the ground that "[f]ederal law, not the Nevada anti-SLAPP statute, governs the award of costs, and Defendants have not properly moved for such an award under Federal Rule of Civil Procedure 54(d)." (Dkt. No. 91 at 3.) This argument is meritless. Where, as here, a statute expressly provides an award of "reasonable costs and attorney's fees," the right to recover and the amount to be awarded are governed by the underlying statute. *See, e.g.*, *Verizon Del., Inc. v. Covad Comm'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004). This Court has already ordered that reasonable costs will be awarded under the Nevada Anti-SLAPP statute, and Adelson does not point to anything unreasonable in the expenses incurred by defense counsel. Having reviewed the expenses (Dkt. No. 82 Ex. B), the Court finds them reasonable.

### B. Fees and Costs on Appeal

For the appellate phase of this case (*i.e.*, from October 1, 2013, through December 31, 2017), Defendants seek $920,422.00 in fees and $30,563.21 in expenses.

Defense counsel at LSKS (which merged with Ballard Spahr, LLP, in October 2017) continued working on the case on appeal with substantially the same team of lawyers. They continued charging the agreed-upon hourly rates ($465 for attorneys and $200 for paralegals) through the five years of litigation, despite increases in the firm's standard hourly rates over that time period. (Dkt. No. 112 ¶ 5.) Local counsel in Nevada charged an hourly rate of $450 for a total of 43.7 hours. (*Id.* ¶ 10.)

As in the district court, the appeal in this case was complex and vigorously fought.[5] It was also protracted, lasting over four years. With the Second Circuit's certification of questions

---

[5] Adelson retained multiple lawyers from four law firms during the appellate proceedings, including well-known appellate specialists from Mayer Brown LLP. (Dkt. No. 112 ¶ 7.)

to the Nevada Supreme Court, which elected to hear the matter *en banc*, Defendants' counsel effectively briefed and argued two full appeals, filing four briefs and presenting two lengthy arguments.[6] Among the issues Defendants had to address were (1) the significance of hyperlinks in the context of Nevada's fair report privilege; (2) whether the challenged publication presented a "fair and impartial" account of the related judicial proceeding under Nevada law; (3) whether portions of the publication constituted protected opinion under Nevada law and the First Amendment; (4) whether the publication was defamatory under Nevada law and the First Amendment; (5) whether the Nevada Anti-SLAPP statute applies in federal court and whether such application is constitutional; (6) whether the Nevada statute applies to statements not directed to a government official or entity; (7) whether Defendants published the statements in "good faith" under the Nevada statute; (8) whether Adelson was entitled to discovery under Federal Rule of Civil Procedure 56(d); and (9) whether various amendments to the Nevada Anti-SLAPP statute since 2012 affected the statute's application.

It is true that there was significant overlap among the legal and factual issues in the district court and on appeal. On appeal, however, Defendants had to craft arguments and research new issues in response to the numerous alleged errors raised by Adelson, conduct ongoing research in several rapidly developing areas of state and federal law, and continue to monitor the related Jacobs litigation. The complexity and duration of the appellate phase of this case were not the fault of defense counsel. Indeed, Mr. Levine practically pleaded with the Second Circuit panel not to certify the case to the Nevada Supreme Court, citing the ongoing expense and burden of the litigation. (Dkt. No. 112-4 at 58.)

---

[6] Although the Second Circuit had allotted 10 minutes per side for oral argument, the oral argument, held on August 28, 2014, lasted one hour and fifteen minutes due to the extended questioning on numerous issues by the panel. (Dkt. No. 112 ¶ 8.)

For substantially the same reasons discussed in connection with the district court phase, the *Brunzell* factors also support Defendants' requested fee award on appeal: (1) the abilities and training of counsel were of the highest caliber; (2) the difficulty and complexity of work only increased on appeal, while the importance of the litigation and stakes for Defendants remained high; (3) the work actually performed by defense counsel was high quality, sophisticated, and commensurate with the complexity and importance of the case; and (4) Defendants prevailed in the appeal.

Adelson again argues that the documentation of hours spent on appeal is insufficiently detailed and that the number of hours was excessive. Once again, the Court disagrees. The sworn declaration of defense counsel catalogs the hours spent, by attorney and task, for each phase of the case from October 2013 onward. (Dkt. No. 112 ¶¶ 9–10 & Exs. 15–16.) Having reviewed that documentation, the Court finds the hours spent to be reasonable in light of the complexity and importance of the case and the quality of the advocacy. The Court also finds the expenses incurred to be reasonable. (Dkt. No. 112 ¶ 11 & Ex. 17.)

**III. Conclusion**

For the foregoing reasons, Defendants' application for attorney's fees and costs pursuant to Nev. Rev. Stat. § 41.670 is GRANTED. Plaintiff Adelson is hereby ordered by pay to Defendants the amount of $1,909,476.50 in fees and $55,716.64 in costs, for a total of $1,965,193.14.

The Clerk of Court is directed to terminate the motions at docket numbers 81 and 111 and to mark this case as closed.

SO ORDERED.

Dated: March 29, 2018
New York, New York

_____
J. PAUL OETKEN
United States District Judge